**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**


TRI STATE ADVANCED SURGERY
CENTER, LLC, GLENN A. CROSBY II, M.D.,
F.A.C.S., and MICHAEL HOOD, M.D.                                      PLAINTIFFS


v.                                       Case No. 3:14-CV-00143-JM


HEALTH CHOICE, LLC,
and CIGNA HEALTHCARE OF TENNESSEE, INC.                               DEFENDANTS


**MEMORANDUM IN SUPPORT OF CIGNA HEALTHCARE OF**
**TENNESSEE, INC.'S MOTION TO DISMISS COUNTS I AND III**

## <u>INTRODUCTION</u>

Plaintiffs have styled their Complaint in antitrust terms, but this case is really about Plaintiffs' fraudulent billing scheme—whereby Dr. Glenn Crosby and Dr. Michael Hood (together, the "Physician Plaintiffs") breached their network provider agreements by referring patients to an out-of-network facility, Tri State Advanced Surgery Center, LLC ("Tri State"), which then fraudulently billed Cigna inflated rates for out-of-network medical services without collecting the out-of-network co-payments and deductibles required by the patients' Cigna-administered plans.   This scheme not only allowed Tri State to collect artificially-inflated payments from Cigna in violation of patients' health benefits plans, but also undermined Cigna's ability to manage health care costs—a practice that ultimately hurts patients by making health insurance coverage more expensive for all.

Plaintiffs, not surprisingly, leave much of this unsaid in their Complaint, and Cigna is concurrently filing its own claims with this Court to stop Plaintiffs from engaging in these unscrupulous practices and recover the damages that their scheme has caused.  But even the face of the Complaint shows why Cigna was justified in taking the actions it did:  knowing that Physician Plaintiffs were referring Cigna's plan members to an out-of-network facility, contrary not only to the network agreements governing Physician Plaintiffs but the fundamental economics of managed health care, Cigna elected not to do business with them. Count I of Plaintiffs' Complaint claims that this decision was an illegal "boycott" under the Sherman Act, but they are wrong.  No matter how many times the Complaint recites antitrust buzzwords, well-established precedent confirms that this is not an antitrust case.

***First***, no antitrust law entitles Plaintiffs to access Cigna's network and plan members on Plaintiffs' unilaterally imposed terms.  To the contrary:  the Sherman Act protects Cigna's right to select its partners and to choose the terms on which it will deal.  Plaintiffs have refused to

1

abide by Cigna's terms for participating in its provider network, and Cigna's refusal to do business with them on the terms they wish to impose on Cigna is not an antitrust violation.

*Second*, Plaintiffs' contrived conspiracy between Cigna and Health Choice fails because it makes no economic sense.  Plaintiffs claim that Cigna sought to drive Tri State (a medical provider) out of business, thus strengthening the market position of Methodist—a competing medical provider associated with Health Choice that is already "the dominant hospital system" in the area.  (Compl. ¶ 4.)  This is implausible.  Cigna contracts with providers and thus benefits from growing, not shrinking, the pool of its potential providers.  Nor is it in Cigna's interest to help strengthen Methodist's position, thereby inviting it to charge Cigna super-competitive rates. In contrast, Physician Plaintiffs' admitted refusal to abide by Cigna's contractual rules provides an obvious and justified explanation for their supposed exclusion, further reinforcing the implausibility of their theory.  Just as important, Plaintiffs nowhere allege that members of Cigna-administered plans could not actually receive Tri State's services absent in-network referrals, without which there can be no plausible "boycott."

*Third*, Plaintiffs have failed to plead either a *per se* unlawful group boycott or a violation under the rule of reason, at least one of which is necessary to state a Sherman Act claim.  As a threshold matter, Cigna and Health Choice are not direct competitors who compete at the same level, which the Supreme Court has made clear is necessary to impose the harsh effects of the *per se* rule.  And the Complaint does not survive under a rule-of-reason analysis because Plaintiffs do not plausibly allege that Cigna had any dominant market power in the relevant market for outpatient surgical services or that there were actual detrimental effects on competition in such a market, both of which are required elements of Plaintiffs' claim.

**Fourth**, Plaintiffs have not pled an antitrust injury.  Antitrust law requires plaintiffs to plausibly allege injury to competition, but Plaintiffs' claims of harm are either economic losses to themselves (which as a matter of law are not antitrust injuries), or are so threadbare that they do not survive *Twombly*.

**Finally**, the tag-along state law claim against Cigna for tortious interference (Count III) fares no better.  Plaintiffs claim that Cigna improperly caused its patients and in-network providers not to use Tri State, but the Complaint admits that Cigna had contractual relationships with its patients and in-network providers—including Dr. Hood and Dr. Crosby before their termination—and a party cannot tortiously interfere with its own contractual relationships. Moreover, this derivative claim depends on Plaintiffs' deficient antitrust allegations, but because the Complaint fails to state a claim under the Sherman Act, Plaintiffs cannot plead the required "improper" element of the tortious interference claim.  For these reasons and all the reasons below, Counts I and III—the only claims against Cigna—should be dismissed.

## BACKGROUND

Cigna is a company that insures its own health insurance policies and also administers benefits plans funded by third-party employers.  (Compl. ¶ 15.)  To help manage health care costs, Cigna-administered health plans incentivize members to use Cigna's network of healthcare providers, who have agreed to accept discounted rates for their services in exchange for receiving access to members of Cigna's plans.  (*See id.* ¶ 37.)  In contrast to these in-network providers, providers who do not participate in Cigna's network ("non-participating" or "out-of-network" providers) have no restrictions on the amount that they can charge their patients for their services.  *See Franco v. Conn. Gen. Life Ins. Co.*, No. 07-6039, 2014 WL 2861428, at *2 n.4 (D.N.J. June 24, 2014) ("Non-participating providers do not bill for services at negotiated rates, as participating providers do pursuant to a contract with Cigna.").

Cigna encourages providers to participate in its network by requiring in-network providers to refer patients to in-network facilities, thereby making it more likely that plan members will visit in-network facilities.  (*See* Compl. ¶ 41.)   As courts have recognized, protecting provider networks benefits healthcare consumers, as provider networks "control the quality and cost of health-care delivery."  *See Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 332 (2003); *Prud. Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 901 (8th Cir. 2005) ("closed 'provider networks' . . . control both the cost and quality of health care services."); *Abraham v. Intermountain Health Care Inc.*, 461 F.3d 1249, 1261 (10th Cir. 2006) (acknowledging argument that "there is substantial empirical evidence that selective contracting allows managed care companies to contain health care costs").

In Memphis, Cigna contracted with Health Choice, a joint venture physician-hospital organization between MetroCare and Methodist LeBonheur Healthcare ("Methodist").  (Compl. ¶ 4.)  Not only did Cigna's contract with Health Choice provide Cigna plan members with a number of options for hospital facilities, but it also expanded Cigna's network to include providers with whom Health Choice entered into contracts, including Physician Plaintiffs, saving Cigna the cost of doing so directly.  (*See id.* ¶¶ 13-15.)

Consistent with its goal of managing health plan costs and protecting its provider network, Cigna's agreement with Health Choice states that █████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████  (*See* Managed Care Alliance Agreement, attached hereto as Ex. A (filed under seal), at § II.A.7)[1] █

---

[1] Cigna may refer to this agreement because Plaintiffs expressly reference it in their Complaint, including at paragraphs 15, 17, 38, 83.  *See Dittmer Props., L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013) ("In adjudicating Rule 12(b) motions, courts are not strictly limited to the four corners of complaints" and may consider, among other things, "matters incorporated by reference" in the Complaint; finding that "the district court properly

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████ (*Id*. at 3.)  Physician Plaintiffs admit that

they meet these criteria.  (Compl. ¶ 82 ("Through their contracts with MetroCare, the Physician

Plaintiffs treated Cigna members *under the terms of the agreement between Cigna and Health*

*Choice*.") (emphasis added); *see also* Physician Provider Agreement between Dr. Crosby and

MetroCare, attached hereto as Ex. B (filed under seal), at § 1.10 ████████████████

████████████████████████████████████████████████████████████████████

███████████████████████ & § 4.1 ████████████████████████████████████

███████████████████████████████████ Physician  Provider  Agreement  between  Dr.  Hood  and

MetroCare, attached hereto as Ex. C (filed under seal), at § 1.10 & § 4.1 ████████████████

     Physician Plaintiffs sought to skirt Cigna's cost controls by referring patients to Tri State,

an ambulatory surgical center ("ASC").  Physician Plaintiffs acknowledge that Tri State "does

not  have  a  participating  provider  agreement  with  Cigna,  and  is  thus  considered  an  out-of-

network . . . provider."  (Compl. ¶ 28.)  Yet Physician Plaintiffs persisted in their "pattern and

practice of consistent and repeated referrals of Cigna patients" to Tri State, despite the fact that

their provider agreements generally require in-network referrals.  (*Id.* ¶ 41; *see also* Exs. A, B &

C.)  Cigna notified Physician Plaintiffs of their breach, but they still refused to abide by their

agreements,  Physician  Plaintiffs  were  terminated  from  Cigna's  provider  network.   (Compl.

¶¶ 41, 48.)  While this meant that Physician Plaintiffs could no longer provide Tri State with in-

network referrals, Tri State does not allege that Cigna patients with out-of-network benefits

could not still come to Tri State without such referrals.  (*See id.* ¶ 28.)

---

considered the amended partnership agreement and POA [power of attorney] because they were contemplated by or
expressly mentioned in the complaint"); *Cohen v. Nw. Growth Corp.*, 385 F. Supp. 2d 935, 965 (D.S.D. 2005)
("consider[ing] the contract documents" in ruling on a motion to dismiss "because they were referenced by Plaintiffs
in the Amended Complaint").

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts "to state a claim to relief that is *plausible* on its face," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (emphasis added). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The court should "draw on its judicial experience and common sense," and if the facts alleged "do not permit the court to infer more than the mere possibility of misconduct," the claim must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## ARGUMENT

## I.   Plaintiffs' Sherman Act § 1 Claim (Count I) Against Cigna Should Be Dismissed.

Count I alleges violation of Section 1 of the Sherman Act, which requires a plaintiff to "allege facts showing [1] an agreement in the form of a contract, combination, or conspiracy that [2] imposes an unreasonable restraint on trade." *Cannon v. Elk Horn Bank & Trust*, 258 F. Supp. 2d 908, 913 (W.D. Ark. 2002) (citations omitted). "[T]o survive a motion to dismiss, a complaint alleging an agreement in violation of § 1 of the Sherman Act . . . must allege specific facts plausibly suggesting (not merely consistent with) agreement in restraint of trade." *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1223 (8th Cir. 2010) (citation and quotation marks omitted). Broad assertions of a conspiracy are not enough. Instead, Plaintiffs must provide enough *facts* to "nudge[]" the conspiracy claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

As the Supreme Court recognized in *Twombly*, "[i]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive." *Id.* at 546. Thus, "federal courts have been

'reasonably aggressive' in weeding out meritless antitrust claims at the pleading stage." *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) (citations omitted).

Here, the majority of the allegations in the Complaint do not involve Cigna, and instead allege purportedly anti-competitive actions by Methodist and Health Choice that are entirely unrelated to Cigna.  (*E.g.*, Compl. ¶¶ 35-36, 60-64.)  As to Cigna, Plaintiffs contend that it conspired with Health Choice to refuse to provide Tri State with an in-network provider contract, and to terminate Physician Plaintiffs from Cigna's provider network when they refused to stop referring Cigna plan members to Tri State's out-of-network facility.  (*See id.* ¶¶ 7, 77.)  For the reasons described below, Plaintiffs' antitrust claim should be dismissed.

## A. The Sherman Act Protects Cigna's Right to Choose Whether and on What Terms to Do Business with Plaintiffs.

Apparently unwilling to abide by their provider agreements, which require patients to be referred to in-network facilities (*see* Compl. ¶ 41; Exs. A, B & C), Plaintiffs try to contort their dissatisfaction with the terms of their contracts into an antitrust issue.  Stripped of antitrust buzzwords, the Complaint contends that:  (1) Cigna was required to provide Tri State with an in-network contract (*see id.* ¶ 77); and (2) that Plaintiffs-Physicians had the right to refer Cigna patients to out-of-network facilities like Tri State in plain disregard of their provider agreements. (*Id.* ¶ 41.)

The federal antitrust laws will not support such a demand.  As the Supreme Court has explained, "the Sherman Act does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004) (affirming dismissal of complaint alleging that Verizon improperly excluded competitors from its own network) (quotation marks omitted); *see*

*also Pac. Bell Tel. v. Linkline Commc'ns,* 555 U.S. 438, 448 (2009) ("As a general rule, businesses are free to choose the parties with whom they will deal, as well as the prices, terms, and conditions of that dealing.").  Indeed, "it is a longstanding antitrust principle that Section 1 of the Sherman Act does not preclude a party from unilaterally determining the parties with whom it will deal and the terms on which it will transact business." *49er Chevrolet, Inc. v. Gen. Motors Corp.*, 803 F.2d 1463, 1468 (9th Cir. 1986).

Plaintiffs admit that Cigna allows medical providers that it finds acceptable to join Cigna's provider network.  (*See* Compl. ¶ 38.)  Physician Plaintiffs also admit they were told that, as a condition to staying in Cigna's network and retaining access to Cigna patients, they and other providers must agree to abide by certain rules—which require "refer[ring] Cigna patients to in-network facilities."  (*Id.* ¶ 41.) ████████████████████████████████
████████ (Ex. B & C.)  Plaintiffs do not allege—because they cannot—that Physician Plaintiffs complied with those terms, or were even willing to do so.  To the contrary, Physician Plaintiffs admit that when Cigna asked them to abide by the referral rules, they refused.  (Compl. ¶¶ 41, 47.)  Only then were they terminated as in-network providers.  (*Id.* ¶¶ 47-48.)

Cigna has the right "to choose the parties with whom [it] will deal" and to set "the prices, terms, and conditions of that dealing," *Pac. Bell Tel.*, 555 U.S. at 448, and its enforcement of those terms is a legitimate practice—not an antitrust violation.  *See Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1202 (9th Cir. 2012) (noting, in the context of a Sherman Act § 1 claim, that "[b]usinesses may choose the manner in which they do business absent an injury to competition") (citing *Pac. Bell Tel.*, 555 U.S. at 448); *Fuchs Sugars & Syrups, Inc. v. Amstar Corp.*, 602 F.2d 1025, 1030 (2d Cir. 1979) (no § 1 violation for "[a] manufacturer . . . [to] announce the terms under which he will market his product and deal only with those customers

who agree to abide by the terms."). Cigna's decision not to maintain a contract with Physician Plaintiffs, and not to contract with Tri State at all, is therefore not an antitrust violation.

## B.   Plaintiffs Have Failed to Plead a Plausible Agreement in Restraint of Trade.

As an initial matter, Plaintiffs' boycott theory fails because they do not actually allege that Cigna refused to deal with Tri State. Instead, the Complaint merely contends that Cigna discouraged plan members from going to Tri State by drying up referrals from Cigna's network providers—nowhere alleging that members of Cigna-administered plans could not still see Tri State on their own accord or that Cigna would not honor their out-of-network benefits if they did. Without such allegations, Plaintiffs cannot plausibly claim that Cigna boycotted Tri State. *See Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 208 F.3d 655, 659 (8th Cir. 2000) (rejecting unlawful boycott claim based on agreement that prevented nurses from performing anesthesia services at defendant hospitals where, among other things, "the hospitals . . . continued to . . . use nurse anesthetist services, albeit on different contractual terms").

Plaintiffs' claim also fails for another reason. To be cognizable, "[a]ntitrust claims must make economic sense." *Adaptive Power Solutions, LLC v. Hughes Missile Sys. Co.*, 141 F.3d 947, 952 (9th Cir. 1998); *see also, e.g.*, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 596-97 (1986) (no antitrust claim where plaintiff failed to offer a "rational economic motive" that may "give rise to an inference of conspiracy"); *United Magazine Co. v. Murdoch Magazines Distrib., Inc.*, 146 F. Supp. 2d 385, 401 (S.D.N.Y. 2001) (dismissing claim where "plaintiffs' alleged conspiracy . . . makes no economic sense"); *Universal Grading Serv. v. eBay, Inc.*, No. C-09-2755 RMW, 2012 WL 70644, at *5 (N.D. Cal. Jan. 9, 2012) (collecting cases that granted dismissal on a similar basis). Plaintiffs do not meet this requirement.

Plaintiffs allege that Cigna conspired to "drive Tri State out of business and to eliminate it as an effective competitor for Methodist's hospitals and ASCs." (Compl. ¶¶ 7-8.) But this

theory defies common sense.  In particular, Plaintiffs claim that Methodist is "the dominant hospital system" in the Memphis area (*id.* ¶ 4), and then contrive a conspiracy by which Cigna strengthens Methodist's position further by eliminating its competitors—thus purposefully **reducing** the number of medical providers with whom Cigna may contract.  Yet it is in Cigna's interest to **maximize** the number of potential medical providers, not—as Plaintiffs claim—to drive them out of business.  *Cf. Oksanen v. Page Mem'l Hosp.*, 945 F.2d 696, 704 (4th Cir. 1991) (concluding that "a hospital's interests generally would not be furthered by engaging in a conspiracy to restrain competition among doctors").

Similarly, by helping Methodist eliminate competition, Cigna would also be enabling it to charge Cigna super-competitive rates.  Court after court has recognized that such behavior is contrary to basic economic interests.  *See Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of R.I.*, 373 F.3d 57, 66 (1st Cir. 2004) (noting that "Blue Cross would be disserved by making CVS [a drug store chain] a monopolist, which could then exploit Blue Cross by demanding higher reimbursement," and that "courts tend to be skeptical of such claims"); *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1026-27 (10th Cir. 1992) (finding "implausible" the claim that cable operator defendants conspired with TNT, a cable programmer, to aid TNT in monopolizing a market for that channel, because the "achievement goal of the conspiracy would actually be contrary to the interests of the cable operators.").

Plaintiffs' theory is especially implausible given that they also allege that ASC procedures are "almost always less expensive" and that patients prefer being treated at Tri State over Methodist.  (Compl. ¶¶ 3, 24-25.)  If Tri State's services are "cheaper and more effective than . . . competing medical remedies," "it was clearly economically advantageous for [Cigna] to

encourage, rather than discourage" their use; and if Cigna patients in fact did want treatment at Tri State, "it was in [Cigna's] competitive interest to provide access to that treatment." *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 258 F. Supp. 2d 461, 466-67 (W.D. Va. 2003), *aff'd*, 367 F.3d 212 (4th Cir. 2004). Alleging a conspiracy that would have Cigna act otherwise "makes no economic sense." *See Trigon*, 258 F. Supp. 2d at 466-67 (finding that similar allegations of a conspiracy by an insurer to prevent patient referrals to chiropractors "ma[de] no economic sense."), *aff'd*, 367 F.3d at 227 ("As the district court ably explained . . . , this alleged conspiracy does not make economic sense from Trigon's perspective.").

In fact, the Complaint readily explains why it made independent business sense for Cigna not to deal with Plaintiffs without any illicit agreement with Health Choice: Physician Plaintiffs' persistent referrals to out-of-network provider Tri State undermined Cigna's provider network, and courts have repeatedly recognized that protecting the integrity of provider networks is a legitimate interest. *See Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 332 (2003); *Prud. Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 901 (8th Cir. 2005). Moreover, it is ***not*** an antitrust violation for an insurer to incentivize its members to use in-network providers over out-of-network providers, which is what Plaintiffs really object to here. As one court observed in another case brought by Plaintiffs' counsel against Cigna:

> Plaintiffs' antitrust theory posits that CIGNA has inhibited competition among healthcare providers by incentivizing plan subscribers who participate in CIGNA's preferred provider network rather than providers who do not. The problem with Plaintiffs' antitrust claim is that ***there is nothing anticompetitive*** about the complained-of scheme of shifting business to in-network providers.

*Franco v. Conn. Gen. Life Ins. Co.*, 818 F. Supp. 2d 792, 838 (D.N.J. 2011) (emphasis added). As the court recognized, to argue that "incentives to use 'preferred providers' are anticompetitive would be misguided," because "these efforts to keep costs down foster competition among

healthcare providers by encouraging [out-of-network] providers to charge fees which compete with the lower negotiated rates charged by in-network providers." *Id.* at 839.

Arkansas law acknowledges this well-established and legitimate interest in protecting the integrity of insurance networks too, allowing an insurer to refuse to allow a provider in its network if the provider will not "accept the health benefit plan's operating terms and conditions." Ark. Code Ann. § 23-99-204(a)(3). Physician Plaintiffs refused to do so, and Cigna had every right under the law to sever its ties with them. *See Mayor & City Council of Baltimore, Md. v. Citigroup, Inc.*, 709 F.3d 129, 138 (2d Cir. 2013) (affirming dismissal where allegations did not "plausibly . . . suggest that [Defendants'] parallel conduct flowed from a preceding agreement rather than from their own business priorities," and where "Defendants' alleged actions . . . made perfect business sense.").[2]

### C. Plaintiffs Have Failed to Plead Either a *Per Se* or a Rule-of-Reason Group Boycott Claim.

The Complaint does not state whether Plaintiffs' Sherman Act § 1 claim relies on a *per se* or rule-of-reason theory. (*See* Compl. ¶¶ 74-80.) It does not matter, however, as Plaintiffs have not sufficiently pled either one.

*Per Se* **Rule.** Supreme Court "precedent limits the *per se* rule in the boycott context to cases involving **horizontal agreements** among **direct competitors**." *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998) (emphases added). Here, Health Choice and Cigna are not direct competitors, nor do they compete at the same market level—Health Choice is a "joint venture PHO [physician-hospital organization]" (Compl. ¶ 17), while Cigna insures or administers health

---

[2] *See also Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1361 (10th Cir. 1989) (affirming dismissal and holding that "the conspiracy allegation will fail if there is an independent business justification which explains the alleged conspirators' conduct."); *Five Smiths, Inc. v. NFL Players Ass'n*, 788 F. Supp. 1042, 1049 (D. Minn. 1992) (dismissing Sherman Act claim where defendants' "conduct [was] wholly consistent with [defendants'] independent business interests").

plans whose members might access Health Choice's provider network.  (*Id.* ¶ 15)  Put otherwise, the Complaint alleges that Cigna (a buyer of health care services) has entered into a vertical agreement with Health Choice (a provider of health care services).   This forecloses the application of the *per se* rule as a matter of law.  *See NYNEX*, 525 U.S. at 135; *Verma v. Jefferson Hosp. Ass'n*, No. 5:06cv00043-WRW, 2007 WL 4468689, at *6 (E.D. Ark. Dec. 17, 2007) ("to have a boycott, there must be an agreement between parties at the same market level"); *Acre v. Spindletop Oil & Gas Co.*, No. 4:09cv00421 JLH, 2009 WL 4016116, at *5-6 (E.D. Ark. Nov. 18, 2009) (granting dismissal where there were no allegations of "an agreement between parties at the same market level").

**Rule of Reason.**   To the extent Plaintiffs seek to plead a rule-of-reason boycott, this claim fails as well.  To satisfy the rule of reason, Plaintiffs must plausibly allege: (1) Cigna's dominant market power within the relevant market, or (2) "actual detrimental effects" on competition.  *See Flegel v. Christian Hosp., Ne.-Nw.*, 4 F.3d 682, 688 (8th Cir. 1993); *Insignia Sys., Inc. v. News Am. Mktg. In-Store, Inc.*, No. 04-4213 (JRT/AJB), 2006 WL 1851137, at *5 (D. Minn. June 30, 2006) (requiring an antitrust plaintiff who did "not adequately allege actual detrimental effects" to "establish its rule of reason claim by showing that defendants have a dominant market share in a well-defined relevant market" at the Rule 12(b)(6) stage); *Davies v. Genesis Med. Ctr. Anesthesia & Analgesia, P.C.*, 994 F. Supp. 1078, 1097 (S.D. Iowa 1998) (requiring, at the pleadings stage, allegations of "a relevant market" and "genuine market-wide anticompetitive effects, actual or probable.").  The Complaint does neither.

Plaintiffs have not (and cannot) allege that Cigna has a dominant market share in the relevant market—which they identify as outpatient surgical services (Compl. ¶ 29)—for the simple reason that Cigna is a ***health insurer*** who, unlike Plaintiffs, does not provide surgical

services. (*Compare id.* ¶¶ 2-3 (Plaintiffs "provide medical services" and "outpatient surgery services") *with id.* ¶ 15 (Cigna acts as the "'third party administrator' of various employers' healthcare plans or as an insurer of various healthcare insurance policies.").  Because Plaintiffs define the relevant product market as one for surgical services, the claim that Cigna has power in the private health insurance market in the Memphis area—an altogether different market—is insufficient as a matter of law.  *See Little Rock Cardiology Clinic, P.A. v. Baptist Health*, 573 F. Supp. 2d 1125, 1140 (E.D. Ark. 2008) (finding, in evaluating antitrust claims brought by cardiologists against defendants including insurer Arkansas Blue Cross Blue Shield, that "[n]o defendant offers the services that cardiologists offer, which is to say that no defendant competes in the market for cardiology services."), *aff'd*, 591 F.3d 591 (8th Cir. 2009).

Plaintiffs also cannot point to the supposed market power of non-party Methodist in order to establish Cigna's market power.  Plaintiffs allege that Methodist has "a 40 percent market share in the metropolitan Memphis market" (Compl. ¶ 18), and that Methodist "has the dominant hospital system" in that area.  (*Id.* ¶ 30.)  But Plaintiffs' proposed product market is not the entire hospital market, but only a specific and narrow subset of it—"the market for surgical services or procedures which do not require hospitalization."  (*Id.* ¶ 29.)  Because Plaintiffs do not allege what percentage of the outpatient surgical services Methodist occupies, their assertions about Methodist's market power do not support their antitrust claim.

Plaintiffs fare no better in alleging "actual detrimental effects" on competition in the relevant market.  *See Flegel*, 4 F.3d at 688; *Little Rock Cardiology Clinic*, 573 F. Supp. 2d at 1141 ("If a defendant has no market power in the relevant market, the plaintiff must allege adverse effects on competition in the relevant market").  Plaintiffs try to establish competitive harm by alleging that Cigna has a sufficient share of the private health insurance market that

losing access to its plan members would drive Tri State out of business.  This argument suffers from two fatal defects.

First, Plaintiffs premise this argument on the allegation that Cigna controls 42% of the private health insurance market in the Memphis area.  (Compl. ¶ 16.)  But as courts have recognized, this market is too narrow because it ignores patients covered by government insurance like Medicaid or Medicare—the latter of which alone accounts for more than 45 percent of spending on hospital services nationwide in 2012[3]—and patients who have no insurance at all, who may all provide Tri State business.  For instance, in *Little Rock Cardiology Clinic*, the district court rejected a similar attempt by cardiologists to exclude "patients covered by Medicare or Medicaid" and "patients who have no insurance" from the proposed market, concluding that the relevant "potential customers are *all* persons who need cardiologists' services, not just that smaller subgroup who are insured or reimbursed."  573 F. Supp. 2d at 1145-47 (emphasis added).  The Eighth Circuit affirmed, finding that the relevant market was "patients who are able to pay the required fees, not just those who pay using private insurance." 591 F.3d at 597; *see also Marion Healthcare LLC v. S. Ill. Healthcare*, No.12-cv-00871-DRH-PMF, 2013 WL 4510168, at *10-11 (S.D. Ill. Aug. 26, 2013) (following *Little Rock*, concluding that plaintiffs "failed to include in the relevant markets all potential buyers" by excluding Medicare and Medicaid patients, and granting dismissal).  Plaintiffs fail even to acknowledge this broad pool of potential patients who may provide Tri State with business.[4]

---

[3] National Health Expenditure Table 4, "National Health Expenditures by Source of Funds and Type of Expenditures: Calendar Years 2006-2012," available at https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/NationalHealthExpendData/Downloads/tables.pdf.

[4] As HealthChoice argues in its motion to dismiss, the fact that Plaintiffs have limited their proposed market to private insurance patients and ignored uninsured patients and those covered by government insurance also means that Plaintiffs have failed to plead a product market.  (*See* Dkt. 44 at 11-13; *Little Rock Cardiology Clinic PA*, 591 F.3d at 596-97; *Marion Healthcare LLC*, 2013 WL 4510168, at *10-11.)  Additionally, as HealthChoice argues, Plaintiffs have also failed to allege why the relevant geographic market should be limited to the Memphis

Second, even if private insurance formed the universe of options for Tri State's source of patients, Plaintiffs give no reason why Tri State cannot contract with one of the other private insurers (who collectively comprise the remaining 58% of that market)—let alone that Cigna's actions somehow precluded Tri State from so doing.  That Tri State has access to nearly sixty percent of the market, even assuming they do not have access to Cigna's plan members, is alone enough to defeat any claim of detrimental competitive effects.  *See Gold v. Methodist Healthcare Memphis Hosp.*, No. 06-2329, 2008 WL 6875019, at *6 (W.D. Tenn. Jan. 15, 2008) (finding that plaintiffs-physicians failed to allege that defendants-hospitals' actions "decreased competition for radiological services in the Memphis market" where defendants "control[led] only forty percent of that market" and plaintiffs did not allege that defendants' actions excluded them from "the remaining sixty percent" of the market).

### D.      Plaintiffs Have Failed to Plead an Antitrust Injury.

Even where a complaint states an actionable claim under the Sherman Act, a plaintiff must separately allege a cognizable "antitrust injury" to avoid dismissal.  *See Fair Isaac Corp. v. Experian Info. Solutions, Inc.*, 650 F.3d 1139, 1144-45 (8th Cir. 2011); *see also Davies*, 994 F. Supp. at 1096 (dismissing antitrust claims where "Plaintiffs have not pleaded an antitrust injury"); *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450-451 (6th Cir. 2007) (en banc) (holding that "antitrust standing is a . . . pleading-stage inquiry" and noting, in affirming dismissal, that a 'naked assertion' of antitrust injury . . . is not enough") (quoting *Twombly*, 550 U.S. at 557). This "requires a showing of harm **to competition**, not merely harm to an individual or business." *TheMLSonline.com, Inc. v. Reg'l Multiple Listing Serv. of Minn., Inc.*, 840 F. Supp. 2d 1174, 1181 (D. Minn. 2012) (citation omitted, emphasis added); *see also Triple 7, Inc. v. Intervet, Inc.*,

---

metropolitan area.  (Dkt. 44 at 13-14; *see Little Rock Cardiology Clinic PA*, 591 F.3d at 598.)  Cigna agrees, and joins both these arguments.

338 F. Supp. 2d 1082, 1086 (D. Neb. 2004) (requiring plaintiff to show "actual adverse effect on competition as a whole in the relevant market; to prove [plaintiff] has been harmed as an individual competitor will not suffice.") (citation omitted).

The Complaint fails these requirements.  Plaintiffs allege that Defendants' actions caused them "lost patient referrals," "lost revenues," and "decreased utilization."  (Compl. ¶¶ 78, 12.) But that is not enough—these allegations do not even attempt to show harm ***to competition*** and instead allege only economic losses to ***Plaintiffs themselves***.  *See, e.g.*, *Minn. Ass'n of Nurse Anesthetists*, 208 F.3d at 661 ("harm to individual competitors, not to competition . . . is not an antitrust injury."); *S&S Commc'ns v. Local Exch. Carriers Ass'n, Inc.*, No. Civ 02-1028, 2006 WL 519651, at *11 (D.S.D. Mar. 1, 2006) ("Anti-trust injury is not shown by mere harm to a competitor.  . . .  Mere economic loss to plaintiff is not sufficient.") (citation omitted); *Lie v. St. Hoseph Hosp. of Mount Clemens, Mich.*, 964 F.2d 567, 570 (6th Cir. 1992) (finding that plaintiff-physician's evidence of "reduction in his own income" as a result of suspension of staff privileges was "insufficient to show an unreasonable restraint of trade"); *Tarabishi v. McAlester Reg'l Hosp.*, 951 F.2d 1558, 1569 n.15 (10th Cir. 1991) (finding no detrimental effects on competition where physician-plaintiff's staff privileges were suspended, but where plaintiffs failed to show "that consumer choices were in fact reduced or impaired.").

Plaintiffs' allegations that Defendants sought "to drive Tri State out of business" (Compl. ¶ 8) do not clear the antitrust injury hurdle.  This is merely another way of claiming that one of the Plaintiffs suffered economic losses, and this too does not plausibly allege an antitrust injury. *Fair Isaac Corp. v. Experian Info. Solutions Inc.,* 645 F. Supp. 2d 734, 751 (D. Minn. 2009) ("merely showing that [defendant] targeted and caused injury to [plaintiff] is insufficient to show an antitrust injury necessary to establish antitrust standing."), *aff'd*, 650 F.3d 1139 (8th Cir.

2011); *Richter Concrete Corp. v. Hilltop Concrete Corp.*, 691 F.2d 818, 823 (6th Cir. 1982) ("Anticompetitive conduct is conduct designed to destroy competition, not just to eliminate a competitor."); *TheMLSonline.com*, 840 F. Supp. 2d at 1182 (dismissing Sherman Act claim because "[a]t most, [Plaintiff] alleges that he was the target of a conspiracy aimed at driving *him* out of the real-estate market," but "harm to Plaintiff does not in and of itself establish an antitrust injury") (emphasis in original).

Moreover, both the relevant facts and law refute Plaintiffs' contention that Tri State's exclusion from the market would harm competition.  (*See* Compl. ¶¶ 66, 30.)  As a factual matter, the Moody's report on which Plaintiffs rely (*see id.* ¶ 18) refutes this allegation because the report states that Methodist "operates *in a highly competitive market* with one other sizable multi-facility system (Baptist Health) holding a steady 33% market share."[5]  And as a matter of law, the Supreme Court has expressly rejected the notion that "removal of some elements of price competition [necessarily] distorts the market, and harms all the participants," because such a theory would "equate injury in fact with antitrust injury."  *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 339 n.8 (1990) (citation and internal quotation omitted); *Rutman Wine Co. v. E. J. Gallo Winery*, 829 F.2d 729, 734 (9th Cir. 1987) ("While appellant clearly pleads injury to itself, its conclusion that competition has been harmed thereby does not follow."); *Blue Cross & Blue Shield of R.I.*, 373 F.3d at 66 ("harm does not mean a simple loss of business or even the demise of a competitor, but an impairment of the competitive structure of the market").

Plaintiffs cannot overcome this pleading deficiency by alleging vague harm to "[c]onsumer welfare."  (Compl. ¶ 66.)  As a threshold matter, Plaintiffs do not allege that Tri

---

[5] Moody's Investors Service, Global Credit Research, "Ratings Action:  Moody's changes Methodist Le Bonheur Healthcare's (TN) outlook to positive; A2 affirmed," *available at* https://www.moodys.com/research/Moodys-changes-Methodist-Le-Bonheur-Healthcares-TN-outlook-to-positive--PR_286156 (emphasis added), attached as Ex. D.

State cannot see Cigna's plan members, only that Cigna prohibits Physician Plaintiffs and others from referring Cigna plan members to Tri State. And Plaintiffs admit that Tri State continues to see at least some patients in the Memphis metropolitan area despite Defendants' alleged conduct. (*See id.* ¶¶ 2, 12.) Without alleging that consumers have lost the ability to receive Tri State's services, Plaintiffs cannot argue that their welfare has been harmed.

Moreover, even if Tri State had alleged that Cigna's plan members no longer had access to Tri State at all, even *elimination* of one supplier does not automatically establish harm to consumer welfare. *See, e.g.*, *Atl. Richfield*, 495 U.S. at 339 n.8 (refusing to "equate injury in fact with antitrust injury."); *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1433 (9th Cir. 1995) ("Of course, conduct that eliminates rivals reduces competition. *But reduction of competition does not invoke the Sherman Act until it harms consumer welfare*.") (emphasis added).[6] And since Plaintiffs still provide surgical services to patients and thus remain in the market (*see* Compl. ¶¶ 2-3, 12-14), the logical leap to harm to competition is farther still.

Finally, Plaintiffs allege no facts to show that, as a result of Defendants' alleged actions, patients cannot access similar services in the entire Memphis metropolitan area, including from other ASCs. Without such facts, harm to consumer welfare cannot be presumed. *See Bhanusali*, 2013 WL 4828657, at *10 ("while patients' choice of doctor may be altered in some respect [as a result of removal of one doctor], absent specific facts about the service that remains in the relevant market . . . it is not plausible that such choice would be so limited as to render patients

---

[6] *See also Blue Cross & Blue Shield of R.I.*, 373 F.3d at 66; *Davies*, 994 F. Supp. at 1097 ("The Court recognizes that to injure or destroy one or two competitors in a market through unfair competition will not, if the market has many competitors, substantially affect consumers or anyone else besides the competitors injured. [ . . . ] Mere unfair competition, without more, does not violate antitrust laws.") (citations omitted); *Bhanusali v. Orange Reg'l Med. Ctr.*, No. 10-cv-6694 (CS), 2013 WL 4828657, at *10 (S.D.N.Y Aug. 12, 2013) (refusing to credit, at the Rule 12(b)(6) stage, the "allegation that patient choice is limited by the removal of one orthopedic surgeon from among an unstated number in the relevant geographical area" as "wholly conclusory and without factual basis"); *aff'd in relevant part and rev'd in part on other grounds*, —F. App'x—, 2014 WL 3446066, at *1 (2d Cir. July 16, 2014).

in the relevant market unable to access similar services."), *aff'd in relevant part and rev'd in part on other grounds*, 2014 WL 3446066, at *1 (affirming dismissal of antitrust claims and agreeing with district court's determination that plaintiff's allegations of "harm to the marketplace" were "implausible");  *see also Guinn v. Mt. Carmel Health*, No. 2:09-CV-226, 2012 WL 628519, at *6 (S.D. Ohio Feb. 27, 2012) (finding that plaintiff-physician failed to allege antitrust injury where "eliminating [plaintiff] as a competitor did not eliminate competition between Defendants and other doctors in the relevant geographic area nor did it prevent the relevant patients from choosing from a large array of doctors").

## II.   Plaintiffs' Tortious Interference with Business Expectancy Claim Against Cigna (Count III) Should Be Dismissed.

Plaintiffs accuse Cigna of tortiously interfering with Plaintiffs' business expectancy in providing medical services to Cigna plan members by terminating Physician Plaintiffs from Cigna's network and limiting Cigna's providers from referring patients to Tri State.  (*See* Compl. ¶ 90.)  This claim fails for two reasons.

First, Arkansas law recognizes that a party cannot tortiously interfere with contracts or relationships to which it is a party.  *See, e.g.*, *Faulkner v. Ark. Children's Hosp.*, 69 S.W.3d 393, 405 (Ark. 2002) ("A party to a contract . . .  cannot be held liable for interfering with the party's own contract."); *see also J.K.P. Foods, Inc. v. McDonald's Corp.*, 420 F. Supp. 2d 966, 969-70 (E.D. Ark. 2006) (dismissing with prejudice a claim that McDonald's tortiously interfered with plaintiff's sale of McDonald's restaurants because McDonald's was a party to the franchise agreement).  Here, the Complaint acknowledges that Cigna had contractual relationships with each of the groups related to Plaintiffs' tortious interference claim:  Physician Plaintiffs (Compl. ¶¶ 13-14); Cigna's in-network medical providers (*id.* ¶ 15); and patients covered by Cigna-

administered plans who are the subject of Plaintiffs' business expectancy (*id.*).  As a matter of law, Cigna cannot tortiously interfere with these preexisting contractual relationships.

The district court's opinion in *Marion Healthcare LLC v. Southern Illinois Healthcare,* No. 12-cv-00871-DRH-PMF, 2013 WL 4510168 (S.D. Ill. Aug. 26, 2013), is directly on point. There, a provider brought a tortious interference claim nearly identical to the one here, alleging that the defendant-insurer had "improperly caused in-network physicians and plan participants . . . not to use [plaintiff's] out-of-network surgical center." *Id.* at *14.  The court dismissed this claim with prejudice, concluding that the insurer was "taking action pursuant to already existing relationships." *Id.*  Other courts have rejected similar claims,[7] and this Court should do the same here.

Second, Plaintiffs also fail to meet the "improper" element of their tortious interference claim. *El Paso Prod. Co. v. Blanchard*, 269 S.W.3d 362, 647-48 (Ark. 2007) ("[F]or an interference to be actionable, it must be improper.") (citation omitted).  Plaintiffs attempt to meet this requirement as to Cigna solely by citing to their Sherman Act allegations (*see* Compl. ¶ 90), but because their Sherman Act claim is itself deficient, Plaintiffs' derivative claim of interference with business expectancy must fail as well.  As set forth above, given that Physician Plaintiffs admittedly breached their contracts by referring patients to Tri State, an out-of-network facility, there is nothing "improper" about Cigna's alleged conduct here, and thus no basis for a tortious interference claim. *See Acre*, 2009 WL 4016116, at *4 (dismissing tortious interference claim because the conduct plaintiffs claimed was "improper" was the "routine and customary practice

---

[7] *See Ne. Ga. Cancer Care, LLC v. Blue Cross & Blue Shield of Ga., Inc.*, 676 S.E.2d 428, 433 (Ga. Ct. App. 2009) (affirming dismissal of claim that Blue Cross tortiously interfered with plaintiff-provider's relationships with plan participants by excluding plaintiff from Blue Cross's network, because "Blue Cross [was] an integral part of the business relationships alleged in [plaintiff's] tortious interference claim."); *Ex parte Blue Cross & Blue Shield of Ala.*, 773 So. 2d 475, 480 (Ala. 2000) (rejecting dentist's claim that Blue Cross tortiously interfered with his relationship with his patients, because "Blue Cross was, itself, a party to these same contractual relations.").

in the oil and gas industry"); *cf. W. Memphis Adolescent Residential, LLC v. Compton*, 374

S.W.3d 922, 928 (Ark. App. 2010) (rejecting argument that defendants had acted "improperly"

because they allegedly "conspired to act in concert to force [plaintiffs] out of business," where

"[plaintiff] has failed to show that [defendants] did anything more than engage in privileged

competition.").

## CONCLUSION

For all of the foregoing reasons, Counts I and III of the Complaint should be dismissed.

Dated:  August 29, 2014                                  Respectfully submitted,

                                                          /s/  *Chad W. Pekron*
                                                         _____

Joshua B. Simon                                          John E. Tull III (84150)
Warren Haskel                                            Chad W. Pekron (2008144)
Ryan D. McEnroe                                          R. Ryan Younger (2008209)
Dmitriy G. Tishyevich                                    QUATTLEBAUM, GROOMS,
   (all admitted *pro hac vice*)                         TULL & BURROW, PLLC
KIRKLAND & ELLIS LLP                                     111 Center Street, Suite 1900
601 Lexington Avenue                                     Little Rock, AR  72201
New York, NY  10022                                      Telephone:  (501) 379-1700
Telephone:  (212) 446-4800                               Facsimile:  (501) 379-1701
Facsimile:  (212) 446-4900                               jtull@qgtb.com
joshua.simon@kirkland.com                                cpekron@qgtb.com
warren.haskel@kirkland.com                               ryounger@qgtb.com
ryan.mcenroe@kirkland.com
dmitriy.tishyevich@kirkland.com

*Counsel for Defendant Cigna Healthcare of Tennessee, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of August, 2014, I electronically filed a redacted version of the foregoing document with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.  I further certify that on this 29th day of August, 2014, I filed an unredacted version of the foregoing document **under seal** with the Clerk of Court by hand-delivery, and certify that I have served an unredacted copy *via* electronic mail and regular U.S. mail, postage prepaid, upon the following counsel of record:

Scott E. Poynter, Esq.
William Thomas Crowder, Esq.
Corey Darnell McGaha, Esq.
Emerson Poynter LLP
1301 Scott Street
Little Rock, AR 72202

Lea Carol Owen, Esq.
Baker, Donelson, Bearman,
 Caldwell & Berkowitz
211 Commerce Street, Suite 800
Nashville, TN 37201

Deborah J. Winegard, Esq.
Whatley Kallas, LLP
1068 Virginia Avenue NE
Atlanta, GA 30306

John G. Emerson, Jr., Esq.
Emerson Poynter LLP
830 Apollo Lane
Houston, TX 77058

Joe R. Whatley, Jr., Esq.
W. Tucker Brown, Esq.
Whatley Kallas, LLP
2001 Park Place North, Suite 1000
Birmingham, AL 35203

Leigh M. Chiles, Esq.
Leo M. Bearman, Jr., Esq.
Matthew S. Mulqueen, Esq.
Baker, Donelson, Bearman,
 Caldwell & Berkowitz
165 Madison Avenue, Suite 2000
Memphis, TN 38103

Edith M. Kallas, Esq.
Whatley Kallas, LLP
1180 Avenue of the Americas, Suite 2000
New York, NY 10036

/s/ Chad W. Pekron
Chad W. Pekron