**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**TRI STATE ADVANCED SURGERY
CENTER, LLC; GLENN A. CROSBY, M.D.
F.A.C.S., and MICHAEL HOOD, M.D.,**

      **Plaintiffs**

**v.**                                  **Case No.: 3-14-CV-00143-JM**

**HEALTH CHOICE, LLC, and
CIGNA HEALTHCARE OF TENNESSEE, INC.**

      **Defendants**

---

**CONNECTIGUT GENERAL LIFE INSURANCE
COMPANY, CIGNA HEALTH AND LIFE
INSURANCE COMPANY; CIGNA HEALTH AND
LIFE INSURANCE COMPANY, and CIGNA
HEALTHCARE OF TENNESEE, INC.,**

      **Counterclaim Plaintiffs**

**v.**

**SURGICAL CENTER DEVELOPMENT, INC.
D/B/A SURGCENTER DEVELOPMENT, AND
TRI STATE ADVANCED SURGERY CENTER, LLC**

      **Counterclaim Defendants**

---

**MEMORANDUM IN SUPPORT OF**

**COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS**

---

Counterclaim Defendants Tri State Advanced Surgery Center ("Tri State") and Surgical Center Development, Inc. ("SurgCenter") submit this Memorandum in support of their motion to dismiss Cigna's[1] Counterclaims for failure to state a claim. Cigna fails to plausibly state any claim under the Racketeer and Influenced Corrupt Organizations Act, ("RICO"), the Employee Retirement Income Security Act ("ERISA"), state fraud, or other state law claims against either Tri State or SurgCenter and, in fact, has not even pled sufficient facts to establish standing to assert its claims.[2]

## I.   INTRODUCTION

### A.  Factual Background

"Tri State is an outpatient surgical center located in Marion, Arkansas where physicians perform surgical and related healthcare services."  Counterclaim ¶ 54.  "Tri State has not entered into a provider network agreement with Cigna" and is therefore out-of-network with Cigna. As such, Cigna pays Tri State for medically necessary services provided to its members pursuant to the out-of-network benefits in a member's health plan.  *Id.*  Generally, these plans limit the amount that Cigna pays for out-of-network services and "explicitly exclude from coverage providers' charges 'to the extent that they are more than Maximum Reimbursable Charges.'" *Id.* at ¶ 41.  In other words, Cigna rarely, if ever, pays out-of-network providers such as Tri State their full billed charges.

In order to allow patients to use their out-of-network benefits at the facility of their choice and at affordable rates, Tri State reduces patient responsibility amounts to their in-

---

[1] "Cigna" includes Defendant and Counterclaim Plaintiff Cigna Healthcare of Tennessee, Inc., and Counterclaim Plaintiffs Connecticut General Life Insurance Company, and Cigna Health and Life Insurance Company.

[2]  The Counterclaims include RICO and tortious interference claims against both Counterclaim Defendants, ERISA, fraud, and unjust enrichment claims against Tri State, and aiding and abetting claims against SurgCenter.

network benefit levels. *Id.* at ¶ 69.  This practice is fully disclosed to Cigna on the claims forms

that Tri State submits to Cigna for payment for services provided to Cigna members. *Id.*

Nevertheless, it its Counterclaims, Cigna asserts that Tri State's patient billing and collection

policies constitute fraud.

Importantly, nowhere in its Counterclaims does Cigna allege that it was damaged by Tri

State's patient billing and collection policies.  It cannot because presumably Cigna bears some

financial responsibility for paying for its members' medically necessary services.  Instead, Cigna

has taken the position that it should not have to pay anything foe services provided to its

members at Tri State merely because Tri State does not bill its members their full out-of-network

co-pays and deductibles.  As such, Cigna's Counterclaims do not seek the recovery of damages,

but rather to improperly create a windfall.

### B.  Summary of Argument

Cigna does not and cannot allege fraud or a fraudulent scheme because no fraud has

occurred.  As alleged in Cigna's Counterclaims, and detailed herein, Tri State disclosed its

practice of accepting in-network benefits rather than requiring Tri State patients to pay out-of-

network amounts.   Cigna's allegations of reliance have no factual basis and are nothing more

than a "formulaic recitation" of one of the elements of Cigna's fraud-based causes of action.

Cigna has not plausibly alleged fraud, reliance or damages.  Cigna has also not pled the existence

of a RICO enterprise.  Therefore, Cigna's RICO claims as well as the state law claims for fraud

and aiding and abetting fraud should be dismissed.

Cigna's other claims fare no better.  In fact, Cigna's failure to plausibly allege injury or

damages is fatal to all of Cigna's claims.  In addition, because Cigna does not seek equitable

relief and has not followed the necessary procedures related to an adverse determination under ERISA, Cigna may not pursue an ERISA cause of action.  Moreover, ERISA preempts all of Cigna's state law claims.  However, even if Cigna's state law claims were not preempted, Cigna does not plausibly allege violations of any state laws. In addition to not alleging injury or damages, Cigna has not pled tortious interference and has not alleged that its members or its in-network providers severed their relationship with Cigna.  Accordingly, under Arkansas law, Cigna's tortious interference claim must be dismissed.

Finally, under the guise of an unjust enrichment claim, Cigna asks this Court to allow it to retain the benefit of the services Tri State provided to Cigna's members while relieving Cigna of the obligation to pay for those services.  In other words, Cigna seeks to be unjustly enriched at the expense of the Counterclaim Defendants.  This is the essence of Cigna's Counterclaims. Cigna's Counterclaims are neither plausibly pled nor legally sufficient and, accordingly, should be dismissed for failure to state a claim.

## II.      STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, each plaintiff must plead sufficient facts "to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard is not met by the pleading of labels or conclusions or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Where a complaint pleads fact that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Topchian v.*

*JP Morgan Chase Bank, NA*, 2014 U.S. App. LEXIS 14280 *8 (8th Cir. 2014) (quoting *Twombly*, 550 U.S. at 557).

## III.   CIGNA LACKS STANDING TO PURSUE THE COUNTERCLAIMS.

Article III standing requires a plaintiff to show "injury in fact." *United States v. Metro.St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir. 2009). "The standing requirements to bring a claim under … RICO are more stringent than the injury-in-fact test for Article III standing." *Gomez v. Wells Fargo Bank N.A.*, 2010 U.S. Dist. LEXIS 89701 *22 (D. Minn. Aug. 30, 2010). In order to bring a RICO action, a person must allege that he was "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). "[A] showing of injury requires proof of concrete financial loss, and not mere injury to a valuable intangible property interest." *Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 728 (8th Cir. 2004) (citations omitted).

First, Cigna's claims are brought on behalf of three entities.  Yet, Cigna has grouped all of the Counterclaim Plaintiffs together and has failed to plead that any one of the Counterclaim Plaintiffs has sustained injury as a result of the conduct alleged in the Counterclaims. Accordingly, all claims should be dismissed for failure to allege a cognizable injury.

Second, Cigna lacks standing to pursue claims against Tri State brought on behalf of ERISA plans because Cigna has not suffered injury. If any injury resulted from overpayments to Tri State, the plans – rather than Cigna – suffered the injury.  Cigna likewise lacks standing with regard to the harm Cigna vainly attempts to allege that Cigna's members suffered. First, nothing could be further from the truth. As set forth herein, Tri State's practice of accepting in-network benefits was fully disclosed to its patients and Cigna patients benefited from paying lower in-

network amounts.  Counterclaim ¶¶ 35, 69. Moreover, Cigna's members had a contractual right to use out of network providers. Counterclaim ¶ 26. Cigna's members who utilized Tri State were able to use the facility of their choice which provides many conveniences and benefits not available at hospitals. However, even if Cigna's allegations regarding Cigna's members were not at odds with the facts, Cigna would not have standing to pursue such claims on behalf of its members because Cigna did not and could not have suffered injury as a result of the alleged conduct.

## IV.     CIGNA'S RICO CLAIMS FAIL FOR NUMEROUS REASONS.

This action involves a simple payment dispute between Cigna and Tri State.  At issue is whether Cigna is obligated to pay Tri State for medically necessary services provided to Cigna's members and insureds when Tri State honored the members' in-network benefits rather than collecting out-of-network benefits. This is simply not a RICO violation. "RICO 'does not cover all instances of wrongdoing.  Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity.'"  *Crest Construction II, Inc. v. John Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (quoting *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006)).  Cigna's attempt to contort this garden-variety payment dispute into a RICO claim fails because Cigna has not pled the threshold requirements for a RICO claim.

"To survive a Rule 12(b)(6) motion, a civil RICO claim must allege the defendants participated in the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009) (quoting *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Moreover, in order to establish standing, Cigna must plausibly allege an injury factually and proximately caused by racketeering activity.  18

U.S.C. § 1964(c); *Newton v. Tyson Foods, Inc.*, 207 F.3d 444, 447 (8th Cir. 2000). Because Cigna has not plausibly alleged the elements of a RICO claim or injury resulting from racketeering activity, Cigna's federal and state RICO claims must be dismissed.

 **A. CIGNA HAS NOT PLAUSIBLY PLED PREDICATE ACTS OR INJURY FLOWING FROM RACKETEERING ACTIVITY.**

 **1. The Alleged Predicate Acts Set Forth in Cigna's RICO Counterclaims**

Cigna's RICO claims are predicated on the Counterclaim Defendants' alleged commission of mail and wire fraud in violation of 18 U.S.C. Sections 1341 and 1343. Counterclaim ¶¶ 96-97. Accordingly, Cigna's fraud allegations must be pled with particularity. "Under Rule 9(b)'s heightened pleading standard, allegations of fraud … [must] be pleaded with particularity.  In other words, Rule 9(b) requires plaintiffs to plead the who, what, what, when, where, and how: the first paragraph of any newspaper story." *Crest Construction*, 660 F.3d at 353 (quoting *Summerhill v. Terminix, Inc.* 637 F.3d 877, 880 (8th Cir. 2011)).  Failure to plead "any one element of a RICO claims means the entire claims fails." *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1028 (8th Cir. 2008).  *See also Crest Construction*, 660 F.3d at 355 (accord). As the First Circuit has cautioned, "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Efron v. Embassy Suites, Inc.*, 223 F.3d 12, 20 (1st Cir. 2000).  Cigna has not plausibly alleged the elements of a RICO claim with the requisite particularity.  Cigna's failure is further exacerbated by the fact that the Counterclaims are brought on behalf of three entities but no facts are alleged with regard to each entity.  Cigna's allegations simply cannot survive close scrutiny.

The lynchpin of Cigna's Counterclaims and the source of Cigna's alleged injuries is Tri State's alleged failure to collect the full amount of co-payments and deductibles that Cigna contends are required by the terms of the plans, which Cigna characterizes as a fraudulent billing scheme. Counterclaim ¶¶ 3, 5, 27-45, 57, 65, 88. Yet, Cigna concedes Tri State disclosed to Cigna that rather than collecting out-of-network patient responsibility amounts, Tri State was instead collecting patient responsibility amounts based on in-network calculations.  Counterclaim ¶¶3, 5, 60, 69.  Tri State also plainly disclosed to its patients that it is an out-of-network provider with Cigna and advised that the patient's financial responsibility would be calculated as though Tri State were an in-network provider. Counterclaim Defs.' Ex.1.[3] In an effort to obscure the fact that Tri State disclosed the "fraud" that CIGNA contends resulted in injury, Cigna manufactures a "fee forgiving scheme," based on Tri State's policy of recognizing patients' in-network benefits, and a "dual pricing scheme," based on Tri State's use of Medicare rates to estimate patients' in-network benefits. *See, e.g.*, Counterclaim ¶¶ 1, 56, 59.

Obviously, the "fee forgiving scheme" was not a fraudulent scheme because Cigna admits it was disclosed. Counterclaim ¶ 69. As the Eighth Circuit explained in *Schoedinger v. United Healthcare of the Midwest, Inc.*, 557 F.3d 872, 879 (8th Cir. 2009), if the defendant's policy has been disclosed to the plaintiff, as a matter of law, the defendant's conduct cannot

---

[3]Counterclaim Defendants may refer to this document because Cigna references it in its Counterclaims, including at paragraphs 3-5, 44, 60-61, 66-67 and 72 and because the document is contemplated by the Complaint. *See Dittmer Props., L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013) ("In adjudicating Rule 12(b) motions, courts are not strictly limited to the four corners of complaints" and may consider among other things, "matters incorporated by reference" in the Complaint; finding that "the district court properly considered the amended partnership agreement and POA because they were contemplated by or expressly mention in the complaint.")  However, even if the Court determines that consideration of this document is not appropriate, dismissal is appropriate based on Cigna's concession that Tri State disclosed to Cigna its practice of reducing the amount of patient responsibility.  *See* Counterclaim ¶¶ 3, 5, 60, 69.

constitute a scheme to defraud.  ("It is not a scheme to defraud to adopt as a claims policy, 'When in doubt, apply the discount and truthfully disclose it.'")

A RICO claim based on the "dual pricing scheme" is likewise foreclosed by Cigna's own allegations.  Cigna's only contention regarding the insufficiency of Tri State's disclosures is that Tri State did not disclose its methodology for computing its charges and did not tell Cigna that it was using a different rate to estimate the patient's in-network responsibility from the rate used to set its billed charges submitted to Cigna.  Counterclaim ¶¶ 69-70.  Cigna's summary of the alleged fraudulent scheme demonstrates the fallacy of these allegations and the implausibility of Cigna's RICO claims.  In the first paragraph of Cigna's synopsis of the scheme, Cigna makes the following admission:  "Tri Center [sic] **estimates** to the Cigna plan members the cost of their outpatient procedures **based on Medicare rates to approximate rates that Cigna has negotiated with in-network providers**."  Counterclaim ¶ 60 (emphasis added).  Further, Cigna acknowledges that it does not providers' out-of-network charges "'to the extent that they are more than [a plan's] Maximum Reimbursable Charges.'"  *Id.* at ¶ 41 (quoting from plan documents.) Therefore, in its allegations, Cigna acknowledges that one of the alleged "dual prices" was in fact not a price at all, but rather an estimate used to approximate a rate Cigna had negotiated with other medical providers and that it doesn't pay the other alleged "dual price," but rather pays out-of-network providers pursuant to members' plan documents..

## 2.  Cigna Has Not Pled Fraud or Injury with the Particularity Required by RICO.

Cigna's allegations of RICO fraud and injury are not plausibly pled and therefore must fail for several reasons.  First, as Cigna concedes, the charge that Tri State initially provides a Cigna plan member is simply an **estimate** of Cigna's in-network rate, used only to calculate what

Tri State will charge the patient – not some kind of "dual price." Counterclaim ¶ 60 (emphasis added). See also Counterclaim ¶ 44. At the time of service, Tri State collects an amount estimated to be equal to the patient's in-network responsibility and tells the patient Tri State will process the claim with the intention of honoring in-network deductibles and co-insurance. Counterclaim ¶¶ 3, 60; Counterclaim Defs.' Ex. 1.

Once Tri State submits the claim for processing, Cigna, *not* Tri State determines the amount of the claim that Cigna will allow. Counterclaim ¶ 27. Tri State cannot determine final responsibility until Cigna calculates the allowed amount under a patient's plan, which is rarely the full amount of billed charges submitted by out-of-network providers. *See* Counterclaim ¶¶ 29, 35, 43. Once Cigna has determined the allowed amount and has issued the plan member an explanation of benefits ("EOB"), the plan member is directed to provide the EOB to Tri State so that Tri State can properly credit the account and make any necessary adjustments to assure that the promise of in-network liability is honored.  Counterclaim Defs.' Ex. 1.  As Cigna's own pleadings demonstrate, Tri State's initial estimate of the patient's financial responsibility is not fraudulent but is instead a necessary first step in determining a patient's ultimate liability.

Second, and even more damning, is Cigna's admission that Tri State utilizes Medicare rates in order **to approximate in-network rates**.  Counterclaim ¶¶4, 44, 60-61.  Cigna does not plausibly allege that the Counterclaim Defendants engaged in a nefarious scheme utilizing different rates with the intent to deceive Cigna to collect inflated charges.  Instead, Cigna's allegations demonstrate that Tri State utilized Medicare rates to approximate patients' in-network responsibility, told patients that Tri State would honor in-network benefits and then disclosed the practice to Cigna. Cigna provides no explanation – much less particularity – as to how Tri State's

failure to disclose the precise methodology used to estimate the patient's in-network liability can constitute a fraudulent scheme. "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy [Rule 9(b)]." *Schaller Tel. Co. v. Golden Sky Sys.*, 298 F.3d 736, 746 (8th Cir. 2002).

Cigna does not even explain and cannot plausibly allege a reason why Tri State would have a duty to disclose this methodology. Cigna likewise does not allege why the methodology used to estimate patient responsibility would be material, given that Tri State discloses the fact that the facility computes patient responsibility utilizing in-network rates. Counterclaim ¶¶ 69-70. Thus, Cigna also does not plausibly explain how Tri State's alerting Cigna to the fact that Tri State had calculated the patient's responsibility based on in-network rates was either false or material. *See* Counterclaim ¶ 70. Merely labeling Defendants' conduct as "fraudulent does not make [it] so." *Demerath Land Co. v. Sparr,* 48 F.3d 353, 355 (8th Cir. 1995). Yet, Cigna offers nothing more.

Cigna likewise provides no explanation with regard to materiality despite the fact that materiality is an element of a RICO mail or wire fraud claim. *Neder v. United States*, 527 U.S. 1, 25 (1999); *Schoedinger,* 557 F.3d at 878. Because Cigna alleges that Medicare rates were used to approximate in-network rates, and because Tri State disclosed that it was utilizing in-network rates, Cigna does not plausibly allege a fraudulent scheme.

Third, Cigna fails to allege an injury resulting from the alleged predicate acts because Cigna does not plausibly allege reasonable reliance upon Tri State's failure to disclose its methodology or Tri State's statement that the insured's portion of the bill had been reduced. Instead, Cigna offers only conclusory allegations of reliance on behalf of all Counterclaim

11

Plaintiffs. *See* Counterclaim ¶¶ 10, 64, 101. Such allegations of reliance are insufficient, especially given Cigna's admissions regarding the disclosures made by Tri State, and given Cigna's concession that Tri State was using Medicare rates to approximate in-network responsibility. *See Jennings v. Bonus Bldg. Care, Inc.*, 2014 U.S. Dist. LEXIS 62836, *31 (W.D. Mo. May 7, 2014) (quoting *Twombly*, 550 U.S. at 555) where the District Court dismissed plaintiffs' claims where plaintiffs alleged that that they had been "fraudulently induced into entering Unit Franchise Agreement[s]" because the alleged action did not "rise above an impermissible, 'formulaic recitation of [one of] the elements of a cause of action.'"

Cigna also fails to allege damages resulting from the Counterclaim Defendants' conduct. Cigna purports to provide examples of Tri State's "fraud."  Counterclaim ¶ 72. Clearly, however, these "examples" do not comport with Rule 9(b). As set forth above, Cigna provides no explanation as to why the cited conduct is fraudulent or how Cigna could have reasonably relied on such non-fraudulent conduct.  Further, Cigna fails to allege that Cigna paid these claims or, if so, the amount paid. See also Counterclaim ¶ 98 and Ex. A to Counterclaim. Cigna purports to provide "a summary of fraudulent claims through June 18, 2014 submitted by Tri State to Cigna, as well as the dates on which the claims were submitted and the amounts submitted by Tri State." Counterclaim ¶ 98.  Cigna again fails to allege that Cigna paid the claims or, if so, the amount paid. Cigna also does not explain how the amount Cigna paid for each claim differs from the amount Cigna would have paid an out-of-network provider that charged the Cigna member the full out-of-network responsibility that Cigna claims was due.  The reason is obvious – Cigna has paid no more as a result of the Counterclaim Defendants' allegedly fraudulent conduct than it would have paid absent that conduct.  Accordingly, Cigna has not alleged damages.

Cigna cannot plausibly allege reliance, injury or damages based on Tri State's failure to disclose its methodology for computing in-network rates. Cigna's alleged reason for having no duty to pay the claims in question is that Tri State is not collecting the full amount of the plan member's responsibility in accordance with the terms of the plans, a fact Tri State admittedly disclosed. *See* Counterclaim ¶¶ 5, 35-47, 60, 65, 69-70; Counterclaim Defs.' Ex. 1. Thus, Cigna's allegations clearly demonstrate that Cigna's only "injuries" flow from Tri State's decision to honor patients' in-network benefits, which Cigna admittedly knew when it paid Tri State's claims. Moreover, even if Cigna had known exactly how Tri State estimated a patient's in-network responsibility, it would not have changed Cigna's responsibilities under the plan to pay for Tri State's services.

Cigna-administered plans limit reimbursement for out-of-network services to the "Maximum Reimbursable Charge." Counterclaim ¶ 41, Counterclaim Defs.' Ex. 2 at 14.[4] Under the formula set forth in the attached plan, Cigna must pay 70% of the "Maximum Reimbursable Charge," which is the lesser of "the provider's normal charge for a similar service" or 125% of the fee listed on "a schedule that Cigna [has] developed." *Id.* Cigna suggests that "the inflated 'charges' submitted to Cigna by Tri State were not its 'normal charge' for the services at issue, because they were not the charges Tri State actually charged its patients." Counterclaim ¶ 42. Yet, as Cigna admits, Tri State used the Medicare rate only to approximate the patient's in-network liability and then disclosed to Cigna that the patient's liability had been estimated based on in-network calculations. Tri State's disclosure or nondisclosure of its methodology did not

---

[4]Counterclaim Defendants may refer to this sample plan document because Cigna repeatedly references its plan documents in its Counterclaim, including ¶¶ 21-43. *Dittmer Props, L.P.*, 708 F.3d at 1021.  In fact, Cigna attached this document as an exhibit to its counterclaim in other litigation.

change Cigna's obligations under the plans. *See Gomez v. Wells Fargo Bank N.A.*, 2010 U.S. Dist. LEXIS 89701, *23-24 (D. Minn. Aug. 30, 2010) (finding the plaintiffs allegations "effectively concede" that the plaintiffs did not suffer an injury to business or property because "[f]inancially, they would have been in the same position in the absence of the alleged RICO violations").

Because Tri State disclosed the fact that Tri State was not requiring Cigna's insureds to pay the full out-of-network responsibility, Cigna could not have relied on the alleged "fee forgiving scheme" or the "dual pricing scheme", was not injured by the alleged predicate acts, and did not suffer damages as a result of the Counterclaim Defendants' conduct. Cigna has not sufficiently pled federal or state RICO claims.

> **B. CIGNA HAS NOT SUFFICIENTLY ALLEGED THAT THE COUNTERCLAIM DEFENDANTS CONTROL AN ENTERPRISE THROUGH RACKETEERING ACTIVITY**.

"To prevail on a RICO claim, the plaintiffs must be able to prove the existence of an enterprise and a pattern of racketeering activity within the enterprise." *McDonough v. National Home Ins. Co.*, 108 F.3d 174, 177 (8th Cir. 1997). Cigna has not alleged the existence of an enterprise. The Counterclaims include only conclusory allegations regarding the alleged enterprise made "upon information and belief." Counterclaim ¶ 88. "The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Notably absent from Cigna's pleading are facts demonstrating that the alleged enterprise is distinct from the Counterclaim Defendants. Also notably absent are facts plausibly demonstrating that the conduct of the enterprise is distinct from the conduct of the Counterclaim Defendants.

RICO "liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (U.S. 1993). *See Board of County Comm'rs v. Liberty Group*, 965 F.2d 879, 885 (10th Cir. 1992) ("[A] separate enterprise is not demonstrated by the mere showing that the corporation committed a pattern of predicate acts in the conduct of its own business.")  Cigna's own allegations make clear that the Counterclaim Defendants were conducting their own affairs. Cigna provides no explanation whatsoever as to why this enterprise that was pled "upon information and belief" was necessary to these related corporate entities' commission of the alleged fraud. *See Brannon v. Boatmen's First Nat'l Bank*, 153 F.3d 1144, 1148 (10th Cir. 1998) ("[A]t a bare minimum, an allegation of RICO liability under 1962(c) must indicate how the defendant used the alleged enterprise to facilitate the fraudulent conduct.") *See also Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir. 1997) (upholding dismissal of a RICO claim where plaintiffs alleged Chrysler, its dealers and its agents constituted a RICO enterprise); *Secure Energy Inc. v. Coal Synthetics, LLC*, 2010 U.S. Dist. LEXIS 41085 *14 (E.D. Mo. Apr. 7, 2010) (finding "the Defendants were engaged in an ordinary business relationship, not a RICO enterprise").  Because Cigna has not pled the existence of an enterprise or predicate acts, Cigna's RICO claim (Count II) must be dismissed.

## IV.    CIGNA'S ERISA CLAIM AND CLAIM FOR DECLARATORY RELIEF SHOULD BE DISMISSED BECAUSE CIGNA DOES NOT SEEK EQUITABLE RELIEF.

Cigna asserts claims for overpayments under ERISA Section 502(a)(3) against Tri State. Cigna also seeks declaratory relief related to services "provided to patients receiving medical care who are covered under employee health and welfare benefit plans that are insured and/or

administered by Cigna." Counterclaim ¶ 140.  Cigna should not be permitted to proceed with either claim.

In order to assert a claim pursuant to Section 502(a)(3), a plaintiff must seek equitable relief.  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209-10 (2002). Numerous courts have held that an insurer seeking the return of alleged overpayments seeks only monetary legal damages and, therefore, cannot sustain a claim under Section 502(a)(3). *See Cent. States v. Gerber Life Ins. Co.*, 2013 U.S. Dist. LEXIS 169082 (S.D.N.Y. Nov. 26, 2013); *Cent. States v. Bollinger*, 2013 U.S. Dist. LEXIS 119295 (D.N.J. Aug. 22, 2013); *Cent.States v. Health Special Risk, Inc.*, 2012 U.S. Dist. LEXIS 150120 (N.D. Tex. Oct. 18, 2012); *Cent. States v. Health Special Risk, Inc.*, 2012 U.S. Dist LEXIS 63137 (N.D. Tex. May 4, 2012). Cigna's attempts to recast its ERISA claims as claims for injunctive and declaratory relief are likewise unavailing. *See Gerber Life Ins. Co.*, 2013 U.S. Dist. LEXIS 169082, at *18-19; *Bollinger*, 2013 U.S. Dist. LEXIS 119295, at *17-21; *Health Special Risk, Inc.*, 2012 U.S. Dist. LEXIS 150120, at *6-8; *Health Special Risk, Inc.*, 2012 U.S. Dist. LEXIS 63137, at *9-10.  Count I and Count VII should be dismissed for failure to state a claim.

**V.     CIGNA'S ERISA CLAIM AND CLAIM FOR DECLARATORY RELIEF SHOULD BE DISMISSED BECAUSE CIGNA HAS MADE AN ADVERSE BENEFIT DETERMINATION WITHOUT COMPLYING WITH ERISA'S PROCEDURAL GUIDELINES.**

When Cigna makes an "adverse benefit determination" with regard to an ERISA plan, ERISA mandates the procedural steps Cigna must undertake.  Cigna's Counterclaims make clear that these procedures were not followed with regard to the claims in question.

Regulations define an "adverse benefit determination" as that phrase relates to ERISA plans:

> The term "adverse benefit determination" means any of the following: a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including any such denial, reduction, termination, or failure to provide or make payment that is based on a determination of a participant's or beneficiary's eligibility to participate in a plan, and including, with respect to group health plans, a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit resulting from the application of any utilization review, as well as a failure to cover an item or service for which benefits are otherwise provided because it is determined to be experimental or investigational or not medically necessary or appropriate.

29 C.F.R. § 2560.503-1(m)(4). Cigna in its Counterclaim is now taking the position that the services Tri State has provided to Cigna subscribers are not covered services. Cigna has therefore made an adverse benefit determination with regard to ERISA plans.

Accordingly, Cigna is required to provide certain procedural protections as set forth in the regulations:

> [T]he plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination … The notification shall set forth, in a manner calculated to be understood by the claimant – (i) The specific reason or reasons for the adverse determination; (ii) Reference to the specific plan provisions on which the determination is based; (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; (iv) A description of the plan's review procedures and time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review...

29 C.F.R. § 2560.503-1(g). ERISA also requires that each claimant be given "a reasonable opportunity to appeal an adverse benefit determination" and to receive a "full and fair review of the claim." 29 C.F.R. § 2560.503-1(h)(1). Because Cigna has failed comply with these provisions, Cigna's ERISA claims should be dismissed or its coverage determinations should be deemed arbitrary and capricious.

## VI.    CIGNA'S STATE LAW TORT CLAIMS ARE PREEMPTED BY ERISA.

All of Cigna's state law claims related to patients who are covered under employee health and welfare benefit plans that are insured or administered by Cigna are preempted by ERISA. There are two types of ERISA preemption: "'complete preemption' under ERISA § 502, 29 U.S.C. § 1132, and 'express preemption' under ERISA § 514, 29 U.S.C. § 1144." *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, 413 F.3d 897, 907 (8th Cir. 2005). Cigna's state law claims are barred under the principles of both complete preemption and conflict preemption.

Cigna, in Count I of its Counterclaims, asserts a claim for overpayments under ERISA § 502(a)(3).  The Eighth Circuit has expressly held that "when § 502(a)(3) provides a remedy, any additional remedy under state law is completely preempted."  *Lyons v. Philip Morris, Inc.*, 225 F.3d 909, 913 (8th Cir. 2000). As Cigna's Counterclaim repeatedly demonstrates, "interpretation of the terms of [the] benefit plans [insured or administered by Cigna] forms an essential part" of Cigna's state-law claims and, therefore, liability under such laws could only exist because "of ERISA-regulated benefits plans."  *Aetna Health Inc. v. Davila*, 124 S.Ct. 2488, 2498 (2004). Cigna's state-law causes of action "are not entirely independent of the federally regulated contract itself" and are, therefore, completely preempted. *Id.*

Cigna's claims are also preempted by ERISA's express conflict provision, which provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any [ERISA] plan."  29 U.S.C. § 1144(a). A law relates to an employee benefit plan "if it has a connection with or reference to such a plan."  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983). *Accord Parkman v. Prudential Ins. Co. of Am.*, 493 F.3d 767, 771 (8th Cir. 2006). The state-law claims here unquestionably have a connection to and reference the plans at issue.

The claims "affect the relations between primary ERISA entities – the employer, the plan, the plan fiduciaries and the beneficiaries." *Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp., Inc.*, 947 F.2d 1341, 1346 (8th Cir. 1991).

As Cigna's allegations make clear, the claims also impact the administration of ERISA plans such as determining benefits eligibility and amounts. *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 10 (1987). "ERISA remedies preempt 'state common law tort and contract actions asserting improper processing of a claim for benefits' under an ERISA plan." *Thompson v. Gencare Health Sys.*, 202 F.3d 1072, 1073 (8th Cir. 2000) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 43 (1987)).   When "the essence of [a plaintiff's] claim relates to the administration of plan benefits, it falls within the scope of ERISA" and is preempted. *Parkman*, 439 F.3d at 771-772. *See Schoedinger v. United Healthcare of the Midwest, Inc.*, 2011 U.S. Dist. LEXIS 2937 *25-26 (E.D. Mo. Jan. 12, 2011) (holding that ERISA preempts the plaintiff's tortious interference claim). As the Eighth Circuit has noted, the reasoning underlying the Court's preemption analysis applies equally to the "remedies available to ERISA-plan fiduciaries under section 502." *Travelers Cas. & Sur. Co. of Am. v. IADA Servs.*, 497 F.3d 862, 867 (8th Cir. 2007). As the Court found in *Central States v. Health Special Risk, Inc.*, 2013 U.S. Dist. LEXIS 83400, at *16-22 (N.D. Tex. Jun. 13 2013), Cigna's state law claims relate to plan benefits which were allegedly not paid in accordance with the terms of the plans and, accordingly, are conflict preempted.[5]

---

[5]There is no inconsistency between Cigna's lack of a remedy under ERISA and its inability to bring claims under state law.  Courts have recognized that ERISA's broad preemption sometimes causes this result. As the Eighth Circuit explained in *Travelers Cas.& Sur. Co. of Am. v. IADA Servs.*, 497 F.3d 862, 867 (8th Cir. 2007), "Given that Congress made a policy choice to exclude a remedy of contribution for breaching fiduciaries, it would undermine the comprehensive federal scheme to permit an action under state law for that same remedy."

VII. **CIGNA'S STATE LAW CLAIMS AGAINST TRI STATE FOR FRAUD AND AGAINST SURGCENTER FOR AIDING AND ABETTING FAIL BECAUSE CIGNA HAS NOT PLED THE ELEMENTS OF FRAUD.**

Even if ERISA does not preempt Cigna's state-law fraud claim, the claim fails. As set forth in Part IV.A above, Cigna has not plausibly alleged misrepresentations, materiality, reliance or damages. Yet, each of these elements is required to state a fraud claim under Arkansas law. *Morris v. Back Yard Burgers*, 91 F.3d 1184, 1186 (8th Cir. 1987) ("Under Arkansas law, the tort of fraud, misrepresentation or deceit consists of five elements: (1) a false representation of a material fact; (2) knowledge that the representation is false, or an assertion of fact which he or she does not know to be true; (3) intent to induce action or inaction in reliance upon the representations; (4) justifiable reliance on the representation; and (5) damages suffered as a result of reliance"); *Accord Wiseman v. Batchelor*, 315 Ark. 85, 88-89 (Ark. 2004). Cigna has not pled these elements and clearly has not pled them with the particularity Rule 9(b) demands.

As previously discussed, Cigna acknowledges that Tri State disclosed that it discounted patient responsibility amounts to in-network levels. Counterclaim ¶ 69. Rather, Cigna's only allegation against Tri State for failure to disclose was Tri State's alleged failure to disclose the methodology pursuant to which it calculates patient responsibility or billed charges. *Id.* However, a duty to disclose exists only when "special circumstances surrounding the transaction give rise to a relationship that requires disclosure." *Camp v. First Federal Savings & Loan*, 671 S.W.2d 213, 215-16 (Ark. App. 1984). Cigna has not and cannot plead a special relationship that would give rise to a duty to disclose the precise methodology Tri State utilizes in estimating in-

network responsibility. Cigna's fraud claim should be dismissed. Because the underlying substantive claims fail, Cigna's aiding and abetting claims must be dismissed as well.

## VIII.   TRI STATE WAS NOT UNJUSTLY ENRICHED.

Cigna has not plausibly alleged unjust enrichment because, as Cigna alleges, Tri State provided medical services to Cigna's members and insureds, which benefitted Cigna.   Unjust enrichment is "founded on an implied agreement to give reasonable valuable for services performed and the principle that it would be unjust to allow the party receiving the services to accept them without paying for them." *Purser v. Kerr*, 21 Ark. App. 233, 237 (Ark. App. 1987). Yet, this is precisely the result Cigna seeks.

Cigna's unjust enrichment claim does not seek to remedy or prevent injustice but instead attempts to secure an inequitable and unjustified windfall for Cigna. See *Van Zanen v. Qwest Wireless, L.L.C.*, 522 F.3d 1127, 1131 (10th Cir. 2008) (denying recovery for unjust enrichment where the defendant had performed but was in violation of the state licensing statute, reasoning that if the plaintiffs "were allowed to recover the fees that they paid to Qwest, they would … be allowed to retain a benefit without paying for it"). *See also State Farm Auto. Ins. Co. v. Newburg Chiropractic, P.S.C.*, 741 F.3d 661, 664 (6th Cir. 2013) ("State Farm never credibly explains how any misapprehension about the clinics' license affected its duty to pay for treatments provided to its policyholders. Even if we assume that the contracts between the clinics and the State Farm policyholders violated Kentucky public policy, as State Farm urges, that does not establish State Farm's right to obtain the services for free.")  In asserting an unjust enrichment claim, Cigna asks this Court to provide Cigna a benefit that would unjustly enrich Cigna to the

detriment of Tri State in derogation of Arkansas law. Accordingly, Cigna's unjust enrichment claim should be dismissed.

## IX.    CIGNA'S TORTIOUS INTERFERENCE CLAIM SHOULD BE DISMISSED.

Cigna has not sufficiently pled a claim for tortious interference.  First, Cigna alleges that the Counterclaim Defendants "induced the members to breach the contractual terms of their plans and induced Cigna's in-network providers to breach the terms of their contracts with Cigna." Counterclaim ¶¶ 131, 135.  Cigna's allegations are insufficient as a matter of law. "[A] successful claim for interference with a contractual relation [under Arkansas law] must allege and prove that a third person did not enter into or failed to continue a contractual relationship with the claimant as a result of the unauthorized conduct of the defendant."  *Schueller v. Goddard*, 631 F.3d 460, 463 (8th Cir. 2011) (quoting *Palmer v. Arkansas Council on Econ. Educ.*, 40 S.W.3d 784, 791 (Ark. 2001)).  Cigna has not alleged that either its members or its in-network providers terminated their agreement with Cigna as a result of Tri State's conduct. Accordingly, Cigna's tortious interference claim must be dismissed.

However, even if Cigna's allegations were not insufficient as a matter of law, Cigna's allegations fail to rise to the level of tortious interference. First, Cigna makes no allegations regarding Counterclaim Defendant SurgCenter that would give rise to liability for tortious interference.  Therefore, the tortious interference claim with regard to SurgCenter should be dismissed. Cigna likewise includes absolutely no factual allegations in its Counterclaims that would plausibly suggest tortious interference with regard to Cigna's in-network providers. Accordingly, Cigna's has not plausibly alleged tortious interference with regard to in-network providers.

Moreover, Cigna has failed to allege tortious interference.  Cigna has alleged that Tri State's intent was to have Cigna's members utilize Tri State. Counterclaim ¶¶ 3, 65. Yet, as Cigna concedes, its members have a right to utilize out-of-network providers. Counterclaim ¶ 26. In its tortious interference claim, Cigna suggests "upon information and belief" that Tri State "encouraged" Cigna's in-network providers to refer patients Tri State.  Counterclaim ¶ 135. Tri State has no liability to Cigna for tortious interference based on a member's choice to utilize Tri State or the physician's choice to refer his or her patients to Tri State. "One does not induce another to commit a breach of contract with a third person under the rule stated in this Section when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person." Restatement (Second) of Torts § 766. *Accord Zelinger v. Uvalde Rock Asphalt Co.*, 316 F.2d 47, 51 (10th Cir. 1963).

Arkansas courts look to Restatement of Torts § 766 in construing the elements of tortious interference.  *See Constr. Mgmt. & Inspection Ins., v. Caprock Communs. Corp.*, 301 F.3d 939, 941 (8th Cir. 2002) (noting that the Arkansas Supreme Court adopted "the Restatement (Second) of Torts § 766 elements of tortious interference with a business expectancy" in *Mason v. Wal-Mart, Inc.*, 969 S.W.2d 160, 163-65 (Ark. 1998)). As Cigna alleges, Tri State encouraged patients and physicians to utilize its facility.  In doing so, Cigna did not tortiously interfere with any Cigna relationship, even assuming *arguendo* the patients and physicians could not perform in accordance with their contracts with Cigna.

Finally, Cigna has not alleged injury or damages proximately caused by the alleged tortious interference. Cigna has not and cannot allege damages flowing from the alleged interference.

## X.     CONCLUSION

For the foregoing reasons, the Counterclaims filed by Counterclaim Plaintiffs Connecticut General Life Insurance Company, Cigna Health and Life Insurance Company, and Cigna Healthcare of Tennessee should be dismissed in their entirety.

Respectfully submitted,


/s/ *W. Tucker Brown*
Joe R. Whatley, Jr.
(admitted *pro hac vice*)
W. Tucker Brown (admitted *pro hac vice*)
Whatley Kallas, LLP
Park Place Tower
2001 Park Place North
Suite 1000
Birmingham, AL  35203
Telephone:  (205) 488-1200
Facsimile:  (800) 922-4851
jwhatley@whatleykallas.com
tbrown@whatleykallas.com

Edith M. Kallas (admitted *pro hac vice*)
Whatley Kallas, LLP
1180 Avenue of the Americas
Suite 2000
New York, NY  10036
Telephone:  (212) 447-7060
Facsimile:   (800) 922-4857
ekallas@whatleykallas.com

Deborah J. Winegard
(admitted *pro hac vice*)
Whatley Kallas, LLP
1068 Virginia Avenue, NE
Atlanta, GA  30306
Telephone:  (404) 607-8222
Facsimile:   (404) 220-9625
dwinegard@whatleykallas.com

Scott E. Poynter (#90077)
Will T. Crowder(#03138)
Corey Darnell McGaha
Emerson Poynter LLP
1301 Scott Street
Little Rock, AR  72202
Telephone:  (501) 907-2555
Facsimile:  (501) 907-2556
jemerson@emersonpoynter.com
scott@emersonpoynter.com
wcrowder@emersonpoynter.com
cmgaha@emersonpoynter.com

John G. Emerson
Emerson Poynter LLP
830 Appollo Lane
Houston, TX  77058
Telephone:  (281) 488-8854
Facsimile:  (281) 488-8867
jemerson@emersonpoynter.com

**ATTORNEYS FOR PLAINTIFFS/
COUNTERCLAIM DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of October, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such tiling to all counsel of record.

Leigh M. Chiles (#98223)
Leo M. Bearman, Jr. (admitted *pro hac vice*)
Matthew S. Mulqueen
(admitted *pro hac vice*)
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC
First Tennessee Bank Building
165 Madison Avenue
Suite 2000
Memphis, TN  38103
Telephone:  (901) 577-2207
Facsimile:  (901) 577-2303
lchiles@bakerdonelson.com
lbearman@bakerdonelson.com
mmulqueen@bakerdonelson.com

Lea Carol Owen (admitted *pro hac vice*)
Baker, Donelson, Bearman, Caldwell &
Berkowitz, PC
211 Commerce Street
Suite 800
Nashville, TN  37201
Telephone:  (615) 726-5600
cowen@bakerdonelson.com

John E. Tull, III (#84150)
Chad W. Pekron (#2008144)
Robert Ryan Younger (#2008209)
Quattlebaum, Grooms, Tull & Burrow, PLLC
111 Center Street
Suite 1900
Little Rock, AR  72201-3325
Telephone:  (501) 379-1700
cpekron@qgtb.com
jtull@qgtb.com
ryounger@qgtb.com

Joshua B. Simon
Warren Haskel
Ryan D. McEnroe
Dmitriy G. Tishyevich
Christian Reigstad
Terence Y. Leong
(all admitted *pro hac vice*)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY  10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
jsimon@kirkland.com
whaskel@kirkland.com
rmcenroe@kirkland.com
dtishyevich@kirkland.com
creigstad@kirkland.com
tleong@kirkland.com

/s/ *W. Tucker Brown*
Of Counsel