**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

| | |
|---|---|
| TRI STATE ADVANCED SURGERY CENTER, LLC, GLENN A. CROSBY II, M.D., F.A.C.S., and MICHAEL HOOD, M.D. | PLAINTIFFS |
| v. | Case No. 3:14-CV-00143-JM |
| HEALTH CHOICE, LLC, and CIGNA HEALTHCARE OF TENNESSEE, INC. | DEFENDANTS |

---------------------------------------------------------------------------------------------------------------------

| | |
|---|---|
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY, CIGNA HEALTH AND LIFE INSURANCE COMPANY, and CIGNA HEALTHCARE OF TENNESSEE, INC., | COUNTERCLAIM-PLAINTIFFS |
| v. | |
| SURGICAL CENTER DEVELOPMENT, INC. D/B/A SURGCENTER DEVELOPMENT, and TRI STATE ADVANCED SURGERY CENTER, LLC | COUNTERCLAIM-DEFENDANTS |

**<u>COUNTERCLAIM-PLAINTIFFS' RESPONSE TO NOTICE
OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF
COUNTERCLAIM-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIMS</u>**

Counterclaim-Plaintiffs Connecticut General Life Insurance Company, Cigna Health and

Life Insurance Company, and Cigna Healthcare of Tennessee, Inc. (collectively, "Counterclaim-

Plaintiffs" or "Cigna") submit the following response to Counterclaim-Defendants' Notice of

Supplemental Authority filed on March 9, 2015. (Dkt. 69 ("Notice").)[1]

As a threshold matter, Counterclaim-Defendants ignore the fact that the United States

District Court for the District of Colorado ("the Colorado court") rejected many of the same

arguments they raised in their motion to dismiss here—concluding, for example, that Cigna has

---

[1] The "Notice of Supplemental Authority" that Counterclaim-Defendants filed is not a notice, but effectively a surreply brief in further support of their motion to dismiss Cigna's counterclaims. Nonetheless, in light of the similarities between this action and the Colorado action, Cigna agrees that the Court may benefit from a discussion of the issues raised by the Colorado court's decision, and will therefore provide a substantive response to the arguments raised in the Counterclaim-Defendants' filing.

standing to bring its Counterclaims (Notice, Ex. A at 5-6); that Cigna stated a claim for injunctive relief under ERISA (*id.* at 8-9); that none of Cigna's state-law claims are preempted by ERISA (*id.* at 13-16); and that Cigna stated claims for unjust enrichment and tortious interference. (*Id.* at 16-18.)  For reasons set forth in Cigna's opposition to the motion to dismiss counterclaims (*see* Dkt. 67), this Court should reject those arguments as well.  Moreover, as detailed below, Cigna's fraud-based counterclaims are sufficiently pled because Counterclaim-Defendants in fact did ***not*** disclose their fraudulent billing scheme to Cigna; and the Colorado court erred in finding that the overpayments Cigna seeks to recover under ERISA are not specifically identifiable.  Accordingly, the Court should deny Counterclaim-Defendants' motion to dismiss.

I.    **Cigna's Fraud-Based Counterclaims Are Properly Pled Because Counterclaim-Defendants Did Not Disclose Their Fraudulent Billing Scheme to Cigna.**

Counterclaim-Defendants contend that the Court should dismiss Count II (RICO § 1962(c)), Count III (Fraud), and Count IV (Aiding and Abetting Fraud) of Cigna's Counterclaims (Dkt. 49) because the Colorado court concluded that Cigna's similar counterclaims filed in a different case did not "plausibly allege misrepresentations or materiality." (Notice at 3.)  Cigna respectfully submits that the Colorado court failed to properly credit Cigna's allegations that the ASCs in fact did not disclose their fraudulent billing scheme to Cigna.  Counterclaim-Defendants' lengthy comparison of Cigna's allegations in the Colorado action to the allegations here (Notice at 3-4) is thus simply beside the point, because their recitation ignores that flaw in the Colorado court's analysis.

The Colorado court's conclusion that the ASCs disclosed their billing scheme hinges on the statements in the ASCs' claim forms that "[t]he insured's portion of this bill has been reduced in amount so the patient's responsibility for the deductible and copay amount is billed at

2

in network rates." (Notice, Ex. A at 4.) But that disclosure has no bearing on the fraud theory actually alleged by Cigna—which is that the ASCs never disclosed to Cigna that they calculated patient responsibility based on a different and lower fee schedule than the fee schedule they used to calculate Cigna's payment responsibility for those same claims, and that the ASCs never disclosed to Cigna the different lower amounts they charged patients. (Counterclaims ¶¶ 3-4.)

Take, as an example, a $105,863 claim that Tri State submitted to Cigna. (*Id.* ¶ 5.) Based on Tri State's claim forms, Cigna might be able to determine what the patient's co-insurance responsibility for that $105,853 would be if that responsibility were calculated on an in-network basis as opposed to an out-of-network basis (*e.g.*, by applying a 20% in-network co-insurance rate rather than a 40% out-of-network co-insurance rate).[2] But nothing in this form told Cigna that Tri State's actual charge to the patient was ***not*** based on $105,863 or anything close to it, and that Tri State instead calculated the patient's responsibility by applying a different and lower Medicare-based fee schedule, resulting in a charge of only $1,150 to the patient—an amount Tri State never disclosed to Cigna. (*See id.* ¶¶ 4-5.) Cigna's allegations on this point are clear: "Tri State does not disclose to Cigna the lower Medicare-based rates it charges to patients" (*id.* ¶ 4), and Tri State's claim forms did not "disclose[] that Tri State had charged its patients a different amount than the amounts submitted to Cigna for reimbursement." (*Id.* ¶ 69; *see also id.* ¶ 71 ("Only through its own internal investigation did Cigna learn the existence of [this] . . . dual pricing . . . scheme").) Thus, regardless of what its claim forms may have disclosed about calculating the patient's responsibility on an in-network basis, Tri State ***never*** disclosed that it charged Cigna and its patients different prices. To the contrary, Tri State

---

[2] For example, if this particular plan member were required to pay 20% of the covered amount when seeing an in-network provider and 40% when seeing an out-of-network provider, Cigna would be able to tell based on Tri State's claim form that the patient's in-network co-insurance obligation would be about $21,172 ($105,863 * 20%) and the out-of-network co-insurance obligation would be about $42,345 ($105,863 * 40%).

"affirmatively sought to mislead Cigna into believing that Tri State charged the patient and Cigna and its client a single, common price" by stating on the claim form that the "insured's portion of ***this bill*** has been reduced."  (*Id.* ¶ 70 (emphasis in original).)

Tri State's failure to disclose to Cigna that its charges to patients were based on a much lower rate and were not the full amounts it submitted to Cigna is a key point—and it is this point that the Colorado court overlooked.  Cigna's Counterclaims also explain the materiality of these misrepresentations.  "Cigna-administered plans generally limit reimbursement for out-of-network services to the 'Maximum Reimbursable Charge' for 'covered services,' which can be no more than the 'provider's normal charge for a similar service or supply, and explicitly exclude from coverage providers' charges 'to the extent they are more than Maximum Reimbursable Charges.'"  (*Id.* ¶ 41.)  But until this litigation, Cigna had no idea what Tri State was actually charging patients, what amount of the patients' cost-sharing responsibilities Tri State was waiving, or that Tri State's charges were not its "normal" charges because they were not amounts Tri State actually charged its patients.  (*See id.* ¶ 42.) Cigna thus could not determine which (if any) of the charges Tri State submitted were properly covered under the members' plans, and to what extent those charges should be paid.  As a result, Cigna was induced into paying about $1.4 million for Tri State's claims—payments Cigna would not have made but for Tri State's misrepresentations about its actual charges.  (*See id.* ¶¶ 68-73.)

Finally, to be clear, while Cigna alleges in its Counterclaims that "Tri State billed Cigna's plan members rates based on Medicare schedules to approximate in-network contract rates" (*id.* ¶¶ 4, 60), Tri State had never disclosed this information before litigation.  Instead, Cigna obtained this information only ***after*** it was induced to overpay, and after Cigna conducted its own investigation and gathered additional details about Tri State's dual-billing scheme.  (*See id.*

¶¶ 4, 68-69, 71.)   The Colorado court's conclusion that Cigna knew that the ASCs "were attempting to approximate in-network rates" when billing patients (Notice, Ex. A at 11) is irreconcilable with these well-pled factual allegations.   Accordingly, the Court should find that Cigna properly pled Count II (RICO § 1962(c)), Count III (Fraud), and Count IV (Aiding and Abetting Fraud).

## II.     Cigna's ERISA Claim (Count I) Is Properly Pled.

Cigna respectfully disagrees with the Colorado court's conclusion that the overpayments Cigna seeks to recover are not specifically identifiable.   (Notice, Ex. A at 7-8.)   In *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356 (2006), the Supreme Court held that under ERISA § 502(a)(3), plans and fiduciaries can obtain equitable relief in the form of overpayments— precisely the relief Cigna seeks here.   In *Sereboff*, the Court found that the insurer Mid Atlantic was entitled to a lien on settlement proceeds that a beneficiary received from a tort action in the amount of medical expenses that Mid Atlantic had paid on the beneficiary's behalf.   *See id.* at 360.   In reaching this conclusion, the Supreme Court focused on the terms of the beneficiary's agreement, which "require[d] a beneficiary who 'receives benefits' under the plan" to 'reimburse Mid Atlantic' for those benefits from '[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)."   *Id.* at 359.   The Court recognized that the terms of the plan "specifically identified a particular fund, distinct from the [beneficiary's] general assets" (*i.e.*, any "recoveries from a third party" by lawsuit or settlement); and also identified "a particular share of that fund to which Mid Atlantic was entitled" (*i.e.*, "that portion of the total recovery which is due [Mid Atlantic] for benefits paid")."   *Id.* at 364.   Accordingly, "Mid Atlantic could rely on a familiar rule of equity to collect for the medical bills it had paid on [the beneficiary's] behalf," which "allowed them to 'follow' a portion of the recovery 'into the [beneficiary's]

hands as soon as the settlement fund was identified, and impose on that portion a constructive trust or equitable lien." *Id.* (quotation marks and some alterations omitted).  Just so here:  the terms of Cigna's plans "authorize Cigna to recover any overpayments made by the plans on the plans' behalf" (Counterclaims ¶ 24), thereby expressly authorizing recovery of those specific proceeds.  An equitable lien for Cigna's overpayments to Tri State under the terms of these plans is proper.

Moreover, while in *Sereboff* the disputed funds were set aside in a separate account by parties' stipulation (547 U.S. at 360), it was the plan's terms—***not*** the funds' location—that drove the outcome.  *See id.* 365 (holding that where an equitable lien by agreement exists, an "inability to satisfy the 'strict tracing rules' for 'equitable restitution' is of no consequence.").[3] As one court explained,  "the Sereboffs had to reimburse the plan for an ***entirely separate reason*** above and beyond the fact that the money from their plan was traceable because they had segregated it from the rest of their assets," and it was "***the plan's language*** . . . [that] created an equitable lien by agreement."  *Gutta v. Standard Select Trust Ins.*, No. 04 C 5988, 2006 WL 2644955, at *26 (N.D. Ill. Sept. 14, 2006) (emphases added).[4]  Accordingly, the Colorado court's apparent reading of *Sereboff* as turning on whether the funds were kept in a separate account (*see* Notice, Ex. A at 7) is too narrow.

Finally, while Counterclaim-Defendants contend that Cigna's ERISA claim should be dismissed to the extent it seeks restitution and a declaratory judgment (Notice at 5-6), they ignore

---

[3]   *See also Popowski v. Parrott*, 461 F.3d 1367, 1374 n.8 (11th Cir. 2006) (explaining that *Sereboff* held that "strict tracing requirements . . . do not apply to equitable liens by agreement," and that commingling of funds does not "disqualif[y] an equitable lien" by agreement).

[4]   *See also Mayhew v. Hartford Life and Acc. Ins Co.*, 822 F. Supp. 2d 1028, 1033 (N.D. Cal. 2011) (applying *Sereboff*, finding that "language from the Plan [was] sufficient to create an equitable lien," and "reject[ing] Mayhew's contention that Hartford must identify a fund containing the overpayments that is directly traceable to Mayhew's custody, control, or possession."); *id.* ("as Hartford's equitable lien attached when Mayhew came into possession of the overpayments, Hartford may state a claim under § 503(a)(3) without directly tracing the overpayments to particular property within Mayhew's possession.").

the Colorado court's conclusion that Cigna properly stated an ERISA claim for injunctive relief. Here, too, Cigna seeks a "a permanent injunction directing Tri State to submit to Cigna only charges that Tri State actually charges the plan member as payment in full for Tri State's service and not to submit charges which include amounts that Tri State does not actually require the member to pay[.]"   (Counterclaims ¶ 86.)   The Colorado court concluded that this is a proper ERISA claim (Notice, Ex. A at 8-9), and this Court should hold likewise.

### III.   Cigna Properly Stated a Tortious Interference Claim (Count VI) and an Unjust Enrichment Claim (Count V).

Counterclaim-Defendants concede that the Colorado court denied their motion to dismiss Cigna's tortious interference claim.   They nonetheless contend that Arkansas law compels a different result, because it purportedly requires proof that "a third person did not enter into or failed to continue a contractual relationship with the claimant as a result of the unauthorized conduct of the defendant."  (Notice at 7 (citation omitted).)

Counterclaim-Defendants are wrong.   As Cigna already pointed out (Dkt. 67 at 17-18), the very Arkansas cases that Counterclaim-Defendants cite make clear that a tortious interference claim is proper when a third part induces *either* a breach of contract or a termination of a relationship.   *See Scheuller v. Goddard*, 631 F.3d 460, 463 (8th Cir. 2011) (tortious interference is "intentional and improper interference by that third party *inducing or causing a breach or termination of the relationship*.") (emphasis added).   Inducing an outright termination is thus certainly sufficient but not necessary, and inducing a breach will suffice.   *See id.*; *e.g.*, *United Bilt Homes, Inc. v. Sampson*, 310 Ark. 47, 51 (1992) (finding tortious interference where third-party insurance payee's withholding of insurance funds "caused a breach of the contract" between a homeowner and a contractor); *compare Central Park Prods., Inc. v. Dorel Juvenile Group, Inc.*, No. 07-5012, 2007 WL 1821308, at *2 (W.D. Ark. June 25, 2007) (dismissing

7

tortious interference claim where "Plaintiff has not pled any breach *or* termination") (emphasis added). Here, Cigna alleged that Counterclaim-Defendants induced Cigna's members to breach their contracts by not paying required cost-sharing responsibilities (Counterclaims ¶¶ 129-32), and induced Cigna's in-network physicians to breach their contracts by referring patients to an out-of-network facility. (*Id.* ¶¶ 133-37.) Cigna likewise pled all other required elements of tortious interference. (Dkt. 67 at 17-18.) The motion to dismiss this claim should be denied.

Finally, Counterclaim-Defendants do not contend in their Notice that Cigna's claim for unjust enrichment (Count V) should be dismissed. The Colorado court denied the motion to dismiss as to this claim (Notice, Ex. A at 16-17), and this Court should do the same. (*See also* Dkt. 67 at 16-17.)

## CONCLUSION

For the foregoing reasons, and for the additional reasons set forth in Cigna's opposition to motion to dismiss counterclaims, Counterclaim-Defendants' motion to dismiss Cigna's counterclaims should be denied. In the alternative, to the extent the Court finds that any of Cigna's counterclaims are insufficiently pled, Cigna requests an opportunity to amend. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

Dated:  March 12, 2015

Respectfully submitted,

/s/  Chad W. Pekron

Joshua B. Simon
Warren Haskel
Dmitriy G. Tishyevich
   (all admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
joshua.simon@kirkland.com
warren.haskel@kirkland.com
dmitriy.tishyevich@kirkland.com

John E. Tull III (84150)
Chad W. Pekron (2008144)
R. Ryan Younger (2008209)
QUATTLEBAUM, GROOMS, TULL
& BURROW, PLLC
111 Center Street, Suite 1900
Little Rock, AR  72201
Telephone:  (501) 379-1700
Facsimile:  (501) 379-1701
jtull@qgtb.com
cpekron@qgtb.com
ryounger@qgtb.com

*Counsel for Defendant and Counterclaim-Plaintiff Cigna Healthcare*
*of Tennessee, Inc., and Counterclaim-Plaintiffs Connecticut General*
*Life Insurance Company and Cigna Health and Life Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 12, 2015, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Arkansas, using the electronic case filing system of the court, which will send notification of such filing to attorneys of record who are known as "Filing Users."

/s/ Chad W. Pekron
Chad W. Pekron