**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

TRI STATE ADVANCED SURGERY
CENTER, LLC, GLENN A. CROSBY II, M.D.,
F.A.C.S., and MICHAEL HOOD, M.D.                                 PLAINTIFFS

v.                                     No. 3:14cv143-JM

HEALTH CHOICE, LLC and
CIGNA HEALTHCARE OF TENNESSEE, INC.                              DEFENDANTS
-------------------------------------------------------------------------------------------------------------
CONNECTICUT GENERAL LIFE INSURANCE
COMPANY, CIGNA HEALTH AND LIFE
INSURANCE COMPANY, AND CIGNA
HEALTHCAR E OF TENNESSEE, INC.               COUNTERCLAIM-PLAINTIFFS

v.

SURGICAL CENTER DEVELOPMENT, INC D/B/A
SURGCENTER DEVELOPMENT and TRI STATE
ADVANCED SURGERY CENTER, LLC                 COUNTERCLAIM-DEFENDANTS

<u>ORDER</u>

Plaintiffs Tri State Advanced Surgery Center, LLC ("Tri State"), Glenn A. Crosby II,

M.D. ("Crosby"), and Michael Hood, M.D. ("Hood") bring this action against Health Choice,

LLC ("Health Choice") and Cigna Healthcare of Tennessee, Inc. ("Cigna") alleging anti-trust

violations of the Sherman Act, 15 U.S.C. §1; tortious interference with contract; intentional

interference with business relationships; and violations of the Tennessee Consumer Protection

Act.  In addition, Cigna and two additional parties, Connecticut General Life Insurance Company

and Cigna Health and Life Insurance Company, have filed what they title counterclaims against

Tri State and an additional party, Surgical Center Development, Inc., d/b/a SurgCenter

Development ("SurgCenter"). Both Defendants have filed motions to dismiss all of the claims

against them for failure to state a claim pursuant to Rule 12(b)(6).  Tri State and SurgCenter have

also filed a motion to dismiss the counterclaims.  This order only addresses Defendants' motions to dismiss.  Jurisdiction is proper in this Court on the basis of the claims brought under the Sherman Act and the Court's supplemental jurisdiction over Plaintiffs' state law claims.  28 U.S.C. §1331 and 28 U.S.C. §1367.

Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." In reviewing the sufficiency of a plaintiff's allegations when challenged with a motion to dismiss, the court must determine whether the complaint states a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678.  The court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the nonmoving party.  *Cole v. Homier Distributing Co., Inc.* 599 F.3d 856, 861 (8th Cir. 2010).

<u>Factual Allegations</u>

This is a concerted refusal to deal case brought by two doctors and an ambulatory surgery center against a physician-hospital organization and an insurer. Plaintiffs allege that Defendants attempted to run Tri State out of business by preventing Tri State from contracting with insurers in the Memphis metropolitan area and by preventing referrals to Tri State.

 The facts, as drawn from the complaint, are as follows.  Plaintiff Tri State is an ambulatory surgery center (ASC) located in Crittenden County, Arkansas.  It treats patients from Arkansas, Mississippi, and Tennessee.  Plaintiff Crosby is a neurosurgeon who practices medicine with the Crosby Clinic in Memphis, Tennessee and at Tri State.  Plaintiff Hood is a surgeon specializing in sports medicine and general orthopaedics who practices medicine with

2

Delta Orthopaedics & Sports Medicine in West Memphis, Arkansas and at Tri State.  Defendant Cigna acted as either the third-party administrator of various employers' healthcare plans or as an insurer of various healthcare insurance policies.   Defendant Health Choice is a joint venture physician-hospital organization (PHO) between MetroCare Physicians, an independent physician association (IPA) and Methodist LeBonheur Healthcare ("Methodist"), "the dominant hospital system in the Memphis metropolitan area."  Health Choice contracts with health insurers, like Cigna, to provide networks of medical providers and provides managed care contracting services for medical providers.  Both Crosby and Hood are members of MetroCare.

Pursuant to an agreement, Health Choice and Cigna mutually decide which Health Choice doctors should be included in Cigna's provider network.  Tri State does not have a participating provider agreement with Cigna and is thus considered out-of-network for Cigna's members.

In letters dated June 27, 2013, Cigna notified physicians who treated patients at Tri State, including Crosby and Hood, that they had been "engaging in a pattern and practice of consistent and repeated referrals of Cigna patients to [Tri State], which is a non-network facility that does not participate with Cigna."  The letter demanded that the physicians attest that they would "refer Cigna patients to in-network facilities" or Cigna would evaluate whether the physicians' continued participation with Cigna "is in our mutual benefit."  Plaintiff alleges that Cigna and Health Choice illegally agreed that Cigna would send the letters "in order to coerce the physicians into directing the vast majority of these patients to Methodist-affiliated facilities and away from Tri State."

On October 2, 2013, Cigna sent a letter to Health Choice's CEO, Mitch Graves, that it was terminating Crosby and Hood, among others, from its network effective December 1, 2013.

The letter stated that Cigna was invoking the without-cause termination provision, but Crosby and Hood allege that they were terminated for refusing to sign the attestation.   Plaintiffs further allege that a Cigna representative advised Hood's office manager on November 4, 2013, that Health Choice had sent a letter to Cigna requesting that Cigna terminate Hood from its network and that Cigna agreed to do so.  Crosby was also advised that Health Choice and Cigna had agreed to terminate him from Cigna's network unless he attested that he would only refer patients to in-network facilities.

The complaint further alleges that in July of 2013, another doctor was given notice by Cigna that if he did not stop referring patients to Tri State, he and his partners would not be permitted to perform a new office procedure, balloon sinuplasty, even though Cigna permitted other doctors to perform this procedure in their offices.  This same doctor received a letter from Cigna demanding that he disclose his financial interest in Tri State to his patients, though he had a financial interest in other ASCs and had never had to disclose his interest in those.  These actions by Cigna were part of Health Choice and Cigna's "anti-competitive effort to dry up referrals to Tri State and to stymie any competition from Tri State."

Plaintiffs make further separate allegations against Health Choice.  The complaint states that Health Choice committed other illegal conduct by making agreements with non-party insurers Aetna and Blue Cross Blue Shield of Tennessee in which these insurers agreed to advise doctors that they could not refer patients to Tri State in a "further effort to dry up referrals to Tri State and to stymie competition from the facility."   Also, Plaintiffs state that at a Health Choice board meeting, Tri State was denied membership in Health Choice even though it had not yet submitted an application to join.

Sherman Act Claims

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of a trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations."  15 U.S.C. §1.  The Supreme Court has explained that the prohibition is not to be taken literally, and that only "unreasonable restraints" are prohibited. *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997).  There are two ways to evaluate whether an agreement violates Section 1: using the so-called "rule of reason" analysis or making the determination that the agreement is a *per se* violation.[1]  Under the rule of reason, the " true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition." *Chicago Board of Trade v. United States,* 246 U.S. 231, 238 (1918).  "Rule-of-reason analysis guides the inquiry unless the challenged action falls into the category of 'agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use.'" *Northwest Wholesale Stationers, Inc. v. Pacific Stationery & Printing Co.,* 472 U.S. 284, 289 (1985) (quoting *Northern Pacific R. Co. v. United States,* 356 U.S. 1, 5 (1958) (internal citations omitted).

The *per se* rule is limited to agreements that are so inherently anticompetitive as to be illegal per se, such as horizontal agreements among direct competitors.   *NYNEX Corp. v. Discon, Inc.*, 525 U.S. 128, 135 (1998).  The Supreme Court has acknowledged that there is some confusion surrounding the application of the *per se* rule against group boycotts such that "[s]ome care is therefore necessary in defining the category of concerted refusals to deal that

---

[1] The Eighth Circuit has recognized a third method of analysis, the "quick look," which is closer on the analysis spectrum to the *per se* analysis, but neither party has argued its application here.  See *Craftsmen Limousine, Inc. v. Ford Motor Co.*, 491 F.3d 380 (8th Cir. 2007).

mandate *per se* condemnation." *Id.* at 294. Furthermore, the Supreme Court has expressed its reluctance to extend *per se* analysis "to restraints imposed in the context of business relationships where the economic impact of certain practices is not immediately obvious." *F.T.C. v. Indiana Federation of Dentists*, 476 U.S. 447, 458-459 (1986).

Plaintiffs argue that their allegations of both Defendants' concerted refusal to deal with them falls within a recognized category of a *per se* violation of Section 1.  Relying on language from *Northwest, supra*, they categorize the alleged illegal agreements as "joint efforts by a firm or firms to disadvantage competitors by 'either directly denying or persuading or coercing suppliers or customers to deny relationships the competitors need in the competitive struggle.'" *Id.* at 294 (quoting L. Sullivan, Law of Antitrust 229-230(1977)).  Plaintiffs also rely on *Klor's Inc. v. Broadway-Hale Stores, Inc.,* 359 U.S. 207 (1959), where the Supreme Court applied the per se rule (without calling it by that name) to a boycott arranged by a single competitor but carried out by a "wide combination consisting of manufacturers, distributors, and a retailer." *Id.* at 213.  But unlike the complaint in *Klor's*, the Plaintiffs' complaint does not contain sufficient factual matter plausibly suggesting that the competitor at issue, Methodist, entered into an illegal agreement.  The complaint states that "on information and belief, Health Choice made this agreement on behalf of its joint venture partner Methodist in an attempt to eliminate competition to Methodist, while Cigna made this agreement in an attempt to obtain better terms in its contract with Health Choice and to keep Methodist in its provider Network."  However, the only factual allegations involved action by Health Choice or Cigna, both of whom are in a vertical relationship with Plaintiffs, not horizontal competitors. Nor are Health Choice and Cigna in a horizontal relationship with each other.  The Court agrees with Defendants, therefore, that the rule of reason is the appropriate vehicle to analyze Plaintiffs' complaint against both Defendants.

Plaintiffs' efforts to bootstrap this into a horizontal agreement by including conclusory allegations against non-party Methodist are insufficient to state a *per se* illegal boycott claim against Defendants.

Under the rule of reason analysis, a plaintiff must show that an agreement has the potential for genuine adverse effects on competition, which can be shown by either market power or by proof of actual detrimental effects. *Flegel v. Christian Hospital, Northeast-Northwest*, 4 F.3d 682, 688 (8th Cir. 1993). "Since the purpose of the inquiries into market definition and market power is to determine whether an arrangement has the potential for genuine adverse effects on competition, "proof of actual detrimental effects, such as a reduction of output," can obviate the need for an inquiry into market power, which is but a 'surrogate for detrimental effects.'" *F.T.C. v. Indiana Fed'n of Dentists*, 476 U.S. 447, 460-61(1986) (quoting 7 P. Areeda, Antitrust Law ¶ 1511, p. 429 (1986)).

Plaintiffs argue that they have alleged actual detrimental effects on competition.  They allege that consumer choices have been limited by Defendants' actions because doctors have been forced to stop referring patients to Tri State.  Also, they allege that "consumers and competition have also been harmed by [Defendants'] actions which have precluded patients from using their [Out of Network] benefits for which they have paid additional insurance premiums." (Docket No. 1, ¶66).  The complaint also alleges a number of benefits offered by Tri State over the same procedures being offered at hospitals (less expensive, better scheduling, closer parking).  As compared to Methodist facilities, Plaintiffs argue that Tri State offers quicker treatment.

Defendants each challenge that Plaintiffs' allegations are sufficient to show actual detrimental effect on competition.  The Court agrees.  Plaintiffs do not allege that patients cannot

receive Tri State's services absent in-network referrals or that patients cannot obtain ambulatory surgical services elsewhere in the market.  They do not allege that there has been a decline in the number of facilities that perform surgical procedures which do not require hospitalization or in the actual quality of these procedures.   Tri State is still open for business and all its services available to patients.  Therefore, a more thorough analysis of market power is required.

To establish that Defendants have market power, Plaintiffs must allege that Defendants have a dominant share in a well-defined relevant market defined in both terms of product market and geographical market.  *Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.*, 208 F.3d 655 (8th Cir. 2000); *Flegel* at 689.  "Antitrust claims often rise or fall on the definition of the relevant market." *Bathke v. Casey's Gen. Stores, Inc.,* 64 F.3d 340, 345 (8th Cir. 1995). While there is no absolute prohibition against dismissal of antitrust claims for failure to plead a relevant market, "[a] dismissal on the pleadings should be granted sparingly and with caution" and most often "only after a factual inquiry into the commercial realities faced by consumers." *Double D Spotting Service, Inc. v. Supervalu, Inc.*, 136 F.3d 554, 560 (8th Cir. 1998) (internal quotations and citations omitted).

"A court's determination of the limits of a relevant product market requires inquiry into the choices available to consumers." *Little Rock Cardiology Clinic, PA v. Baptist Health*, 591 F.3d 591, 599 (8th Cir. 2009) ("*LRCC"*).  "The relevant product market includes all reasonably interchangeable products." *Double D,* at 560.  Plaintiffs in the instant case define the relevant product market as "the market for surgical services or procedures which do not require hospitalization, including orthopaedic surgery, sports medicine, spinal surgery, otolaryngology, and interventional pain management."  (Docket No. 1, ¶29).   Both Defendants challenge this definition as being fatally deficient, relying on the Eighth Circuit's opinion in *LRCC,* which

summed up the issue of product market as follows: "LRCC's claims boil down to the allegation that, due to Baptist Health's allegedly unlawful actions, LRCC has access to fewer patients. The relevant question, then, is to whom might the cardiologist at LRCC potentially provide medical service?" *Id.* at 597. The Eighth Circuit found that LRCC's product market definition was fatally deficient in part because it defined the product market in terms of how consumers paid for services; it was undisputed that the definition was limited to patients covered by private insurance and excluded patients paying by any other method. *LRCC*, at 596.

Here, Plaintiffs state emphatically that their definition does not limit the relevant product market to patients covered by private insurance. The Court agrees with the argument made by Health Choice, however, and finds that Plaintiffs' silence on the issue of how patients pay for services does not cure the defect that exists in the allegations. Although deliberately excluded from the definition they presented on product market, the market for which Plaintiffs seek to make an anti-trust injury claim is, in fact, limited to the market for surgical services or procedures obtained by patients covered by Cigna health insurance which do not require hospitalization. It is from this impermissibly circumscribed market that they claim to have been shut-out. Plaintiffs' chief complaint is that by drying up referrals to Tri State, Defendants have engaged in anticompetitive conduct; the referrals at issue are referrals from doctors in the Cigna network. As in *LRCC*, the relevant inquiry, and thus the relevant market, must include all alternative patients available to Plaintiffs and not be limited to those who pay by private insurance bought from Cigna or any other insurer. The product market put forth by Plaintiffs is narrower than the product market that was found lacking in *LRCC*. Omitting the red-flagged phrase "covered by private insurance" from the proposed product market definition does not save the complaint from the Eighth Circuit's holding in *LRCC*.

In addition to relying on an impermissibly defined product market, the complaint also lacks a well-defined relevant geographic market, which is defined by considering the commercial realities faced by consumers. *Flegel v. Christian Hosp., Northeast-Northwest*, 4 F. 3d 682, 690 (8th Cir. 1993) (citations omitted). The Eighth Circuit outlined the nature of a court's inquiry into the proper geographic market in a medical setting in *LRCC*:

> Broken down, the test requires a court to first determine whether a plaintiff has alleged a geographic market that includes the area in which a defendant supplier draws a sufficiently large percentage of its business—"the market area in which the seller operates," its trade area. A court must then determine whether a plaintiff has alleged a geographic market in which only a small percentage of purchasers have alternative suppliers to whom they could practically turn in the event that a defendant supplier's anticompetitive actions result in a price increase. The end goal in this analysis is to delineate a geographic area where, in the medical setting, "'few' patients leave ... and 'few' patients enter."

*LRCC,* at 598 (8th Cir. 2009) (internal citations omitted).   "This crucial first step serves as a limitation, preventing antitrust plaintiffs from delineating arbitrarily narrow geographic markets." *LRCC,* at 599.

The complaint in this case defines the relevant geographic market as "the Memphis, Tennessee metropolitan area, including the adjacent counties in Mississippi and Arkansas." (Docket No. 1, ¶31).   Health Choice argues that this definition is deficient as a matter of law because if fails to define the "adjacent counties" abutting the alleged market.  Plaintiffs respond to this argument by stating that "[a]s Plaintiffs' allegations make clear, the market is the Memphis metropolitan statistical area ("MSA") as defined by the federal government." The Court finds that while the MSA is mentioned in the complaint in connection with Cigna's share in the health insurance market, the allegations of the complaint do not make clear that the MSA is the geographic market covered by the Section 1 claims.  For the most part, the allegations refer to the "Memphis metropolitan area," not the Memphis metropolitan statistical area, and nowhere

in the complaint are the "adjacent counties" mentioned by name, though Plaintiffs' response to

Defendants' motions to dismiss lists nine specific counties covered by the MSA.[2]

The Court finds that Plaintiffs have failed to adequately allege a relevant geographic

market.  A careful review of the complaint fails to reveal a delineated geographic area in which

only a small percentage of patients have alternative suppliers in the market for surgical services

or procedures which do not require hospitalization to whom they could practicably turn the event

that Methodist's actions result in a price increase.  (This is assuming that the market of

Methodist—rather than one of the named defendants—is relevant to this analysis.)  The

complaint provides a lot of statistics and trade area information.  For example, Tri State, as its

name implies, treats patients from three states:  Arkansas, Tennessee, and Mississippi.  Plaintiffs

also allege that Cigna has control of 42% of the commercial health insurance market in the

Memphis metropolitan statistical area, which leads them to conclude that Cigna has market

power in the Memphis metropolitan statistical area. Regarding Methodist, Plaintiffs allege that

"[i]n 2012, Methodist reported having a 40 percent market share in the metropolitan Memphis

market," and, therefore, they conclude, Methodist has market power in the Memphis

metropolitan market.   But none of these allegations suggest the geographic area to be considered

in analyzing patients' choices in the defined product market of outpatient surgeries.

Therefore, in the absence of sufficient allegations to plead a proper product market or a

proper geographic market, and given that the deficiencies are inherent in the nature of the claims

and not likely to be cured by further pleading, Plaintiffs' claims in Count I for violations of the

Sherman Act against Cigna and Health Choice are dismissed with prejudice.  Because the Court

---

[2] Plaintiffs' response states: "The Memphis TN-MS-AR Metropolitan Statistical Area includes Fayette, Shelby and
Tipton Counties in Tennessee; Benton, DeSoto, Marshall, Tate and Tunica Counties in Mississippi; and Crittenden
County, Arkansas."  (Docket No. 60, p. 14).

has dismissed all of Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. §1367(c).

THEREFORE, IT IS CONSIDERED, ORDERED, AND ORDERED that:

(1)  Defendant Health Choice, LLC's Motion to Dismiss the Complaint (Docket No. 43) is GRANTED. As against this defendant, Count I is dismissed with prejudice, and Counts II, III, and IV are dismissed without prejudice.

(2)  Defendant Cigna Healthcare of Tennessee, Inc.'s Motion to Dismiss the Complaint (Docket No. 45) is GRANTED.  As against this defendant, Count I is dismissed with prejudice, and Count II is dismissed without prejudice.

(3)  This resolves all of Plaintiffs' claims against Defendants.  Cigna's counterclaims remain pending at this time.

IT IS SO ORDERED this 16th day of April, 2015.

_____
James M. Moody Jr.
United States District Judge