**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

TRI STATE ADVANCED SURGERY
CENTER, LLC, GLENN A. CROSBY II, M.D.,
F.A.C.S., and MICHAEL HOOD, M.D.

PLAINTIFFS

v.                                                                                          Case No. 3:14-CV-00143-JM

HEALTH CHOICE, LLC,
and CIGNA HEALTHCARE OF TENNESSEE, INC.

DEFENDANTS

-----------------------------------------------------------------------------------------------------------------------

CONNECTICUT GENERAL LIFE INSURANCE
COMPANY, CIGNA HEALTH AND
LIFE INSURANCE COMPANY, and CIGNA
HEALTHCARE OF TENNESSEE, INC.,

COUNTERCLAIM-PLAINTIFFS

v.

SURGICAL CENTER DEVELOPMENT, INC.
D/B/A SURGCENTER DEVELOPMENT, and
TRI STATE ADVANCED SURGERY CENTER, LLC

COUNTERCLAIM-DEFENDANTS

**COUNTERCLAIM-PLAINTIFFS' RESPONSE TO PLAINTIFFS'
MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND
COUNTERCLAIM-DEFENDANTS' MOTION TO STAY DISCOVERY**

Plaintiffs and Counterclaim-Defendants have filed a Motion for Leave to File an Amended Complaint (Dkt. 80) ("Mot. to Amend") and a Motion to Stay Discovery (Dkts. 81-82) ("Discovery Mot."), respectively. Cigna Healthcare of Tennessee, Inc., Connecticut General Life Insurance Company, and Cigna Health and Life Insurance Company (together, "Cigna") file this omnibus response to both motions.

1

Filed nearly a month after the Court dismissed their complaint with prejudice, Plaintiffs' motion for leave to amend offers no reason why the Court should take the extraordinary step of reversing its decision.  **First**, Plaintiffs' request is procedurally improper.  "Granting . . . a motion for leave to amend is inappropriate . . . if the district court has indicated either that no amendment is possible or that dismissal of the complaint also constitutes dismissal of the action."  *Geier v. Mo. Ethics Comm'n*, 715 F.3d 674, 677 (8th Cir. 2013).  Here, the Court has done both:  it held that amendment would be futile (concluding that the Complaint's "deficiencies are inherent in the nature of the claims and not likely to be cured by further pleading"), and it indicated that Plaintiffs' entire case is dismissed (by holding that the dismissal order "resolves all of Plaintiffs' claims against Defendants").[1]  So, the Court can—and should— deny the motion without reaching the substantive arguments Plaintiffs raise under Rule 15(a).  **Second**, just as the Court knew would be the case, Plaintiffs' proposed amendments are futile, curing none of the multiple dispositive flaws set forth in the Court's dismissal order.

Counterclaim-Defendants' motion to stay discovery likewise has no merit.  Counterclaim-Defendants contend that the parties may have to engage in duplicative discovery if the motion for leave to amend were to be granted.  That concern is misplaced because the motion to amend should be denied.  In any event, Counterclaim-Defendants offer nothing but speculation about costs the parties may incur from additional discovery.  The motion to stay is a stall tactic.  It should be denied accordingly.

**I.     Background.**

Plaintiffs originally brought two counts against Cigna:  a Sherman Act § 1 claim and a claim for tortious interference with business expectancy.  (Dkt. 1 ¶¶ 74-80, 87-91.)  Plaintiffs

---

[1]   Apr. 16, 2015 Order, as amended by the Court's Apr. 20, 2015 Amended Order, Dkts. 78, 79 ("Order") at 11-12.

also brought additional claims against Health Choice, LLC ("Health Choice"). (*See id.* ¶¶ 74-96.) Cigna moved to dismiss both counts against it (Dkts. 45-46), at the same time filing counterclaims against Plaintiff Tri State and Counterclaim-Defendant SurgCenter for their fraudulent billing practices (Dkt. 49); Health Choice likewise sought dismissal of all claims. (Dkts. 43-44.) On April 16, 2015, the Court granted Cigna's motion—dismissing Plaintiffs' Sherman Act claim with prejudice, and declining to exercise supplemental jurisdiction over the state-law tortious interference claim. (Order at 12.) The Court likewise dismissed all of Plaintiffs' claims against Health Choice. (*Id.*) Cigna's counterclaims are the only active claims in this litigation. (*See id.*)

The Order identified multiple dispositive deficiencies in Plaintiffs' Sherman Act claim. First, the Court recognized that Plaintiffs failed "to state a *per se* illegal boycott claim" because there were no allegations of an illegal agreement between horizontal competitors. (*Id.* at 6-7.) Second, the Court concluded that Plaintiffs failed to plead "actual detrimental effects on competition" because they did not allege that patients were unable to receive Tri State's services absent in-network referrals or could not obtain ambulatory surgical services elsewhere; did not allege that there has been a decline in the number of facilities that perform outpatient surgical services or in the quality of those procedures; and because Tri State is "still open for business and all its services [are] available to patients." (*Id.* at 7-8.) Third, the Court found that Plaintiffs' proposed product market was improperly limited to "the market for surgical services or procedures obtained by patients covered by Cigna health insurance which do not require hospitalization," and that Eighth Circuit precedent rendered such a market "impermissibly circumscribed." (*See id.* at 9.) Finally, the Court held that Plaintiffs also failed to plead a geographic market, as "none of [their] allegations suggest the geographic area to be considered

in analyzing patients' choices in the defined product market of outpatient surgeries." (*Id.* at 11.) The Court concluded that these "deficiencies are inherent in the nature of the claims and not likely to be cured by further pleading" and dismissed the Sherman Act claim "with prejudice." (*Id.*) Because the Court "dismissed all of Plaintiffs' federal claims," it "decline[d] to exercise supplemental jurisdiction over the remaining state law claims." (*Id.* at 12.)

Ignoring the Court's clear holding that amendment would be futile, Plaintiffs now seek to resurrect their claims by moving for leave to file an amended complaint. Plaintiffs also ask for a stay of discovery until that motion is decided. Cigna opposes both these requests.

## II.     Plaintiffs' Motion for Leave to Amend Should Be Denied.

### A.     Seeking Leave to Amend After a Dismissal with Prejudice Is Improper.

Plaintiffs' motion presumes that even though all their claims have been dismissed, they may still seek leave to amend their complaint under Rule 15(a).[2] Plaintiffs are wrong.

As the Eighth Circuit confirmed just today, "[p]ost-dismissal motions to amend are disfavored." *Trinity Lutheran Church of Columbia, Inc. v. Pauley*, No. 14-1832, Slip Op. at 13 (8th Cir. May 29, 2015) (attached hereto as Exhibit 1). In particular, "such a motion would be *inappropriate* 'if the court has clearly indicated either that no amendment is possible or that dismissal of the complaint also constitutes dismissal of the action.'" *Dorn v. State Bank of Stella*, 767 F.2d 442, 443 (8th Cir. 1985) (per curiam) (citation omitted, emphasis added); *see also Geier v. Mo. Ethics Comm'n*, 715 F.3d 674, 677 (8th Cir. 2013) (an order constitutes dismissal of the action (*i.e.*, it is intended to be a final order) when it "states or clearly indicates that no amendment is possible—e.g., when the complaint is dismissed with prejudice or with express denial of leave to amend.") (citing *Dorn*, 767 F.2d at 443).

---

[2]   Plaintiffs also reference Rule 60(b) in a conclusory footnote. (Mot. to Amend at 1 n.1.) As detailed below at Sec. II.B, Plaintiffs do not even try to meet the exacting standard of that rule.

That is just what this Court did here: it listed multiple dispositive flaws in Plaintiffs' Sherman Act claim, concluded that these "deficiencies are inherent in the nature of the claims and not likely to be cured by further pleading," and expressly dismissed that claim "***with prejudice***." (Order at 11 (emphasis added).) The Court also dismissed Plaintiffs' tag-along state law claims under 28 U.S.C. § 1367(c),[3] thereby "resolv[ing] ***all*** of Plaintiffs' claims against Defendants." (*Id.* at 12 (emphasis added).)[4] The Court's ruling was plainly a "dismissal of [Plaintiffs'] action," and in these circumstances, granting a motion for leave to amend "is inappropriate[.]" *Geier*, 715 F.3d at 677; *see also, e.g.*, *Affordable Cmtys. of Mo. v. Fed. Nat'l Mortgage Ass'n*, 2013 WL 4092676, at *2 (E.D. Mo. Aug. 13, 2013) (citing *Geier* and holding that "because the Court dismissed [plaintiff's] claims against [defendant] with prejudice, granting a post-dismissal motion to amend would be inappropriate.").[5]

The fact that the Court did not dismiss Plaintiffs' state-law claims with prejudice makes no difference. In *Mountain Home Flight Serv., Inc. v. Baxter Cty., Ark.*, 758 F.3d 1038 (8th Cir. 2014), the district court (just like the Court here) dismissed federal claims with prejudice, "declined to exercise supplemental jurisdiction over the remaining state law claims[,] and dismissed these final two claims without prejudice." *Id.* at 1042, 1046. The Eighth Circuit

---

[3] The Court was well within its discretion not to exercise supplemental jurisdiction over these claims. *See* 28 U.S.C. § 1367(c). Indeed, dismissal of Plaintiffs' state-law claims was squarely in line with Eighth Circuit's instruction that when "resolution of the remaining claims depends solely on a determination of state law, the Court should decline to exercise jurisdiction." *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009) (citation and quotation marks omitted); *see also Gregoire v. Class*, 236 F.3d 413, 419-20 (8th Cir. 2000) ("[t]he judicial resources of the federal courts are sparse compared to the states. We stress the need to exercise judicial restraint and avoid state law issues wherever possible.") (alteration in original) (citation omitted).

[4] Presumably, the reason that the Court has not entered a final judgment after dismissing all of Plaintiffs' claims is that Cigna has brought counterclaims against Tri State and SurgCenter Development (and Counterclaim-Defendants' motion to dismiss those counterclaims is currently pending). But the resolution of ***Cigna's*** counterclaims, of course, has no bearing on whether ***Plaintiffs*** should be granted post-dismissal leave to amend.

[5] *See also Dorn*, 767 F.2d at 443 (denial of leave to amend post-dismissal "was entirely proper"); *Hawks v. J.P. Morgan Chase Bank*, 591 F.3d 1043, 1050-51 (8th Cir. 2010) (no abuse of discretion in denying motion to set aside or reconsider dismissal order, where the district court "never granted [plaintiff] leave to amend" and plaintiff did not file the motion until nearly after a month after dismissal).

concluded that although "not all the claims were dismissed with prejudice, given the jurisdictional circumstances, we believe the record supports the conclusion that the district court's intent was to dismiss the entire action, rendering the dismissal a final, appealable order." *Id.* at 1046. Relying on *Dorn* and *Geier*, the Eighth Circuit then found no abuse of discretion in the district court's denial of "the motion to amend following its dismissal of the action." *Id.*

The Court has already dismissed Plaintiffs' entire action against Defendants; thus, granting leave to amend would be improper, and the Court is well within its discretion to deny Plaintiffs' motion outright. Plaintiffs "chose to stand on [their] pleadings in the face of [Cigna's] motion to dismiss, which identified the very deficiency upon which the court dismissed the complaint." *Mitan v. McNiel*, 399 F. App'x 144, 145 (8th Cir. 2010) (unpublished per curiam) (finding no abuse of discretion "in denying [plaintiff's] post-dismissal motion for leave to amend" in such circumstances). Their request for a second bite at the apple should be denied.

      **B.**      **Plaintiffs Do Not Even Try to Meet the Demanding Standard of Rule 60(b).**

Perhaps aware that they cannot rely on Rule 15(a), Plaintiffs half-heartedly argue in a footnote that in the alternative, the Court should consider their motion as "a motion to reconsider its April 16 Order dismissing Plaintiffs' claims with prejudice under Rule 60(b)[.]" (Mot. to Amend at 1 n.1.) This argument is as meritless as it is conclusory.

A Rule 60(b) motion "is not a vehicle for simple reargument on the merits." *Broadway v. Norris*, 193 F.3d 987, 990 (8th Cir. 1999). Instead, it "serve[s] the limited function of correcting **manifest** errors of law or fact or to present newly discovered evidence." *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, 714 (8th Cir. 2011) (emphasis added). And Plaintiffs face an exceedingly high burden because "Rule 60(b) provides for 'extraordinary relief which may be

6

Case 3:14-cv-00143-JM   Document 85   Filed 05/29/15   Page 7 of 15

granted only upon an adequate showing of exceptional circumstances." *In re Levaquin Prods. Liab. Litig.*, 739 F.3d 401, 404 (8th Cir. 2014).[6]

Plaintiffs come nowhere close. They do not identify any newly discovered evidence. They do not identify *any* errors of law or fact in the Court's well-reasoned opinion, let alone manifest ones (nor could they). Nor do Plaintiffs even try to demonstrate any "exceptional circumstances" that would warrant "extraordinary relief" under Rule 60(b) (*see id.*)—and, again, nor could they. Indeed, the sum and substance of Plaintiffs' argument for reconsideration under Rule 60(b) is that their motion purportedly "demonstrates that dismissal with prejudice was not necessary and that Plaintiffs' claims are not futile." (Mot. to Amend at 1 n.1.) This is plainly insufficient on its face. The Court has "wide discretion in ruling on a Rule 60(b) motion" and will only be "reverse[d] for a clear abuse of discretion." *In re Levaquin*, 739 F.3d at 404. To the extent Plaintiffs' throwaway request for Rule 60(b) relief even merits consideration, the Court is squarely within its discretion to deny this extraordinary remedy.

### C. Plaintiffs' Proposed Amendments Are Futile In Any Event.

Because granting a motion for leave to amend here "is inappropriate," *Geier*, 715 F.3d at 677, the Court need not address whether Plaintiffs' proposed amendments suffice to clear the Rule 12(b)(6) hurdle. But even if it were to do so, the motion should still be denied, as Plaintiffs' amendments do not cure the multiple dispositive deficiencies the Court has previously identified. *See, e.g.*, *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1208 (8th Cir. 2010) (affirming denial of post-dismissal motion for leave to amend where, among other things, "the proposed amendments would be futile").

---

[6] *See also, e.g.*, *Thompson v. Bank of N.Y. Mellon Trust Co.*, 2014 WL 1887341, at *2 (E.D. Ark. May 12, 2014) ("Rules 59(e) and 60(b) are simply *not* designed to furnish a vehicle by which a disappointed party may reargue matters already argued and disposed of, nor are they aimed at providing a mechanism by which new arguments or legal theories, which could and should have been raised prior to the issuance of judgment, can be later advanced. Attempts to take a 'second bite at the apple' or pad the record for purposes of appeal . . . are thus beyond the intended scope of Rules 59 and 60.") (citation omitted) (emphasis in original).

7

### 1. Plaintiffs Still Fail to Plead a Proper Product Market.

In dismissing the Sherman Act claim with prejudice, the Court determined that Plaintiffs' proposed product market was improperly limited to "the market for surgical services or procedures obtained by patients covered by Cigna health insurance which do not require hospitalization," and that Eighth Circuit precedent rendered such a market "impermissibly circumscribed." (*See* Order at 9; *Little Rock Cardiology Clinic PA v. Baptist Health*, 591 F.3d 591, 597 (8th Cir. 2009) ("*LRCC*") (a product market must include "alternative patients who are able to pay the required fees, not just those who pay using private insurance.").) The Court held that under *LRCC*, the market "must include all alternative patients available to Plaintiffs and not be limited to those who pay by private insurance bought from Cigna or any other insurer." (*Id.*)

The Court also correctly recognized that Plaintiffs' proposed market was even "narrower than the product market that was found lacking in *LRCC*," because it was "limited to the market for surgical services or procedures obtained by patients *covered by Cigna health insurance* which do not require hospitalization." (*Id.* (emphasis added).) But the proposed amendment *still* tries to draw the same "impermissibly circumscribed" (*id.*) market limited to Cigna patients. Plaintiffs' "chief complaint" *still* is that "by drying up referrals to Tri State, Defendants have engaged in anticompetitive conduct; the referrals at issue are referrals from doctors in the Cigna network." (*Id.*; *see, e.g.*, Pls.' Proposed Am. Compl. (Dkt. 80-1) ("Am. Compl.") ¶ 10 (alleging that Cigna is "demanding that [its] in-network physicians refer [Cigna] patients solely to in-network facilities").) And it is from this extremely narrow market "that [Plaintiffs still] claim to have been shut-out." (*See* Order at 9; *see* Am. Compl. ¶ 10 (alleging that "Cigna and Health Choice are effectively precluding patients from choosing treatment at Tri State.").) So even if the market could be limited to private insurance (and under *LRCC* it cannot be, *see infra*),

Plaintiffs' attempts to slice up that narrow market even further—effectively drawing a circle around Cigna's plan members and calling that a market—are impermissible.

Next, Plaintiffs argue that despite the Court's holding that the proposed market must include private insurance patients (Order at 9), government insurance patients should be excluded from the market definition. (Mot. to Amend at 7-8.)[7] But the Court got it exactly right, and Plaintiffs' contentions fail to address both the Court's dismissal ruling and binding Eighth Circuit precedent. *LRCC* specifically rejected an argument that a market in a case like this can be limited to private insurance patients, because "[p]atients [who] able to pay their medical bill, regardless of the method of payment, *are* reasonably interchangeable" from the seller's perspective. 591 F.3d at 597 (emphasis added). Just like plaintiffs in *LRCC*, Plaintiffs here "ha[ve] made no allegation that private insurance is the only method of payment [they] can accept"; nor have they alleged that government insurance patients are "[un]able to pay their medical bill." *Id.* *LRCC* instructs that in such circumstances, "as a matter of law . . . a product market cannot be limited to a single method of payment[.]" *Id.* at 598; *accord* Order at 9.

Plaintiffs' efforts to distinguish *LRCC* by relying on *Methodist Health Servs. Corp. v. OSF Healthcare Sys.*, 2015 WL 1399229 (C.D. Ill. Mar. 25, 2015) are unavailing. Not only is this unpublished out-of-circuit district court decision not binding, it is not even persuasive to the extent it conflicts with *LRCC*. And *LRCC* is clear that, absent allegations that "private insurance is the only method of payment [the seller] can accept," 591 F.3d at 597—allegations which Plaintiffs have not made—the product market cannot be limited to private insurance patients.

In any event, Plaintiffs do not even plausibly allege that "access to privately-insured patients is critical to [their] long-term sustainability"—as was the key to the court's finding in

---

[7] Plaintiffs also attempt to replead essentially the same product market that the Court has already found insufficient, without limiting it to commercial insurance patients. (Am. Compl. ¶ 37.) This proposed market is foreclosed by the Court's dismissal order.

9

*Methodist Health*, 2015 WL 1399229, at *7—beyond simply parroting that language in their proposed complaint. (*See* Am. Compl. ¶ 39.) Merely alleging "that Medicare and Medicaid pay providers significantly lower prices . . . [and] provide only a fraction [of] the reimbursement provided by private insurers" is not enough. *See Marion Healthcare LLC v. Southern Ill. Healthcare*, 2013 WL 4510168, at *9-10 (S.D. Ill. Aug. 26, 2013) (following *LRCC* and rejecting plaintiff's proposed market despite such allegations). Plaintiffs plead no facts to show *why* access to privately-insured patients is critical to their survival—an omission that is especially glaring given that Tri State has now been operating *for years* despite being allegedly shut out of the private insurance market.

### 2. Plaintiffs Still Fail to Plead a Geographic Market.

The Court previously concluded that Plaintiffs failed to plead "a delineated geographic area in which only a small percentage of patients have alternative suppliers in the market for surgical services or procedures which do not require hospitalization to whom they could practicably turn [in] the event that Methodist's actions result in a price increase." (Order at 11.)

The proposed amendment suffers from this same flaw. Plaintiffs try to recast their geographic market from the Memphis metropolitan area to the Memphis metropolitan statistical area ("MSA"), and identify the counties which the Memphis MSA includes. (Am. Compl. ¶¶ 3, 19, 22, 44.) But this does nothing to address the more fundamental problem with Plaintiffs' proposed geographic market—"none of the[ir] allegations suggest the geographic area to be considered in analyzing patients' choices in the defined product market of outpatient surgeries." (Order at 11.) Put otherwise, while Plaintiffs allege that Cigna, Health Choice, and Methodist have power in certain markets, nothing here provides the Court with a basis to "delineate a geographic area where . . . few patients leave and few patients enter." (Order at 10 (internal

10

quotation marks and ellipsis omitted).)  Plaintiffs thus *still* fail to identify a "geographic area in which only a small percentage of patients have alternative suppliers[.]"  (*Id.* at 11.)[8]

### 3. Plaintiffs Still Fail to Plead Detrimental Effects on Competition.

The proposed amendments also cure none of the problems that previously led the Court to conclude that Plaintiffs failed to plead detrimental effects on competition.  *First*, the Court held that Plaintiffs "[did] not allege that patients cannot receive Tri State's services absent in-network referrals or that patients cannot obtain ambulatory surgical services elsewhere in the market."  (Order at 7-8.)  Plaintiffs now allege that "Tri State cannot treat patients without a physician referral" (Am. Compl. ¶ 4), but glaringly absent is any allegation that Tri State could not treat patients who received referrals from out-of-network providers.  Moreover, Plaintiffs still do not allege that patients cannot obtain these services elsewhere in the market; and to the contrary, their allegations confirm that multiple other options remain.  (Am. Compl. ¶ 7 ("Methodist operates five outpatient surgical centers"); *id.* ¶ 57 (quoting Cigna's letter, which stated that "Cigna's network includes a number of licensed, credential and conveniently located outpatient surgery centers in the greater Memphis area.").)

*Second*, the proposed amendment fails to address the Court's conclusion that Plaintiffs "[did] not allege that there has been a decline in the number of facilities that perform surgical procedures which do not require hospitalization or in the actual quality of those procedures." (Order at 8.)  Plaintiffs allege that Crittenden Regional Hospital "was forced to file bankruptcy and to close in the fall of 2014, in part because it was unable to compete" (Am. Compl. ¶ 2), but they do not allege that Cigna or Health Choice had anything to do with this closure.  Nor do

---

[8]  Plaintiffs allege that Crittenden Regional Hospital in Crittenden County, Arkansas closed in fall of 2014, and that "Tri State is the only facility offering [outpatient] surgical procedures in Crittenden County."  (Am. Compl. ¶ 2.)  These allegations do not help establish the geographic market, however, because Crittenden County is only one of nine counties which Plaintiffs allege comprise the Memphis MSA.  (*See id.* ¶ 3.)

Plaintiffs offer any new allegations to suggest there has been any decline in the quality of outpatient surgical procedures as a result of Cigna's alleged conduct.

*Third*, the proposed amendment also ignores the Court's prior conclusion that there are no detrimental effects on competition in part because "Tri State is still open for business and all its services [are] available to patients." (Order at 7-8.) Plaintiffs do not (and cannot) allege that Tri State has closed. They speculate that "[i]f Health Choice is successful in forcing all of its physicians to divert cases from Tri State . . . Tri State will be forced to go out of business" (Am. Compl. ¶ 32), but this is hypothetical at best, and Plaintiffs do not plausibly explain why—if Tri State is indeed threatened with closure as a result of Health Choice's actions—it is still open now, *years* after the supposed conspiracy allegedly began.[9]

*Finally*, Plaintiffs contend that paragraphs 34 and 35 of their proposed complaint address "detrimental effects" (Mot. to Amend at 3), but they do not. Paragraph 34 makes the conclusory assertion that Cigna's actions "limited the treatment options available to Cigna's patients" (Am. Compl. ¶ 34)—but for reasons set forth above, this falls far short of alleging that patients cannot obtain treatment elsewhere in the market, and ignores the fact that patients can obtain treatment from Tri State on their own if they wish through out-of-network referrals. Paragraph 35 alleges that termination of Dr. Hood and Dr. Crosby from Cigna's network "has greatly reduced primary care and other physicians' referrals of patients to the Plaintiff physicians," but this does not allege that those patients would not be referred to another provider,[10] nor does it even allege that Dr. Hood and Dr. Crosby have been unable to replace those referrals with other patients, or that the same patients could not see Dr. Hood and Dr. Crosby on an out-of-network basis.

---

[9]   *See* Am. Compl. ¶ 49 (alleging that at a Methodist board meeting "in the third quarter of 2012," HealthChoice's CEO "recommended that all parties present should encourage others to boycott investments in Tri State").

[10]  Plaintiffs' allegations indicate just the opposite: they allege that "primary care physicians . . . keep one referral list" of physicians to whom they refer patients (Am. Compl. ¶ 35); thus, if Dr. Hood and Dr. Crosby were in fact taken off a physician's referrals list, patients would simply be referred to another provider on that list.

## III. The Motion to Stay Discovery Should Be Denied.

Finally, Counterclaim-Defendants' motion to stay discovery should also be denied. That motion is premised on a concern that parties may have to engage in duplicative discovery if the Court were to grant Plaintiffs' motion for leave to amend—but as detailed in Sec. II, the motion to amend is meritless, and that concern is therefore misplaced.

Moreover, Counterclaim-Defendants heap speculation upon speculation in contending that *if* the motion for leave to amend were to be granted, "the parties *may* be forced to conduct discovery twice" (Discovery Mot. at 4 (emphasis added)), and assert—without providing any specifics whatsoever—that "the parties will incur substantial costs . . . both in time and resources" as a result. (*Id.* at 5.) These vague assertions and speculations are not enough to preclude this case from moving forward. And further undercutting Counterclaim-Defendants' assertions, Cigna has agreed to produce electronic claims data from its systems to cover not just Plaintiff Tri State but also other facilities in the Memphis area and in all of Arkansas—which is at least the same scope that Plaintiffs requested before their claims were dismissed.

Under the Scheduling Order, "[a]ll discovery will be completed no later than December 4, 2015" (Dkt. 59 at 1), mere months from now. Cigna intends to pursue its counterclaims in accordance with these deadlines, and Counterclaim-Defendants offer no authority for a stay of discovery to be granted simply because a motion to dismiss counterclaims (or a motion for leave to amend) is pending. The Court should deny the motion to stay, and allow the parties to keep moving this case forward.

Dated:  May 29, 2015                                              Respectfully submitted,

                                                                           /s/  *Chad W. Pekron*

| | |
|---|---|
| Joshua B. Simon | John E. Tull III (84150) |
| Warren Haskel | Chad W. Pekron (2008144) |
| Dmitriy G. Tishyevich | R. Ryan Younger (2008209) |
|   (all admitted *pro hac vice*) | QUATTLEBAUM, GROOMS & TULL PLLC |
| KIRKLAND & ELLIS LLP | 111 Center Street, Suite 1900 |
| 601 Lexington Avenue | Little Rock, AR  72201 |
| New York, NY  10022 | Telephone:  (501) 379-1700 |
| Telephone:  (212) 446-4800 | Facsimile:  (501) 379-1701 |
| Facsimile:  (212) 446-4900 | jtull@qgtlaw.com |
| joshua.simon@kirkland.com | cpekron@qgtlaw.com |
| warren.haskel@kirkland.com | ryounger@qgtlaw.com |
| dmitriy.tishyevich@kirkland.com | |

*Counsel for Defendant and Counterclaim-Plaintiff Cigna Healthcare  
of Tennessee, Inc., and Counterclaim-Plaintiffs Connecticut General  
Life Insurance Company and Cigna Health and Life Insurance Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 29, 2015, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Eastern District of Arkansas, using the electronic case filing system of the court, which will send notification of such filing to attorneys of record who are known as "Filing Users."

                                                                */s/ Chad W. Pekron*
                                                                Chad W. Pekron