**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 28 2015

JAMES W. McCORMACK, CLERK
By: _____
                              DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

---

TRI STATE ADVANCED SURGERY CENTER, LLC,
GLENN A. CROSBY II, M.D., F.A.C.S., and MICHAEL HOOD,
M.D.,

      Plaintiffs,

v.                                                                Case No. 3:14cv0143 JM

HEALTH CHOICE, LLC, and
CIGNA HEALTHCARE OF TENNESSEE, INC.,

      Defendants.

---

CONNECTICUT GENERAL LIFE INSURANCE COMPANY,
CIGNA HEALTH AND LIFE INSURANCE COMPANY, and
CIGNA HEALTHCARE OF TENNESSEE, INC.,

     Counterclaim-Plaintiffs,

v.

SURGICAL CENTER DEVELOPMENT, INC
d/b/a SURGCENTER DEVELOPMENT and
TRI STATE ADVANCED SURGERY CENTER, LLC,

     Counterclaim-Defendants.

---

**ANSWER OF COUNTERCLAIM-DEFENDANTS
SURGICAL CENTER DEVELOPMENT, INC. D/B/A/ SURGCENTER DEVELOPMENT
AND TRI STATE ADVANCED SURGERY CENTER, LLC TO
COUNTERCLAIM- PLAINTIFFS' COUNTERCLAIMS**

---

**COUNTER-COUNTERCLAIMS AND THIRD-PARTY CLAIMS OF
COUNTER-COUNTERCLAIM-PLAINTIFF TRI STATE ADVANCED
SURGERY CENTER, LLC AND THIRD-PARTY PLAINTIFFS
GLENN A. CROSBY, II, M.D. AND MICHAEL HOOD, M.D. AGAINST
CIGNA HEALTHCARE OF TENNESSEE, INC. AND HEALTH CHOICE, LLC**

---

## ANSWER TO CIGNA'S COUNTERCLAIM

Counterclaim-Defendants Surgical Center Development, Inc. d/b/a SurgCenter Development ("SurgCenter") and Tri State Advanced Surgery Center, LLC ("Tri State") (collectively, "Counterclaim-Defendants") answer Counterclaim-Plaintiffs Connecticut General Life Insurance Company, Cigna Health and Life Insurance Company, and Cigna Healthcare of Tennessee, Inc.'s (collectively, "Counterclaim-Plaintiffs" or "Cigna") Counterclaims as follows:

For response to each of the numbered paragraphs of the Counterclaims, Counterclaim-Defendants state as follows:

### INTRODUCTION

1. Denied.

2. Admitted.

3. Denied.

4. Denied.

5. Because Cigna has not identified the patients whose bills are offered as examples in paragraph 5, Counterclaim-Defendants lack sufficient knowledge or information to form a belief about the truth of those allegations. Counterclaim-Defendants admit that they offer their patients competitive pricing that is based, in part, on Medicare rates. All other allegations in paragraph 5 are denied.

6. Denied.

7. Counterclaim-Defendants deny that their billing practices are improper or that such practices constitute a "scheme." Because Cigna has not identified the "courts, state legislatures, or other governmental bodies" referred to in this allegation, Counterclaim-Defendants lack sufficient knowledge or information to form a belief as to the truth of those

allegations concerning the billing practices of providers other than Tri State and/or the "rights" of healthcare plans relative thereto.

8.     Paragraph 8 states legal conclusions to which no response is required. To the extent that a response is required, the allegations in paragraph 8 are denied to the extent Cigna is claiming that Counterclaim-Defendants have committed any acts that would violate the laws of Colorado or Florida.

9.     Denied.

10.    Denied.

11.    Counterclaim-Defendants admit Cigna seeks to recover payments made to Tri-State.  The allegations in paragraph 11 are otherwise denied.

## PARTIES

12.    Admitted.

13.    Admitted.

14.    Admitted.

15.    Counterclaim-Defendants admit Surgical Center Development, Inc. is a Nevada corporation.  Counterclaims Defendants deny Surgical Center Development, Inc.'s primary place of business is Pismo Beach, California.

16.    Admitted.

## JURISDICTION AND VENUE

17.    Admitted.

18.    Counterclaim-Defendants deny paragraph 18 in that the Court has dismissed the claims brought by Counterclaim-Plaintiff under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1965(a)-(b).

19.     Counterclaim-Defendants admit this Court has subject-matter jurisdiction over this action.  All other allegations in paragraph 19 are denied.

20.     Admitted.

## **FACTUAL BACKGROUND**

21.     Admitted.

22.     Counterclaim-Defendants lack sufficient knowledge or information to form a belief as to the truth of these allegations.

23.     Counterclaim-Defendants lack sufficient knowledge or information to form a belief as to the truth of these allegations.

24.     Counterclaim-Defendants lack sufficient knowledge or information to form a belief as to the truth of these allegations.

25.     Counterclaim-Defendants lack sufficient knowledge or information to form a belief as to the truth of these allegations.

26.     Admitted.

27.     Admitted.

28.     Admitted.

29.     Counterclaim-Defendants admit co-payments are typically calculated as a percentage of the allowed amount.  Any other allegations in paragraph 29 are denied.

30.     Counterclaim-Defendants lack sufficient knowledge or information to form a belief as to the truth of these allegations.

31.     Counterclaim-Defendants lack sufficient knowledge or information to form a belief as to the truth of these allegations.

32.     Counterclaim-Defendants deny that Cigna's network arrangements "increas[e] the quality of medical care" and deny any implication that plan members do not or would not benefit from obtaining services from non-participating providers in appropriate circumstances. Counterclaim-Defendants lack sufficient knowledge or information to form a belief about the truth of the other allegations in Paragraph 32.

33.     Counterclaim-Defendants admit that "out-of-network" providers can bill patients for amounts not reimbursed by the patients' insurance provider. Counterclaim-Defendants lack sufficient knowledge or information to form a belief about the truth of the remaining allegations in Paragraph 33.

34.     Counterclaim-Defendants lack sufficient knowledge or information to form a belief as to the truth of these allegations.

35.     Counterclaim-Defendants lack sufficient knowledge or information to form a belief as to the truth of these allegations.

36.     Denied.

37.     Denied.

38.     Counterclaim-Defendants lack sufficient knowledge or information to form a belief as to the truth of these allegations.

39.     Counterclaim-Defendants lack sufficient knowledge or information to form a belief as to the truth of these allegations.

40.     Denied.

41.     Counterclaim-Defendants lack sufficient knowledge or information to form a belief as to the truth of these allegations.

42.     Denied.

43.     Counterclaim-Defendants admit that the allegations set forth in this paragraph describe, at a level of generality, the manner in which certain Cigna-administered plans operate under the definitional provisions found therein; however, Counterclaim-Defendants lack sufficient knowledge or information to form a belief as to the truth of these allegations as to every such plan.

44.     Denied.

45.     Denied.

46.     Paragraph 46 states legal conclusions to which no response is required. To the extent that a response is required, the allegations in paragraph 46 are denied.

47.     Paragraph 47 states conclusory opinions to which no response is required.  To the extent that a response is required, the allegations in paragraph 47 are denied.

48.     Denied.

49.     Admitted.

50.     Admitted.

51.     Counterclaim-Defendants admit SurgCenter does not generally charge a fee for the services it provides to ambulatory surgical centers.   Counterclaim-Defendants deny SurgCenter manages or runs the ambulatory surgical centers.

52.     Counterclaim-Defendants admit SurgCenter's website contained the quoted phrase at the time the Counterclaims were filed. All other allegations in Paragraph 52 are denied.

53.     Denied.

54.     Admitted.

55.     Admitted.

56.     Denied.

57.    Denied.

58.    Denied.

59.    Counterclaim-Defendants admit that paragraphs 60-63 of the Counterclaim purport to summarize Cigna's views on Tri State's billing practices, but deny that such summary is accurate.

60.    To the extent that this paragraph of the Counterclaim alleges that Tri State bases certain patients' initial charges on a calculation using Medicare rates, Counterclaim-Defendants admit the allegation.  Counterclaim-Defendants deny any other allegations or characterizations set forth in this paragraph.

61.    Denied.

62.    Denied.

63.    Denied.

64.    Denied.

65.    Denied.

66.    Denied.

67.    Denied.

68.    Denied.

69.    Denied.

70.    Denied.

71.    Denied.

72.    Because Cigna has not identified the patients whose bills are offered as examples in paragraph 72, Counterclaim-Defendants lack sufficient knowledge or information to form a

7

belief about the truth of those allegations.  Counterclaim-Defendants deny that any of the ASCs employ fraudulent "dual pricing" or "fee-forgiving" schemes.

73.    Denied.

74.    Counterclaim-Defendants admit the allegations of the first sentence of this paragraph, but deny the allegations set forth in the second sentence.

## CAUSES OF ACTION

### Count I – Claim for Overpayments Under ERISA § 502(a)(3)
### (Against Tri State)

The Court dismissed Count I of Counterclaim-Plaintiffs' Counterclaims.  Accordingly, responses to paragraphs number 75 through 86 are not required.

### Count II – RICO § 1962(c)
### (Against All Counterclaim Defendants)

The Court dismissed Count II of Counterclaim-Plaintiffs' Counterclaims.  Accordingly, responses to paragraphs number 87 through 103 are not required.

### Count III – Fraud
### (Against Tri State)

104.    The responses to paragraphs 1 through 74 are incorporated by reference as if set forth fully herein.

105.    Denied.

106.    Denied.

107.    Denied.

108.    Denied.

109.    Denied.

110.    Denied.

### Count IV – Aiding and Abetting Fraud
### (Against SurgCenter)

111.    The responses to paragraphs 1 through 74 and 104 through 110 are incorporated by reference as if set forth fully herein.

112.    Denied.

113.    Denied.

114.    Denied.

115.    Denied.

116.    Denied.

117.    Denied.

### Count V – Claim for Unjust Enrichment
### (Against Tri State)

118.    The responses to paragraphs 1 through 74 are incorporated by reference as if set forth fully herein.

119.    Denied.

120.    Paragraph 120 states legal conclusions to which no response is required. To the extent that a response is required, the Counterclaim-Defendants lack sufficient knowledge or information to form a belief about the truth of these allegations.

121.    Denied.

122.    Denied.

123.    Denied.

### Count VI – Claim for Tortious Interference with Contract and Business Expectancy
### (Against Tri State and SurgCenter)

124.    The responses to paragraphs 1 through 74 are incorporated by reference as if set forth fully herein.

125. Denied.

126. Admitted.

127. Counterclaim-Defendants lack sufficient knowledge or information to form a belief about the truth of what Cigna's plans stated. Paragraph 127 also states legal conclusions to which no response is required. To the extent that a response is required, the allegations in paragraph 127 are denied.

128. Denied.

129. Denied.

130. Denied.

131. Denied.

132. Denied.

133. Denied.

134. Counterclaim-Defendants lack sufficient knowledge or information to form a belief about the truth of what Cigna's plans stated. Paragraph 134 also states legal conclusions to which no response is required. To the extent that a response is required to those legal conclusions, the allegations in paragraph 134 are denied.

135. Denied.

136. Denied.

137. Denied.

### Count VII –Declaratory Relief
### (Against Tri State)

138. The responses to paragraphs 1 through 74 are incorporated by reference as if set forth fully herein.

139. Admitted.

140.   Admitted.

141.   Admitted.

142.   Denied.

143.   Paragraph 143 states legal conclusions to which no response is required. To the extent that a response is required, the allegations in paragraph 143 are denied.

144.   Paragraph 144 states legal conclusions to which no response is required. To the extent that a response is required, the allegations in paragraph 144 are admitted.

145.   Paragraph 145 describes the relief Cigna requests from the Court to which no response is required.  To the extent that a response is required, the allegations in paragraph 145 are denied.

146.   Paragraph 146 describes the relief Cigna requests from the Court to which no response is required.  To the extent that a response is required, the allegations in paragraph 146 are denied.

**JURY DEMAND**
**(As to Non-ERISA Claims Only)**

147.   The responses to the preceding paragraphs are incorporated by reference as if set forth fully herein.

148.   Paragraph 148 describes Cigna's claim for a trial by jury, to which no response is required.

**PRAYER FOR RELIEF**

As to the unnumbered paragraph under the heading "PRAYER FOR RELIEF," it is denied Counterclaim-Defendants are liable to Counterclaim-Plaintiffs on any theory of liability and/or for any sum whatsoever, and Counterclaim-Defendants request Counterclaim-Plaintiffs'

11

claims be dismissed in their entirety, with prejudice, with costs and attorneys fees assessed against Counterclaim-Plaintiffs.

Any allegations which are not hereinabove admitted, denied, or explained are hereby denied as if set out separately and denied.

## OTHER DEFENSES

### First Defense

Cigna fails to state a claim upon which relief can be granted.

### Second Defense

Cigna's claims against SurgCenter are barred because SurgCenter is not a proper party to this lawsuit.

### Third Defense

Cigna's claims are barred, in whole or in part, because Cigna does not have standing to raise those claims.

### Fourth Defense

Cigna's claims are barred, in whole or in part, because Cigna fails to allege facts establishing the basis for the claims of each Cigna entity.

### Fifth Defense

Cigna's claims are barred, in whole or in part, because Cigna did not sustain any damages as a result of Defendants' conduct.

### Sixth Defense

Cigna's claims are barred, in whole or in part, by the applicable statute of limitations.

### Seventh Defense

Cigna's claims are barred, in whole or in part, to the extent that they violate Cigna's obligations as a fiduciary of the plans it administers and/or of its insureds.

### Eighth Defense

Cigna's claim for declaratory judgment is barred, in whole or in part, because it simply recasts Cigna's claim for damages under ERISA, which is not proper and has been dismissed.

### Ninth Defense

Cigna's claims are barred, in whole or in part, because Counterclaim-Defendants acted in good faith.

### Tenth Defense

Cigna's claims are barred, in whole or in part, to the extent that Cigna is neither a plan administrator nor a fiduciary of all or some of the plans at issue.

### Eleventh Defense

Cigna's claims are barred, in whole or in part, because they are preempted by ERISA.

### Twelfth Defense

Cigna's claims are barred, in whole or in part, by the doctrine of laches.

### Thirteenth Defense

Cigna's claims are barred, in whole or in part, by the doctrine of estoppel.

### Fourteenth Defense

Cigna's claims are barred, in whole or in part, by the doctrine of unclean hands.

### Fifteenth Defense

Cigna's claims are barred, in whole or in part, because Cigna would be unjustly enriched if it were awarded the relief it seeks.

### Sixteenth Defense

Cigna's claims are barred, in whole or in part, to the extent that the conduct at issue is governed by a contract.

### Seventeenth Defense

Cigna's claim for tortious interference is barred by the economic loss rule.

### Eighteenth Defense

Cigna's claims are barred, in whole or in part, because any award to Cigna must be offset or reduced by amounts owed by Cigna to Counterclaim-Defendants.

### Nineteenth Defense

Cigna's claims are barred, in whole or in part, by its own fraudulent conduct, including but not limited to its fraudulent inducement of consumers to pay extra for out-of-network benefits.

### Twentieth Defense

Cigna's claims are barred, in whole or in part, by its own contributory negligence.

### Twenty-first Defense

Cigna's claim for exemplary or punitive damages is barred to the extent that the causes of action asserted do not permit recovery of exemplary or punitive damages.

### Twenty-second Defense

Cigna's request for exemplary or punitive damages is barred because Cigna has failed to state facts that support a claim for exemplary or punitive damages.

## COUNTER-COUNTERCLAIMS AND THIRD-PARTY CLAIMS

Counter-Counterclaim Plaintiff Tri State Advanced Surgery Center, LLC ("Tri State" or "the ASC") and Third-Party Plaintiffs Glenn A. Crosby, II, M.D. ("Dr. Crosby"), and Michael Hood, M.D. ("Dr. Hood") (collectively, the "Physician Plaintiffs"), file these Counter-Counterclaims and Third-Party Claims against Health Choice, LLC ("Health Choice") and Cigna Healthcare of Tennessee, Inc., Connecticut General Life Insurance Company, and Cigna Health and Life Insurance Company (collectively "Cigna"), (collectively "Defendants") and allege as follows:

## INTRODUCTION

1.      Tri State is an ambulatory surgical care facility ("ASC") doing business in the State of Arkansas.  Tri State has two operating rooms and ten physician-partners.  At Tri State, licensed  physicians perform a variety of surgical procedures on an outpatient basis.

2.      Tri State provides numerous benefits to its patients and the healthcare industry as a whole when compared with hospitals. Among them are lower costs for the same care, lower risks of infection, greater flexibility in scheduling procedures, and greater patient satisfaction. This greatly increases patient choice and makes Tri State a valuable treatment option not only for residents of Crittenden County, but for residents of the greater Memphis, Tennessee metropolitan area

3.      Tri State cannot treat patients without a physician referral. For this reason, the conspiracy, described in greater detail below, targeted physicians who provide medically necessary services to patients at Tri State, including Drs. Crosby and Hood (the "Physician Plaintiffs"), among others.

4.     The Physician Plaintiffs each provide medical services to patients in Arkansas and in the Memphis metropolitan area. As part of their practices, the Physician Plaintiffs have utilized Tri State to perform outpatient procedures on their patients in a more convenient, safer, and less expensive environment and in response to patient choice and the medical needs of their patients.

5.     Defendant Health Choice is a joint venture physician-hospital organization ("PHO") between MetroCare Physicians, an Independent Physician Association ("IPA"), and Methodist LeBonheur Healthcare ("Methodist").

6.     MetroCare is an organization that consists of physicians with one of its main goals being "[t]o promote, cooperate and coordinate with [Methodist] and its affiliates."[1] Among other services, Health Choice contracts with managed care organizations on behalf of the physician-members of MetroCare, including Drs. Crosby and Hood.   Health Choice also contracts with managed care organizations on behalf of facilities in the Methodist hospital system.

7.     Methodist is the dominant hospital system in the Memphis metropolitan area, reporting a 40 percent market share in the metropolitan Memphis market in 2012.  In addition to eight hospitals and numerous other healthcare centers in west Tennessee and Mississippi, Methodist operates five outpatient surgical centers that compete with Tri State. On its website, Methodist does not list any healthcare facilities in Arkansas. In order to have an adequate provider network to serve their subscribers in the Memphis metropolitan area, health insurers, like Cigna, must have Methodist in their network.

---

[1] METROCARE PHYSICIANS, *Vision Statement and Goals*, http://metrocarephysicians.com/who-we-are/vision (last visited October 24, 2015).

8.      Health Choice has an exclusive contract with Cigna pursuant to which any physician seeking to join Cigna's network in certain counties in Tennessee and Mississippi must be a member of Health Choice's joint venture partner MetroCare, and must participate with Cigna through Health Choice. On information and belief, however, the service area encompassed in the Health Choice-Cigna contract does not include Arkansas, where Tri State is located, where Dr. Hood practices medicine, and where Dr. Crosby maintains an office where he treats patients. Thus, there is no contractual reason for Cigna to require Arkansas providers to be members of Health Choice in order to join a Cigna provider network.

9.      As described in more detail below, Health Choice and Cigna engaged in a concerted refusal to deal or boycott of Tri State and the Physician Plaintiffs. This ongoing conspiracy against these Plaintiffs was and is designed to prevent Tri State and the physicians who utilize Tri State from contracting with insurers and to prevent the referral of patients to Tri State in order to direct more referrals to Methodist. In part, the wrongful conspiracy consisted of Health Choice and Cigna agreeing that Cigna should terminate the Physician Plaintiffs from Cigna's provider network, and that Cigna should threaten to terminate other physicians unless they agreed to stop referring patients to Tri State. On information and belief, Health Choice made this agreement on behalf of its joint venture partner Methodist and in order to attempt to eliminate competition to Methodist, while Cigna made this agreement in an attempt to obtain better terms in its contract with Health Choice and to keep Methodist in its provider network.

10.     As further described below, Health Choice has taken further action to attempt to drive Tri State out of business and to eliminate it as an effective competitor for Methodist's hospitals and ASCs.

11.    Health Choice's actions are particularly egregious because Health Choice represents itself as an advocate for physicians, including in its negotiations with managed care organizations such as Cigna.

12.    Health Choice's and Cigna's actions described herein constitute tortious interference with contract and/or business expectancy, violations of the Tennessee Consumer Protection Act, circumvention and violation of Arkansas' Patient Protection Act, and a wrongful, anti-competitive conspiracy, as a direct result of which Tri State and the Physician Plaintiffs, and the patients they serve, have been damaged.

13.    Further, following Health Choice and Cigna's anti-competitive conspiracy to drive business away from Tri State and terminate the Physician Plaintiffs from Cigna's network, Cigna began to improperly reduce or deny claims for medically necessary services provided by Tri State to participants in and beneficiaries of health insurance plans insured and/or administered by Cigna ("Cigna's insureds" or "Cigna-insured patients"), even though the insureds' health insurance plans covered those services.

14.    Tri State brings Counts VII to XII pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132, as the assignee of its patients' rights under that law, and under state law on its own behalf.

15.    By its unlawful refusal to pay Tri State for the treatment of Cigna's insureds, Cigna has damaged its insureds by depriving them of their right to choose their health care provider and preventing them from using insurance benefits for which they have paid premiums. Cigna has also damaged Tri State by depriving it of payment to which it is entitled for the services it provided to Cigna's insureds.

18

## PARTIES

16.     Tri State Advanced Surgery Center, LLC is an Arkansas limited liability corporation with its principal place of business in Marion, Arkansas. Tri State is incorporated and operates in Arkansas. Tri State treats patients from Arkansas, Mississippi, and Tennessee, with most of its affiliated surgeons' practices based in Memphis, Tennessee. Tri State is the assignee of its Cigna-insured patients' rights and benefits under their Cigna health insurance plans.

17.     Glenn A. Crosby II, M.D., is a board-certified neurosurgeon licensed in Tennessee, Arkansas, and Mississippi, who practices medicine with the Crosby Clinic in Memphis, Tennessee, and at Tri State. Dr. Crosby has a B.S. from Rhodes College and an M.S. from Georgetown University. He graduated from the University of Tennessee College of Medicine in 1989 and trained at the George Washington University Medical Center and at Massachusetts General Hospital with Harvard Medical School. Dr. Crosby is a member of Health Choice's joint venture partner MetroCare, through which, prior to the wrongful activities complained of herein, he participated in Cigna's provider network.

18.     Michael Hood, M.D. is a surgeon licensed to practice medicine in Arkansas, specializing in sports medicine and general orthopaedics. Dr. Hood has an undergraduate degree from the University of Memphis. He graduated from the Tennessee Health Science Center in 2006 and trained at the University of Missouri Columbia campus and at the Campbell Clinic. Dr. Hood practices medicine with Delta Orthopaedics & Sports Medicine in West Memphis, Arkansas and at Tri State. Dr. Hood is a member of Health Choice's joint venture partner MetroCare, through which, prior to the wrongful activities complained of herein, he participated in Cigna's provider network.

19.     Cigna is a Tennessee corporation with its principal place of business in Tennessee. Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company are companies organized under the laws of the State of Connecticut with their principal places of business in Bloomfield, Connecticut. During all times involved in this Counterclaim, Cigna acted as either the "third party administrator" of various employers' healthcare plans or as an insurer of various healthcare insurance policies. As described more fully below, Cigna contracts with its "members" and provides them access to networks of providers. In the service area covered by the Health Choice-Cigna contract, Cigna has not created its own network of physicians, but has instead contracted with Health Choice so that Cigna's members may access the provider network created by Health Choice.

20.     Health Choice is a joint venture PHO between MetroCare and Methodist, the dominant hospital system in the Memphis metropolitan area. Health Choice contracts with health insurers to provide networks of physicians, hospitals, and other medical providers. Health Choice also provides managed care contracting services for physicians, hospitals, and other medical providers in the Memphis metropolitan area. Health Choice's CEO is Mitch Graves, who, prior to joining Health Choice, served as the President and CEO of Methodist LeBonheur Healthcare's Affiliated Services Division, which included Methodist's five outpatient surgery centers.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action pursuant 28 U.S.C. §§ 1331 and 1367. Tri State's claims pursuant to ERISA arise under federal law, and its claims pursuant to Arkansas and Tennessee state law are part of the same case or controversy within the meaning of Article III of the United States Constitution. Jurisdiction over Tri State's claims pursuant to ERISA is also proper under § 502(e) of ERISA, 29 U.S.C. § 1132(e).

22.     This Court has personal jurisdiction over the parties because Tri State is located in this State and because Cigna and Health Choice systematically and continuously conduct business in this State and otherwise have minimum contacts with this State sufficient to establish personal jurisdiction. In addition, in its Counterclaim, Cigna acknowledged that this Court has personal jurisdiction over the parties to the Counterclaim and submitted to the jurisdiction of this Court. (D.E. 49 ¶ 17.)

23.     Venue is appropriate in this Court under 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2).

## FACTS APPLICABLE TO ALL COUNTS

### *Tri State*

24.     In 2011, in order to offer the residents of Crittenden County and the greater Memphis area an alternative to the hospitals that were then available for surgical procedures, a group of physicians joined together to open Tri State Advanced Surgery Center.

25.     Tri State is the only ASC in Marion, Crittenden County, Arkansas. Prior to fall of 2014, Crittenden Regional Hospital offered facilities for both in-patient and out-patient surgical procedures. However, Crittenden Regional Hospital was forced to file bankruptcy and to close in the fall of 2014.

26.     Tri State offers orthopaedic, spine, ENT, sports medicine, podiatry, and interventional pain surgical procedures and, with the closing of Crittenden Regional Hospital, Tri State is the only facility offering these surgical procedures in Crittenden County.

27.     The founding physicians of Tri State opened the facility in order to provide patients the choice to receive surgical procedures in a more comfortable and effective setting, with the ability to leave the center the same day.

28.     Tri State is a modern and efficient ASC, licensed by Arkansas, certified by Medicare, and accredited through the Accreditation Association for Ambulatory Health Care. Tri State offers many benefits to patients. Tri State utilizes state of the art surgical technology, and the treatments performed at Tri State are less likely to result in infection than are similar treatments performed in hospitals. The treatments performed at Tri State are also almost always less expensive than similar procedures performed at hospitals. Patients can schedule procedures at Tri State with more flexibility and can generally schedule them sooner than when scheduling similar procedures at hospitals, where surgeons must compete with longer, less predictable and emergency surgery procedures. Procedures performed at Tri State are cancelled or delayed less frequently, and Tri State offers shorter wait times and closer parking. Tri State is also associated with a group of board certified physicians, many of whom are nationally recognized. Because of all these benefits and for many patients the added benefit of being treated closer to home, many patients prefer to be treated at Tri State.

29.     There are many reasons – medical and otherwise – that patients prefer treatment at Tri State to treatment at a Methodist facility in particular. For example, as described below, at one point in time, no Methodist facility had an RF machine, a device required to perform radio frequency ablations ("RFA"). As a result, at least one physician would treat his patients who required RFA treatments at Tri State because Tri State had an RF machine. Additionally, scheduling procedures at Methodist facilities takes longer than at Tri State. Some patients who are in severe pain, for example, want to receive their treatments as quickly as possible. Physicians can perform those treatments the same day at Tri State, whereas performing those same treatments at a Methodist facility can require a physician to wait until his or her block time at that facility, which can take up to a week and stands a greater risk of being cancelled.

30.     As a result of these and other factors, Tri State and the Physician Plaintiffs provide an important alternative for their patients.

31.     Tri State does not have a participating provider agreement with Cigna, and is thus considered by Cigna to be an out-of-network provider vis-à-vis Cigna's members. However, many of Cigna's members pay higher insurance premiums specifically so that they may receive services at out-of-network providers like Tri State.

### *Tri State's Billing Procedures*

32.     Tri State discloses to its Cigna-insured patients that Cigna considers Tri State an out-of-network provider.

33.     Prior to receiving care, Tri State's Cigna-insured patients sign forms assigning to Tri State the patient's rights and benefits under their Cigna health insurance plan. The rights assigned include the right to appeal benefit denials and to sue. These assignments confer standing on Tri State to bring this action with regard to both ERISA and non-ERISA plans.

34.     Tri State has a policy of attempting to match its patients' in-network cost contribution requirements (i.e., the patients' in-network costs for co-payments, deductibles and co-insurance), so that the patient's initial out-of-pocket cost is the same as if he or she was receiving services at an in-network surgical center (the "price-matching policy").

35.     Tri State's price-matching policy, variations of which are commonly practiced by out-of-network healthcare providers across the United States, makes medical care affordable for its patients and enhances its patients' choice of medical provider.

36.     Pursuant to the assignment of benefits from its Cigna-insured patients, Tri State timely submits claims to Cigna for the normal and reasonable cost of the medical services provided to Cigna's insureds.

23

37.     In the claims it submits to Cigna, Tri State discloses to Cigna that Tri State has reduced its patients' cost-sharing responsibilities (for deductibles and co-payments) to match the patients' in-network rates.

38.     Tri State's Cigna-insured patients remain responsible for the full amount of Tri State's charges if Cigna does not pay their claims. Prior to providing care, Tri State requires its patients to sign forms acknowledging those responsibilities. Tri State has not waived and does not waive its patients' responsibility to pay for the treatment they have received.

### *Cigna and Health Choice's Tortious Interference and Conspiracy*

39.     As noted above, Health Choice has entered into exclusive contracts with health insurers, including Cigna, pursuant to which physicians, such as the Physician Plaintiffs, who want to join Cigna's provider network to serve their Cigna patients must do so through Health Choice.

40.     Under the agreement between Health Choice and Cigna, Health Choice and Cigna mutually decide which Health Choice providers should be included in Cigna's provider network. That is, in the service area as defined in their agreement, Cigna has agreed with Health Choice to only contract with those providers who Health Choice has approved and who have contracted with Health Choice or Health Choice's joint venture partner, MetroCare. This arrangement gives Health Choice and, by virtue of its control over Health Choice, Methodist, great power in selecting which providers will be part of Cigna's networks.

41.     On information and belief, the service area covered by the Health Choice-Cigna contract includes specific counties in Tennessee and Mississippi, but does not include any counties in Arkansas. However, on information and belief, Cigna and Health Choice operate as if

Arkansas, and specifically Crittenden County, is part of that service area. That Cigna and Health Choice contracted with Dr. Hood in the first place evidences this.

42.     Prior to the wrongful activities complained of herein, the Physician Plaintiffs participated in Cigna's network through Health Choice.

43.     At a board meeting of the Methodist Germantown Surgery Center held in the third quarter of 2012, before Tri State commenced operations, the Board Chair raised the topic of Tri State. Health Choice CEO Mitch Graves stated that Tri State would never succeed, and that all of Tri State's investors would "lose their necks." Mr. Graves further recommended that all parties present should encourage others to boycott investments in Tri State.

44.     At or about that same time, Mitch Graves emailed Dr. Crosby and advised him they needed to speak about Dr. Crosby's referral of patients to Tri State.

45.     By identical letters dated June 27, 2013, Cigna notified the Physician Plaintiffs, as well as other physicians who treated patients at Tri State, that they had "been engaging in a pattern and practice of consistent and repeated referrals of Cigna patients to Tri-State Advanced Surgery Center, which is a non-network facility that does not participate with Cigna." The letter demanded that they attest that they would "refer Cigna patients to in-network facilities" as allegedly required by the participating provider agreement. Even though these physicians did not have a copy of the agreement, the contents of which they were supposed to attest to, Cigna gave them only 18 days to respond. Otherwise, the letters continued, "Cigna will have to evaluate whether your continued participation with Cigna is in our mutual benefit."

46.     The identical June 27, 2013 letters were nonsensical with respect to the Physician Plaintiffs and other physicians. For example, all of the letters required the physicians to attest to

25

the "terms of the Alan Kraus, MD Cigna agreement," even though neither of the Physician Plaintiffs practiced medicine with Dr. Kraus.

47.     The June 27, 2013 letters were also inaccurate insofar as they asserted that "Cigna's network includes a number of licensed, credentialed and conveniently located outpatient surgery centers in the greater Memphis area." On information and belief, Cigna's network did not include a "number" of outpatient surgery centers in Crittenden County, Arkansas as of the date of the letter. On information and belief, Cigna does not currently have any in-network ambulatory surgery centers in Crittenden County, Arkansas offering the orthopaedic, sports, spine, otolaryngolic or interventional pain services offered at Tri State. Rather, the only in-network facility offering outpatient surgery in Crittenden County is an ophthalmologist's office.

48.     The June 27, 2013 letter was also inaccurate with respect to Dr. Hood in claiming that he had engaged in "a pattern and practice of consistent and repeated referrals of Cigna patients to Tri State" because, as of the date of the letter, he had only referred two patients to Tri State, both of whom had out-of-network benefits. One of those patients required urgent treatment and Dr. Hood was able to schedule her surgery sooner than at the (now closed) hospital. From June 27, 2013 to date, Dr. Hood has referred only a small number of Cigna patients to Tri State, all of whom had out-of-network benefits and all of whom were informed that Tri State was an out-of-network facility.

49.     Because Health Choice's contract with Cigna is an exclusive contract, a mandate that physicians refer all patients regardless of their medical condition or personal choice to in-network facilities would require the referral of the vast majority of patients to Methodist facilities, even though the Health Choice-Cigna contract does not encompass Arkansas and

Methodist does not have any facilities in Arkansas. This is a particular problem for Cigna's patients in Crittenden County, Arkansas because Cigna does not have any in-network ambulatory surgery centers in Crittenden County offering the services offered at Tri State. For Crittenden County residents, a mandate that physicians refer all patients regardless of their medical condition or personal choice to in-network facilities requires their referral out of state.

50.     On information and belief, Health Choice's contract with Cigna does not strictly require referrals of all patients to in-network facilities.

51.     On information and belief, all of the Cigna patients referred by the Plaintiff Physicians to Tri State had out-of-network benefits and were informed that Tri State was an out-of-network provider.

52.     On information and belief, Health Choice and Cigna agreed that Cigna would send the letters threatening termination to physicians treating patients at Tri State in order to coerce these physicians into directing the vast majority of these patients to Methodist-affiliated facilities and away from Tri State.

53.     Although Crittenden Regional Hospital had a direct contract with Cigna, the hospital closed and declared bankruptcy in the fall of 2014. Thus, there are no in-network options for Cigna patients in Crittenden County, Arkansas. Tri State offers Cigna's Arkansas patients the opportunity to be treated closer to home and to take advantage of all the benefits ASCs offer.

54.     By demanding that in-network physicians refer patients solely to in-network facilities – including patients with out-of-network benefits – Cigna and Health Choice were effectively precluding patients from choosing treatment at Tri State. In a May 1, 2014 letter to the Arkansas Insurance Department regarding Dr. Hood's Any Willing Provider Complaint,

Cigna stated that it had "reminded Dr. Hood of his contractual obligation to refer Cigna customers to participating providers except in the case of emergency or otherwise required by law." This has also had the effect of making out-of-network benefits illusory and forcing patients to travel out of state for their medically necessary surgical procedures.

55.     Nevertheless, most of the physicians receiving the June 27, 2013 letters felt forced to sign the attestation and to stop referring patients to Tri State due to Health Choice's market power and the significant number of Cigna patients in their practices. The Physician Plaintiffs refused to sign the attestation.

56.     Pursuant to Cigna's agreement with Health Choice, by letter dated October 2, 2013, Cigna gave formal notification to Health Choice's Chief Executive Officer, Mitch Graves, that it was terminating the Physician Plaintiffs and other physicians from its network effective December 1, 2013. Although the letter stated that Cigna was invoking the without-cause termination provision of the contract between Health Choice and Cigna, which permitted termination on 60 days' notice, the Physician Plaintiffs were, on information and belief, terminated for refusing to sign the attestation and for refusing to stop using their medical judgment to refer patients to Tri State. Neither Cigna nor Health Choice provided formal notice of the terminations to the Physician Plaintiffs.

57.     That the actual reason Drs. Crosby and Hood were terminated from Cigna's network was their referral of patients to Tri State was confirmed by a January 13, 2014 letter from Lynn M. Field, Methodist's Vice President of Legal Services & Compliance, to undersigned counsel, which stated: "We certainly want Drs. Crosby and Hood reinstated, but exactly what should Health Choice be appealing on behalf of your clients? I am not certain why you find the attestation letter sent by Cigna to your clients so objectionable. Many managed care

agreements require referral to participating providers ... ." Although the letter was sent on Methodist letterhead, Ms. Field later confirmed that she is also legal counsel to Health Choice, but not MetroCare.

58.     That the actual reason for Dr. Hood's termination was his referral of patients to Tri State was confirmed by Cigna's May 1, 2014 letter to the Arkansas Insurance Department which stated, "Dr. Hood refused to sign the attestation. Consequently, on October 2, 2013, Cigna notified Health Choice of its decision to terminate Dr. Hood from the network effective December 1, 2013."

59.     Both Physician Plaintiffs learned from their patients that they had been terminated from Cigna's provider network.  Neither Physician Plaintiff received a termination letter from Cigna or Health Choice. Rather, the Physician Plaintiffs' patients started receiving letters from Cigna, which stated that the Physician Plaintiffs would no longer be part of Cigna's provider network effective December 1, 2013.

60.     Between October 12, 2013 and October 25, 2013, at least fifteen patients contacted Dr. Hood to express their shock and frustration that he would no longer be part of Cigna's provider networks. Dr. Crosby received a similar number of complaints regarding his termination.

61.     To date, neither Dr. Hood nor Dr. Crosby has received official notification from Cigna regarding the termination decisions.  Rather, in the days prior to learning from patients they were no longer a part of Cigna's provider network, both Physician Plaintiffs received letters from Cigna advising they were considered "preferred" providers in Cigna's network.

62.     On November 4, 2013, a Cigna representative called Dr. Hood's office manager and informed her that Health Choice had sent a letter to Cigna requesting that Cigna terminate

Dr. Hood, and that Cigna had agreed to do so. Thus, Cigna entered into an agreement with Health Choice to terminate Dr. Hood from its network.

63.     Thereafter Dr. Hood contacted Cigna's Arkansas representative in an effort to contract with Cigna directly. Although he was originally informed that he could contract directly with Cigna, he was later advised that he could only contract with Cigna through Health Choice.

64.     Dr. Crosby was likewise advised that Health Choice and Cigna had agreed to terminate him from Cigna's provider network unless he attested that he would only refer patients to in-network facilities.

65.     On October 9, 2013, Health Choice's Mitch Graves sent Dr. Crosby an e-mail asking to meet with Dr. Crosby to discuss his "out of network cases being done at the Marion surgery center," an obvious reference to Tri State.

66.     Drs. Crosby and Hood were not the only physicians who were sent the June 27, 2013 letter from Cigna demanding that they sign the misleading attestation or face termination from the network. One such physician, who did not actually receive the letter since it was sent to an old address, was informed by a Cigna representative on October 21, 2013, and by another Cigna representative approximately a week later, that Health Choice had requested Cigna to terminate him from its provider panel and that Cigna had agreed to do so if he did not sign the attestation. In an October 22, 2013 conference call with Chuck Utterback of Cigna and Mitch Graves of Health Choice, the physician told them that he referred patients to Tri State for medical reasons. Specifically, he referred patients requiring RFAs to Tri State because Tri State had an RF machine and Methodist facilities did not. He also referred patients with severe pain needing immediate nerve blocks to Tri State because they could be treated sooner at Tri State than at Methodist. Despite these valid medical reasons for patients to prefer treatment at Tri

State, and despite the fact that all of these patients had paid premiums for out-of-network benefits, the physician was told he had to refer patients to Methodist. In addition, Cigna's representative Utterback told this physician if he signed the attestation, Cigna would stop the termination process. Because he treats a significant number of Cigna patients and could not afford to lose the revenue from treating these patients, the physician reluctantly caved into the pressure, signed the misleading attestation, and stopped referring Cigna patients to Tri State. The agreement between Cigna and Health Choice had the desired effect of driving all of this physician's business away from Tri State and into the arms of its competitor, Methodist.

67.    In July 2013, the office manager of another physician whom Health Choice and Cigna agreed should be terminated absent a signed attestation and who had received the June 27, 2013 letter, received a call from a Cigna representative. The Cigna representative stated that if the physician did not stop referring patients to Tri State, neither the physician nor his partners would be permitted to perform a new office procedure, balloon sinuplasty, which is performed on sinus patients, even though Cigna had permitted other physicians to perform the procedure in their offices. On information and belief, Health Choice and Cigna agreed to make such calls in furtherance of an anti-competitive conspiracy to dry up referrals to Tri State and to stymie any competition from the center. The physician reluctantly signed the attestation. He was not terminated from Cigna's network. The agreement between Cigna and Health Choice to terminate this physician unless he signed the attestation, however, had the desired effect of driving all of this physician's business away from Tri State and into the arms of its competitor, Methodist.

68.    That same physician also received letters from Cigna in 2013 demanding that he disclose his financial interest in Tri State to patients. Although he had financial interests in other ASCs, this was the first time that Cigna demanded such disclosures. On information and belief,

Cigna sent this letter as part of its agreement with Health Choice to dry up patient referrals to Tri State.

69.     Health Choice has also attempted to reach agreements with other health insurers to threaten termination of physicians referring patients to Tri State in order to dry up referrals and stymie competition from the facility, ultimately eliminating it as a competitor to Methodist. For example, based on an agreement that Health Choice reached with Aetna, Aetna sent letters to several Tri State physician-investors erroneously stating that "our research shows that on several occasions, your Aetna patients received services at a nonparticipating facility, Tri State Advanced Surgery Center." The letter reminded the physicians that "your Physician Agreement requires you to use contracted, participating network providers." These letters were sent, however, before Tri State had ever opened its doors for operation. Had Aetna done an internal review before sending the letters, it would have shown no claims submitted for medical services performed at Tri State. Upon information and belief, and as would only later become apparent, Aetna sent these letters at the direction of and based on an agreement with Health Choice and/or Methodist.

70.     After the mistake was brought to its attention, Aetna sent follow-up letters dated the same date which stated, "You recently received a letter from Aetna implying that you were referring Aetna members to a non-participating Ambulatory Surgery Center – Tri State Advanced Surgery Center. After further research, it was determined that in fact you were not one of the providers identified."

71.     On information and belief, Health Choice also agreed with Blue Cross Blue Shield on measures to stop referrals of patients to Tri State. Tri State has a network participation agreement with Blue Cross Blue Shield of Arkansas. At the time of Health Choice's wrongful

agreement with Blue Cross Blue Shield, patients with Blue Cross Blue Shield health plans from other states could be treated at Tri State under the Blue Card program, which is a nationwide program specifically developed to allow patients travelling in other states and patients working for out-of-state companies to be treated anywhere they seek medical treatment. Nevertheless, Blue Cross Blue Shield of Tennessee erroneously advised physicians that they could not refer patients to Tri State because it was not contracted with Blue Cross Blue Shield of Tennessee. On information and belief, Health Choice and Blue Cross Blue Shield of Tennessee agreed to provide physicians with this erroneous information in a further effort to dry up referrals to Tri State and to stymie competition from the facility.

72.     Health Choice's actions – including its agreements with Cigna, Aetna, and Blue Cross and Blue Shield of Tennessee – have been directed at drying up patient referrals to Tri State since Tri State's inception.

73.     As a further example of Health Choice's motives and actions designed to drive Tri State out of business, one of Tri State's physician-investors was informed the afternoon of a Health Choice board meeting that Tri State was being considered for membership at that evening's board meeting. This surprised the physician-investor because Tri State had not yet applied for membership in Health Choice. He attempted to contact Health Choice board members before the vote but was unsuccessful due to the limited time before the meeting. At the board meeting, despite not having an application before it, Health Choice denied Tri State membership, with all the Methodist appointed board members voting against Tri State and all but one of the physician board members either voting in favor of Tri State or abstaining from the vote.

74.     There is no legal justification for Health Choice and Cigna's conduct and their agreement to conspire to circumvent and violate Arkansas' Patient Protection Act.  Further, the means Health Choice and Cigna have used to advance their goal of driving Tri State out of business, including drying up referrals to Tri State and preventing Tri State from joining insurer networks, are wrongful and violate the law.

75.     Consumer welfare and competition have been harmed by Health Choice and Cigna's anti-competitive conspiracy. Consumer choices have been limited by Health Choice's and Cigna's actions, which have forced physicians to stop referring patients to Tri State. Consumers and competition have also been harmed by Health Choice's and Cigna's actions, which have precluded patients from using their out-of-network benefits for which those patients have paid additional insurance premiums to receive treatment at the facility of their choice.

76.     Further, terminating the Physician Plaintiffs, and threatening others with termination, from Cigna's network has limited the treatment options available to Cigna's patients, particularly those patients located in close proximity to Tri State.

77.     Specifically, terminating the Physician Plaintiffs from Cigna's network has greatly reduced primary care and other physicians' referrals of patients to the Physician Plaintiffs because at least some primary care physicians stopped referring all patients to the Physician Plaintiffs. This is because primary care physicians do not know which surgeons are in-network with Cigna or any other insurer and just keep one referral list. Therefore, when primary care physicians learned that they could no longer refer Cigna patients to the Physician Plaintiffs, they took the Physician Plaintiffs off their referral lists and stopped referring all patients to the Physician Plaintiffs, regardless of the patients' insurance coverage.

78.     Tri State and Physician Plaintiffs have been damaged as a direct and intended outcome of the unlawful agreements between Health Choice and Cigna.

### Health Choice's Deceptive Trade Practices

79.     Health Choice represents that it protects physicians and their practices and that it works for providers.

80.     Specifically, Health Choice's website represents to physicians that it acts in the interests of physicians when contracting with managed care organizations: "Health Choice recognizes that [physicians] want to focus on [their] patients rather than analyze what might be costly and burdensome administrative contract language. . . . Our focus on understanding process helps us **to protect network physicians and their practices**."[2]

81.     Elsewhere on its website, in touting its provider advocacy services, Health Choice represents that "[t]he Provider Advocacy department at HealthChoice was developed to provide our physician network a resource of service and assistance for all things practice management."[3]

82.     When this lawsuit was originally filed in 2014, the website specifically touted its service to its member physicians as an advocate, stating: "The provider Advocacy department is your liaison for contracting."[4] While Health Choice has since removed this promise from its website, at the time of the activities described herein, Health Choice represented itself as an advocate for its physician members in contracting with providers, such as Cigna.

83.     As previously alleged, Health Choice has not worked on behalf of Drs. Crosby or Hood, and has not protected theses physicians and their patients. Rather, in reaching an

---

[2] MYHEALTHCHOICE.COM, *Managed Care Contracting*, https://www.myhealthchoice.com/providers/healthchoice-services/managed-care-contracting (last visited October 24, 2015) (emphasis added).

[3] MYHEALTHCHOICE.COM, *Provider Advocacy*, https://www.myhealthchoice.com/practices/provider-advocacy (last visited October 24, 2015).

[4] *See* Complaint, Docket Entry 1, ¶ 69 (citing http://www.myhealthchoice.com (follow "Practice Community"; then follow "Health Choice Services"; then follow "Provider Advocacy") (last visited April 2, 2014)).

35

agreement with Cigna to terminate these physicians unless they signed a misleading attestation requiring referral to in-network facilities, which necessarily meant to Methodist facilities, Health Choice was representing and protecting Methodist's interests rather than the interests of the Plaintiff Physicians or its other physician members.

84.     That Health Choice was representing Methodist's interests rather than those of the physicians was confirmed by Mitch Graves' conference calls and efforts to meet with the physicians being terminated regarding their referrals to Tri State. Instead of acting as an advocate for the physicians, Mr. Graves acted on behalf of Methodist to attempt to coerce the physicians to sign the misleading attestation and to stop referring patients to Tri State.

85.     That Health Choice was representing Methodist's interests rather than those of the physicians was further confirmed by the letter from Methodist's counsel on Methodist letterhead asking "what exactly should Health Choice be appealing on behalf of your clients? I am not certain why you find the attestation letter sent by Cigna to your clients so objectionable."

86.     Consequently, Health Choice's representations on its website that it advocates on behalf of physicians when it clearly did not with respect to Drs. Crosby and Hood, or other physicians, were unfair and deceptive in violation of Tenn. Code Ann. § 47-18-104(5), which prohibits "representing that goods or services have . . . characteristics, . . . uses, benefits or qualities that they do not have."

### *Cigna's Wrongful Denial and/or Reduction of Benefits*

87.     Cigna insures and administers health benefit plans that differentiate between coverage for medical treatment provided by (a) in-network providers who have negotiated discounted rates with Cigna and (b) out-of-network providers.

88.     Tri State has not contracted with Cigna, so it is considered an out-of-network provider under Cigna's health benefit plans.

89.     Cigna charges its insureds higher premiums for plans with out-of-network benefits. Accordingly, health insurance plans that permit their participants and beneficiaries to seek medical services from out-of-network healthcare providers are more expensive than plans that limit coverage to care provided by in-network providers.

90.     The Cigna-insured and Cigna-administered plans at issue permit their participants and their beneficiaries to obtain healthcare from out-of-network or non-participating providers. They also provide for how and how much Cigna is required to pay for out-of-network services.

91.     At least as early as June 2014, Cigna has refused to pay and/or reduced claims for the medical services provided by Tri State to Cigna's insureds.

92.     Cigna's insureds have the right to obtain healthcare from out-of-network providers like Tri State.

93.     Tri State has rendered medically necessary services to Cigna's insureds.

94.     Cigna's refusal to pay is made under the guise of a single exclusion in each of the health benefit plans it administers. The exclusion provides that Cigna will not pay for "charges for which you [the insured] are not obligated to pay or for which you [the insured] are not billed or for which you [the insured] would not have been billed except that they were covered under this plan."

95.     Cigna erroneously asserts that, because of Tri State's price-matching policy, described in paragraph 34, the policy exclusion above eliminates or reduces Cigna's obligation to pay any amount for the medically necessary care provided by Tri State to Cigna's insureds.

96.     In refusing to pay its insureds' claims for payment for medically necessary services from Tri State, Cigna has misconstrued and/or misapplied the language in its benefit plans and ignored its duty of loyalty to its insureds.

97.     Cigna's misconstruction and/or misapplication of the exclusion in its plan documents renders illusory the out-of-network benefits for which its subscribers have paid additional premiums.

98.     Cigna's misconstruction and/or misapplication of its plans' language is specifically designed to (a) allow it to avoid its obligation to pay benefits, (b) discourage its plan participants and beneficiaries from using out-of-network services, and (c) coerce out-of-network providers into becoming in-network providers.

99.     By its misconstruction and/or misapplication of its plans' language, Cigna increases its profits through "shared savings" with its employer-customers. Upon information and belief, many of Cigna's plan sponsors compensate Cigna, in part, by allowing Cigna to share some of the plan's savings.

100.    Cigna's arbitrary determinations and wrongful denials of benefits increase healthcare costs to its plan participants and beneficiaries and reduce the healthcare providers available to them. Cigna's determinations and denials breach its duty to act "solely in the interest of its participants and beneficiaries" and "for the exclusive purpose of (i) providing benefits to its participants and their beneficiaries," without regard to its own financial interest. 29 U.S.C. § 1104(a)(1).

101.    Upon information and belief, Cigna does not require its in-network providers to submit proof of the patient's payment as a condition of Cigna's payment of claims, even though

the terms of the plans governing proof of loss make no distinction between in-network providers and out-of-network providers.

102. On behalf of its Cigna-insured patients, Tri State has timely filed administrative appeals with Cigna, explaining its price-matching policy and the fact that the patients remain responsible for the full cost of the services they have received. Relying on the exclusion quoted in Paragraph 94, above, Cigna has upheld its denials of the claims.

103. As part of the appeals on behalf of its Cigna-insured patients, Tri State has requested the documents on which Cigna relies for its denial of benefits, including the insurance plan documents. Cigna has not provided any such documents.

104. Although Tri State continues to appeal the denial of its claims, any claims for which Tri State has not entered into or completed the appeals process should be deemed exhausted for purposes of ERISA because such an appeal would be futile. Cigna continues to either refuse to pay any amount of Tri State's claims for services or to pay an amount substantially less than what it is obligated to pay to Tri State.

105. Tri State has lost substantial sums, the specific amount of which will be proven at trial, as a direct result of Cigna's misconstruction and/or misapplication of its plans' language, and the amount of damages continues to increase.

## COUNT I
### TORTIOUS INTERFERENCE
#### (On Behalf of Physician Plaintiffs Against Health Choice)

106. Tri State and Physician Plaintiffs repeat and reiterate each and every prior allegation as if fully set forth at length herein.

107. Physician Plaintiffs had a valid contractual relationship and business expectancy with Cigna to treat Cigna-insured patients.

108.    Health Choice was aware of the contractual relationship between Physician Plaintiffs and Cigna and Physician Plaintiffs' business expectancy with Cigna.

109.    Health Choice intentionally and improperly induced Cigna to terminate and disrupt its contractual and business relationship with Physician Plaintiffs. Health Choice demanded Cigna terminate Physician Plaintiffs from its network for the sole reason that Physician Plaintiffs were competing with Health Choice and Health Choice's partner Methodist by treating their patients at Tri State.

110.    As demonstrated by the statements of Health Choice's CEO Mitch Graves at the 2012 third quarter board meeting, Health Choice's motivation for its tortious conduct was to eliminate competition from Tri State, to the benefit of Health Choice and Methodist and to the detriment of Physician Plaintiffs and their patients.

111.    Further, the statements made by Mitch Graves and other members of Health Choice's board indicate that Health Choice would not allow any provider in the vicinity of Memphis, including in Crittenden County, to utilize healthcare facilities that were not controlled by Methodist in clear violation of Arkansas' Patient Protection Act.

112.    Health Choice's actions further prevented physicians from contracting directly with Cigna to participate in its network.

113.    As explained above, when Dr. Hood, who practices in Arkansas, attempted to contract directly with Cigna, he was told he could only contract with Cigna through Health Choice, even though Health Choice's service area does not include Arkansas. There is no contractual reason for Cigna to require Arkansas providers to be members of Health Choice in order to join a Cigna provider network.

114.    Health Choice made these decisions with malice and with the intent to force the Physician Plaintiffs to refer all patients to Methodist facilities in an effort to stymie competition from Tri State.

115.    Health Choice's wrongful actions resulted in the termination of Physician Plaintiffs from Cigna's network.

116.    By forcing Cigna to terminate and disrupt its contractual and business relationship with Physician Plaintiffs, Health Choice interfered with treatment options of Physician Plaintiffs' patients, to the detriment of those patients.

117.    As a direct result of Health Choice's actions, the Physician Plaintiffs have been terminated from Cigna's provider network and have lost patients, revenue, and good will.

118.    Physician Plaintiffs seek compensatory and punitive damages from Health Choice for its tortious interference.

## COUNT II
## TORTIOUS INTERFERENCE
### *(On Behalf of Tri State and Physician Plaintiffs Against Cigna and Health Choice)*

119.    Tri State and Physician Plaintiffs repeat and reiterate each and every prior allegation as if fully set forth at length herein.

120.    Tri State and Physician Plaintiffs had valid contractual relationships and business expectancies with their patients.   Tri State and Physician Plaintiffs also had valid business expectancies with physicians who referred patients for treatment.

121.    Cigna and Health Choice were aware of the contractual relationships and business expectancies between Tri State and Physician Plaintiffs, on the one hand, and their patients and referring physicians on the other.

122.    Cigna and Health Choice intentionally and improperly induced the termination and disruption of Tri State and Physician Plaintiffs' contractual relationships and business expectancies with their patients and referring physicians.

123.    Cigna and Health Choice desired to drive Tri State out of business, thus minimizing competition and limiting treatment options of patients in the Memphis area and, specifically, Crittenden County.

124.    Cigna and Health Choice threatened physicians in the Memphis area and Arkansas to not refer patients to Tri State even when the physicians had sound medical reasons for the referrals.   Thus, Cigna and Health Choice put their desire to harm Tri State and the Physician Plaintiffs above the medical needs of patients.

125.    Cigna and Health Choice provided inaccurate and misleading information to patients to discourage the patients from receiving treatment from Tri State and Physician Plaintiffs.

126.    Cigna and Health Choice coerced other health insurers to send inaccurate and misleading information to referring physicians and patients to discourage treatment from Tri State and Physician Plaintiffs.

127.    In addition, Tri State had a legitimate interest and expectancy to enter into operating agreements with physicians on Cigna's panel. Health Choice and Cigna, however, conspired and tortiously interfered with Tri State's business expectancy by intimidating physicians to prevent them from using Tri State, even though Tri State operated in Crittenden County, Arkansas, where there were no Health Choice providers to compete with.

128.    As a direct result of Cigna and Health Choice's actions, Tri State and Physician Plaintiffs have lost patients, revenue, and good will.

129.   Tri State and Physician Plaintiffs seek compensatory and punitive damages from Cigna and Health Choice for their tortious interference.

## COUNT III
## DECEPTIVE TRADE PRACTICES IN VIOLATION OF TENN. CODE ANN. § 47-18-104
### *(On Behalf of Physician Plaintiffs Against Health Choice)*

130.   Tri State and Physician Plaintiffs repeat and reiterate each and every prior allegation as if fully set forth at length herein.

131.   Health Choice advertises itself as a representative and advocate of providers in Tennessee.

132.   Physician Plaintiffs joined MetroCare, and through it, Health Choice, in order to receive the benefits of having Health Choice serve as their advocate in negotiating with health plans, including Cigna. In light of Health Choice's actions, which have resulted in the termination of Physician Plaintiffs from Cigna's network, Health Choice's representations that it advocates on behalf of physicians with health plans is clearly false.

133.   Health Choice's actions are in violation of Tenn. Code Ann. § 47-18-104(b)(5).

134.   Physician Plaintiffs seek compensatory and treble damages from Health Choice for its tortious interference.

## COUNT IV
## CONSPIRACY
### *(On Behalf of Tri State Against Health Choice and Cigna)*

135.   Tri State and Physician Plaintiffs repeat and reiterate each and every prior allegation as if fully set forth at length herein.

136.   Health Choice and Cigna wrongfully conspired to drive Tri State out of business by threatening physicians who made referrals to Tri State, by wrongfully denying patients and prospective patients of Cigna benefits to which they were entitled, by providing patients inaccurate and misleading information to discourage them from treating with physicians who

made referrals to Tri State, and by violating and/or circumventing Arkansas' Patient Protection Act.

137.    Health Choice and Cigna conspired together to achieve the unlawful objective of driving Tri State out of business and did so through improper, illegal, and tortious means. This ongoing conspiracy against Tri State was and is designed to prevent Tri State and the physicians who utilize Tri State from contracting with insurers in Arkansas and the Memphis metropolitan area and to prevent the referral of patients to Tri State in order to direct more referrals to Methodist.   Health Choice and Cigna agreed that Cigna would send letters threatening termination to physicians treating patients at Tri State in order to coerce these physicians into directing the vast majority of these patients to Methodist-affiliated facilities and away from Tri State.

138.    The conspiracy between Health Choice and Cigna is ongoing and has caused and continues to cause harm to Tri State and Tri State's prospective patients.

**COUNT V**
**CONSPIRACY**
*(On Behalf of Physician Plaintiffs against Health Choice and Cigna)*

139.    Tri State and Physician Plaintiffs repeat and reiterate each and every prior allegation as if fully set forth at length herein.

140.    The illegal conspiracy consisted of Health Choice and Cigna agreeing that Cigna should terminate the Physician Plaintiffs from Cigna's provider network, and that Cigna should threaten to terminate other physicians unless they agreed to stop referring patients to Tri State. On information and belief, Health Choice made this agreement on behalf of its joint venture partner Methodist and in order to attempt to eliminate competition to Methodist, while Cigna made this agreement in an attempt to obtain better terms in its contract with Health Choice and to keep Methodist in its provider network.

44

141.    Health Choice and Cigna conspired together to achieve the unlawful objective of removing the Physician Plaintiffs from Cigna's approved panel after the Physician Plaintiffs refused to sign an attestation that they would only refer their patients to Methodist facilities. Health Choice and Cigna acted tortiously and in concert with one another for purposes of driving Tri State out of business.

142.    The conspiracy between Health Choice and Cigna is ongoing and has caused and continues to cause harm to Physician Plaintiffs, their patients and prospective patients.

**COUNT VI**
**VIOLATION OF ARKANSAS PATIENT PROTECTION ACT**
*(On Behalf of Physician Plaintiffs and Tri State against Cigna)*

143.    Tri State and Physician Plaintiffs repeat and reiterate each and every prior allegation as if fully set forth at length herein.

144.    The Physician Plaintiffs and Tri State have been wrongfully excluded from Cigna's provider network in violation of the Arkansas' Patient Protection Act which forbids a healthcare insurer from, among other things, prohibiting or limiting a healthcare provider that is qualified and willing to accept the health benefit plan's operating terms and conditions, schedule of fees, covered expenses, and utilization regulations and quality standards, from the opportunity to participate in that health benefit plan. *See* Ark. Code Ann. § 23-99-204(a)(3)

145.    Cigna (in collusion with Health Choice) has taken the position that the Physician Plaintiffs are eligible to contract with Cigna only through Health Choice and only if attestations are executed by the Physician Plaintiffs affirming they will only make referrals to Methodist facilities even though there is no Methodist facility in Crittenden County, Arkansas .

146.    Physician Plaintiffs and Tri State seek to enjoin Cigna from preventing the Physician Plaintiffs and Tri State from becoming Cigna providers as they are willing to accept Cigna's operating terms and conditions except for the terms and conditions which are being

wrongfully dictated by Health Choice and which stand as the only obstacle to the Physician Plaintiffs and Tri State becoming members of Cigna's network.

## COUNT VII
## ERISA – CLAIM FOR BENEFITS AND CLARIFICATION OF RIGHTS PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)
### *(On Behalf of Tri State Against Cigna)*

147.    Tri State and Physician Plaintiffs repeat and reiterate each and every prior allegation as if fully set forth at length herein.

148.    When an ERISA-governed benefit plan is insured by or administered by Cigna, such as those at issue here, Cigna must pay benefits to the plan's participants and beneficiaries or their assignees pursuant to the terms and methodology of the plan.

149.    The vast majority of the plans under which Tri State has sought benefits are governed by ERISA.

150.    As the assignee of its patients' benefits under the patients' Cigna-insured or Cigna-administered health benefit plans, Tri State is entitled to enforce the terms of those plans pursuant to 29 U.S.C. § 1132(a)(1)(B).

151.    Cigna has breached the terms of its plans by arbitrarily denying or reducing payments due to Tri State based on Cigna's misconstruction and/or misapplication of its plans' exclusion of "charges for which you [the insured] are not obligated to pay or for which you [the insured] are not billed or for which you [the insured] would not have been billed except that they were covered under this plan."

152.    For each claim that was denied or reduced by Cigna pursuant to that exclusion, Tri State seeks all unpaid benefits. Tri State also seeks prejudgment interest (calculated from the date each claim was initially submitted), costs, expenses, attorneys' fees, and any other relief this Court deems appropriate.

153.     As the assignee of its patients' rights under its patients' Cigna-insured or Cigna-administered health benefit plans, Tri State also seeks a declaration from this Court clarifying its patients' rights to future benefits under the terms of the plans when Tri State matches its patients' in-network cost contribution requirements.

**COUNT VIII**
**ERISA – BREACH OF FIDUCIARY DUTY PURSUANT TO**
**29 U.S.C. § 1132(a)(3)**
***(On Behalf of Tri State Against Cigna)***

154.     Tri State and Physician Plaintiffs repeat and reiterate each and every prior allegation as if fully set forth at length herein.

155.     As an insurer and administrator of health benefit plans governed by ERISA, Cigna is obligated to comply with ERISA's fiduciary duties.

156.     Accordingly, Cigna must discharge its duties with respect to the plans at issue "solely in the interest of the participants and beneficiaries, and – (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." 29 U.S.C § 1104(a)(1).

157.     Cigna violated this duty by reducing or denying benefits payable to Tri State for care it provided to Cigna's plan participants and beneficiaries based on its misconstruction and/or misapplication of the exclusion for "charges for which you [the insured] are not obligated to pay or for which you [the insured] are not billed or for which you [the insured] would not have been billed except that they were covered under this plan."

158.     Cigna reduced or denied benefits payable to Tri State, as described above, to (a) allow it to avoid its obligation to pay benefits, (b) discourage Cigna's insureds from using out-of-network services, and (c) coerce out-of-network providers into becoming in-network providers.

159.    Upon information and belief, when Cigna serves as a plan's administrator but not also as the plan's insurer, Cigna is compensated by the plan's sponsors based on "savings" that are calculated, in part, according to claims for medical services not paid to medical providers like Tri State. As a result, by reducing or denying payment to Tri State, Cigna increases its compensation from its plan sponsors at the expense of its participants and beneficiaries.

160.    When Cigna serves as both a plan's insurer and its administrator, its profits are directly correlated with the amounts that it is able to avoid paying on claims by its participants and beneficiaries.

161.    As a direct and proximate cause of Cigna's breach of its fiduciary duties, its plan participants and beneficiaries are responsible to pay the amounts that Cigna has wrongfully refused to pay for the care they received from Tri State and will be subject to Tri State's efforts to collect for the cost of that care over and above the deductible and co-payment they have already made, despite having paid additional premiums to Cigna for the right to receive care from out-of-network providers.

162.    As the assignee of its patients' rights under ERISA, Tri State is entitled to, and seeks, an award in an amount equal to value of the services rendered to Cigna's insureds, but wrongfully withheld, as well as injunctive and declaratory relief.

## COUNT IX
## ERISA – FAILURE TO PROVIDE INFORMATION IN VIOLATION OF
## 28 U.S.C. § 1132(c)(1)(B)
### *(On Behalf of Tri State Against Cigna)*

163.    Tri State and Physician Plaintiffs repeat and reiterate each and every prior allegation as if fully set forth at length herein.

164.    As the administrator of the health plans at issue, Cigna is required to maintain and provide plan participants and beneficiaries, or their assignees, certain information upon request.

165.    Failing to provide such information renders Cigna civilly liable to its plan participants and beneficiaries, or their assignees.

166.    On behalf of their Cigna-insured patients, Tri State has requested documents that Cigna claims provide the basis for its refusal to reimburse Tri State for services Tri State has rendered.

167.    Cigna has failed to provide the requested information to Tri State.

168.    As the assignee of its Cigna-insured patients, Tri State is entitled to, and seeks, the penalty provided for in 29 U.S.C. § 1132(c)(1)(B), as well as any other relief that this Court deems proper.

**COUNT X**
**BREACH OF CONTRACT**
*(On Behalf of Tri State Against Cigna)*

169.    Tri State and Physician Plaintiffs repeat and reiterate each and every prior allegation as if fully set forth at length herein.

170.    Tri State treats patients who are insured by Cigna health benefit plans that are not governed by ERISA. As the assignee of those patients, Tri State brings this claim for breach of contract.

171.    Cigna agrees to insure individuals under non-ERISA plans in exchange for its receipt of premiums.

172.    Upon information and belief, the terms of those agreements are memorialized in multiple places including the relevant plan documents.

173.    Upon information and belief, the agreements expressly provide Cigna's insureds with the right to receive treatment from out-of-network providers such as Tri State.

174.    Upon information and belief, for out-of-network care, the agreements further provide that Cigna will pay a specific percentage of the lesser of (a) the actual billed charge, or (b) the usual and customary charge for a procedure based on another comparable benchmark.

175.    Cigna has breached this agreement by denying or drastically reducing its payments for its insureds' claims for out-of-network services provided by Tri State.

176.    Tri State has been damaged by Cigna's breach of contract and seeks damages in an amount to be proven later. Tri State also seeks interest, costs, expenses, attorneys' fees, and any other relief that this Court deems proper.

## COUNT XI
## UNJUST ENRICHMENT
### *(On Behalf of Tri State Against Cigna)*

177.    Tri State and Physician Plaintiffs repeat and reiterate each and every prior allegation as if fully set forth at length herein.

178.    Cigna has repeatedly reduced or denied payment to Tri State for care provided to Cigna's insureds based on its misconstruction and/or misapplication of certain language in its plan documents. Cigna has done so even though its insureds have paid additional premiums to Cigna for the right to receive out-of-network care if they so desire.

179.    As a result of Cigna's wrongful reductions in, or denials of, payments to Tri State, Tri State has provided necessary medical care to Cigna's insureds at no cost to Cigna.

180.    Upon information and belief, by reducing or denying payment to Tri State, Cigna has been able to increase its own compensation in the form of plan savings by reducing or denying its payments to Tri State.

181.    It would be inequitable for Cigna to accept and retain those savings.

182.    Accordingly, Tri State seeks an order from this Court awarding it the value of all services for which Cigna has reduced or denied payment, plus interest, costs, and any and all other relief to which this Court finds it entitled.

**COUNT XII**
**PROMISSORY ESTOPPEL**
*(On Behalf of Tri State Against Cigna)*

183.    Tri State and Physician Plaintiffs repeat and reiterate each and every prior allegation as if fully set forth at length herein.

184.    Prior to providing care to many of Cigna's insureds, Tri State sought and obtained confirmation from Cigna that the patient's health benefit plan permitted the patient to receive that care from Tri State, despite it being an out-of-network provider.

185.    In each such case, Cigna specifically represented (either orally, in writing, or both) that the care would be covered by the patient's Cigna-insured or Cigna-administered health benefit plan.

186.    Cigna reasonably expected that its confirmation of coverage would cause Tri State to render care to Cigna's insured, and Tri State reasonably relied on that confirmation.

187.    Based on Cigna's representations, Tri State provided medically necessary care to those Cigna-insured patients.

188.    After Tri State submitted claims for the services it provided, Cigna denied and/or significantly reduced payment for numerous services rendered by Tri State on the ground that the patient's Cigna- insured or Cigna-administered health benefit plan did not provide out-of-network benefits.

189.    As a result, Tri State has suffered financial losses by providing care to Cigna's insureds that is not covered under its patients' health benefit plans.

190.     Those losses can only be avoided by enforcing Cigna's promise that the services would be covered by the patients' Cigna-insured or Cigna-administered health benefit plans.

## PRAYER FOR RELIEF

WHEREFORE, Tri State and Physician Plaintiffs respectfully request that this Court enter judgment in their favor against Defendants and provide the following relief:

a.     Compensatory, punitive, and exemplary damages in an amount to be determined for all harm suffered as a result of the wrongful conduct alleged herein;

b.     All amounts due for all services rendered by Tri State to Cigna's insureds;

c.     An order directing Cigna to recalculate and issue unpaid benefits to Tri State that were not paid or that were reduced as a result of Cigna's unlawful activities;

d.     Restitution in an amount to be determined;

e.     A declaratory judgment stating that Cigna's actions violated ERISA and breached its obligations under its plan documents;

f.     A declaratory judgment stating that Cigna is obligated to properly pay the claims submitted by Tri State and that the plan exclusion referenced in Paragraph 94, above, does not apply to claims on behalf of Tri State's patients;

g.     A judgment declaring that Health Choice tortiously interfered with the Physician Plaintiffs' contractual relationship and business expectancy with Cigna;

h.     A judgment declaring that Health Choice and Cigna intentionally interfered with Tri State and the Physician Plaintiffs' contractual relationships and business expectancies with patients and referring physicians;

i.     A judgment declaring that Health Choice engaged in deceptive trade practices in violation of Tenn. Code Ann. § 47-18-104(b)(5);

j.      A judgment declaring that Cigna wrongfully excluded Tri State and Physician Plaintiffs from Cigna's provider network in violation of Arkansas' Patient Protection Act, Ark. Code Ann. § 23-99-204(a)(3)

k.      Three times the amount of damages suffered by Plaintiffs as proven at trial;

l.      Interest on all such amounts;

m.      An injunction to prevent continuation or recurrence of Cigna's unlawful conduct;

n.      An injunction pursuant to Arkansas' Patient Protection Act to prevent Cigna from preventing the Plaintiff Physicians and Tri State from becoming Cigna providers;

o.      Attorney's fees, collection costs, and all other fees, costs and disbursements incurred in connection with this lawsuit;

p.      Liquidated damages provided for under any of the applicable plans;

q.      Such other and further relief, at law and equity, as this Court deems just, proper, and appropriate.

## JURY TRIAL DEMAND

Tri State and Physician Plaintiffs demand a trial by jury on all claims so triable.

Dated: October 28, 2015            BURCH, PORTER & JOHNSON, PLLC

/s/ Douglas F. Halijan
Douglas F. Halijan  (Tenn. Bar No. # 16718)
Molly Glover  (Tenn. Bar No. 16113)
    (*pro hac motion pending*)
Shea B. Oliver (Tenn. Bar No. 29330)
    (*pro hac motion pending*)
Charles S. Higgins (Tenn. Bar No. 30184)
    (*pro hac motion pending*)
130 North Court Avenue
Memphis, TN  38103
Phone: (901) 524-5000
Fax: (901) 524-5024
dhalijan@bpjlaw.com
mglover@bpjlaw.com
soliver@bpjlaw.com
chiggins@bpjlaw.com

Scott Poynter (AR # 90077)
STEEL, WRIGHT, & COLLIER, PLLC
400 W. Capitol Ave., Suite 2910
Little Rock, AR 72201
Phone: (501) 251-1587
scott@poynterlawgroup.com

## CERTIFICATE OF SERVICE

I, Douglas F. Halijan, hereby certify that on this 28th day of October, 2015, I filed the foregoing with the Clerk of the Court and that the ECF system will send notification of filing to all counsel of record. I further certify that on this 28th day of October, 2015, I served a true and correct copy of the foregoing *via* electronic mail and regular U.S. Mail, postage prepaid, upon the following counsel of record:

Scott E. Poynter, Esq.
Steel, Wright & Collier, PLLC
400 W. Capitol Ave., Suite 2910
Little Rock, AR 72201

Leigh M. Chiles, Esq.
Leo M. Bearman, Jr., Esq.
Matthew S. Mulqueen, Esq.
Baker, Donelson, Bearman, Caldwell
& Berkowitz
165 Madison Avenue, Suite 2000
Memphis, TN 38103

Joshua B. Simon, Esq.
Warren Haskel, Esq.
Ryan D. McEnroe, Esq.
Dmitriy G. Tishyevich, Esq.
(all admitted *pro hac vice*)
Kirkland & Ellis LLP
601 Lexington Avenue
New York, NY 10022

Chad W. Pekron, Esq.
Quattlebaum, Grooms, Tull
& Burrow, PLLC
111 Center Street, Suite 1900
Little Rock, AR 72201


/s/ Douglas F. Halijan