**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

TRI STATE ADVANCED SURGERY
CENTER, LLC, GLENN A. CROSBY II, M.D.,
F.A.C.S., and MICHAEL HOOD, M.D.

PLAINTIFFS AND COUNTER-COUNTERCLAIM-PLAINTIFFS

v.

Case No. 3:14-CV-00143-JM

HEALTH CHOICE, LLC,
and CIGNA HEALTHCARE OF TENNESSEE, INC.

DEFENDANTS AND COUNTER-COUNTERCLAIM DEFENDANTS
--------------------------------------------------------------------------------------------------------------------
CONNECTICUT GENERAL LIFE INSURANCE
COMPANY, CIGNA HEALTH AND
LIFE INSURANCE COMPANY, and CIGNA
HEALTHCARE OF TENNESSEE, INC.,

COUNTERCLAIM-PLAINTIFFS

v.

SURGICAL CENTER DEVELOPMENT, INC.
D/B/A SURGCENTER DEVELOPMENT, and
TRI STATE ADVANCED SURGERY CENTER, LLC

COUNTERCLAIM-DEFENDANTS

**FILED UNDER SEAL**

**MEMORANDUM IN SUPPORT OF CIGNA'S
MOTION TO DISMISS COUNTER-COUNTERCLAIMS**

KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.simon@kirkland.com
warren.haskel@kirkland.com
dmitriy.tishyevich@kirkland.com

QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, AR  72201
Telephone: (501) 379-1700
Facsimile: (501) 379-1701
jtull@qgtlaw.com
cpekron@qgtlaw.com
ryounger@qgtlaw.com

**<u>INTRODUCTION</u>**

Plaintiffs originally brought Sherman Act and tortious interference claims against Cigna. Both claims were dismissed.  (Dkt. 78.)  Plaintiffs tried to resurrect them by seeking leave to file an amended complaint.   (Dkt. 80.)   Cigna opposed that motion (Dkt. 85), which is pending. Without waiting for a ruling, Plaintiffs seek to help themselves to the same relief by purporting to bring twelve counter-counterclaims—ten of them against Cigna.  These claims fall into three categories: (1) conspiracy claims (Counts II and IV-VI); (2) reimbursement claims under state law and ERISA (Counts VII and X-XII); and (3) non-benefits ERISA claims (Counts VIII and IX).  Plaintiffs do not explain why they did not seek to add these claims months ago, when they sought leave to file an amended complaint, but they clearly could have.  The conspiracy-based claims are rooted in the same allegations as the dismissed Sherman Act claim.  The other claims arise out of Cigna's reductions of payments to Tri State—reductions that, as Plaintiffs acknowledge, go back to "[a]t least as early as June 2014."[1]  Whatever Plaintiffs' reason for the delay, all these claims should be dismissed.

***First***, Plaintiffs' "counter-counterclaims," purportedly filed in response to Cigna's counterclaims, are procedurally improper.  Counterclaims-in-reply may be filed (if at all) only in response to permissive counterclaims.  But all of Cigna's counterclaims were compulsory, not permissive, because they arose out of the same subject matter as Plaintiffs' original claims.

***Second***, the conspiracy-based claims are barred by *res judicata*.  These claims rely on the same allegations as the Sherman Act claim, which the Court has dismissed with prejudice. Plaintiffs cannot duck *res judicata* by dressing up the same alleged facts in new legal theories. Moreover, these claims would fall even had they not been barred by *res judicata*:  the tortious

---

[1] Plaintiffs' Counter-Counterclaims, filed on October 28, 2015 (Dkt. 101) ("CC") ¶ 91.

interference claim fails because Cigna as a matter of law cannot interfere with contracts to which it is a party; the Arkansas Patient Protection Act claim fails because Plaintiffs admit they are not willing to abide by Cigna's terms; and the conspiracy claim is not independently actionable.

*Third*, the reimbursement ERISA and breach of contract claims fail because Tri State has not properly pled an assignment. The unjust enrichment and promissory estoppel claims are preempted to the extent they relate to ERISA plans; to the extent they do not, they fail still because they turn on Cigna's obligations under the plans, and Tri State's alleged injuries are redressable (if at all) only as a breach of contract claim.

*Fourth*, the non-reimbursement ERISA claims likewise fail because Tri State has not plausibly pled assignments (a question separate from Tri State's assignment for ERISA benefits). The ERISA breach of fiduciary duty claim should also be dismissed as duplicative of the ERISA benefits claim. And the non-disclosure ERISA claim further fails because Tri State has not alleged that Cigna is the Plan Administrator, the only entity that can be held liable on that claim.

## BACKGROUND

Cigna insures its own health insurance policies and administers benefits plans funded by third-party employers. (CC ¶ 19.) Cigna maintains a network of healthcare providers ("participating" or "in-network" providers), who accept discounted rates in exchange for receiving access to Cigna's plan members. (*Id.* ¶ 87.) In contrast, providers who do not participate in Cigna's network ("non-participating" or "out-of-network" providers) have no restrictions on the amounts they can charge for their services. Cigna encourages providers to participate in its network by requiring in-network providers to refer patients to other in-network providers, making it more likely that Cigna plan members will remain in-network. (*Id.* ¶ 45.) This benefits healthcare consumers, as provider networks "control the quality and cost of health-care delivery." *See Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 332 (2003).

In Memphis, Cigna contracted with Health Choice, a joint venture physician-hospital organization. (*See* CC ¶¶ 5-6, 8, 19.) Consistent with its goal of managing costs and protecting its provider network, Cigna's agreement with Health Choice states that "Represented Providers shall refer Participants to . . . Participating Providers except in the case of an Emergency or as otherwise described in applicable Program Requirements or as otherwise required by law." (*See* § II.A.7 of the Managed Care Alliance Agreement, attached as Ex. A.)[2] A Represented Provider is any provider that has contracted with Health Choice and agreed to be subject to Health Choice's agreement with Cigna. (*Id.* at 3.) Physician-Plaintiffs Dr. Hood and Dr. Crosby admit they meet these criteria. (CC ¶ 40; Physician Provider Agreement between Dr. Crosby and MetroCare, attached as Ex. B (filed under seal), at § 1.10 ███████████████████ █████████████████████████████████████████████ ███████████████████ & § 4.1 ██████████████████████ ███████████████████; Physician Provider Agreement between Dr. Hood and MetroCare, attached as Ex. C (filed under seal), at § 1.10 & § 4.1 ████████████████.

Physician-Plaintiffs sought to skirt Cigna's cost controls by referring patients to Tri State. There can be no dispute that Physician-Plaintiffs' contracts require them to send Cigna patients to in-network providers (*see* Exs. A, B & C), or that Tri State is an out-of-network provider. (CC ¶ 31.) Cigna notified Physician-Plaintiffs of their breach, but they refused to abide by their agreements and were terminated. (*Id.* ¶¶ 45, 56.) Plaintiffs now also allege that Cigna began reducing and/or denying payments to Tri State. (*Id.* ¶ 91.) This should come as no surprise, given that Tri State has already defrauded Cigna out of well over a million dollars by submitting false claims. (*See* Dkt. 49, Cigna's Counterclaims.)

---

[2] The Court may consider this agreement because Plaintiffs expressly reference it in their Counter-Counterclaims. *See, e.g.*, CC ¶¶ 8, 19, 39-40; *Dittmer Props., L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013) (courts may consider, among other things, "matters incorporated by reference" in the complaint).

## ARGUMENT

### I.    Plaintiffs' Counter-Counterclaims Are Procedurally Improper.

Courts in this circuit have held that counterclaims-in-reply may be filed only when they are "in response to permissive counterclaims." *See Lincoln Sav. Bank v. Open Solutions, Inc.*, 956 F. Supp. 2d 1032, 1038 (N.D. Iowa 2013).   But where counterclaims "arise[] out of the transaction or occurrence that is the subject matter" of the plaintiff's claims, they are compulsory, not permissive. *See* Fed. R. Civ. P. 13(a)(1)(A).   A "transaction" under Rule 13(a), in turn, "may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their ***logical relationship***." *Tullos v. Parks*, 915 F.2d 1192, 1195 (8th Cir. 1990) (emphasis added).

Here, there is a clear "logical relationship" between Plaintiffs' original claims and Cigna's counterclaims.   Both sets of claims arise from Dr. Crosby and Dr. Hood breaching their Cigna contracts with out-of-network referrals to Tri State, thereby helping further Tri State's fraudulent billing scheme—which Cigna seeks to stop.   (*See* Dkt. 1, Compl. ¶¶ 41, 48; *see generally* Dkt. 49, Cigna Counterclaims.)   That is, the alleged conduct at issue in both Plaintiffs' Complaint and Cigna's Counterclaims—Cigna's termination of Dr. Crosby and Dr. Hood for improper referrals to Tri State, and the steps that Cigna has taken to combat the fraudulent billing scheme related to these referrals—is part and parcel of the same core dispute.   Plaintiffs' original claims and Cigna's counterclaims thus have a "close[] logical relationship" because they "are part of the fight between the parties," which all relates to Tri State's fraud.   *See Tullos*, 915 F.2d at 1196.   As such, Cigna's counterclaims were compulsory, and Plaintiffs' counter-counterclaims should be dismissed.   *See Lincoln Sav. Bank*, 956 F. Supp. 2d at 1046 (finding that plaintiff's counterclaims-in-reply "are not a permissible pleading" because they were asserted in response to defendant's compulsory counterclaims).

4

## II.   The Conspiracy-Based Claims (Counts II, IV-VI) Fail.

Plaintiffs assert a variety of conspiracy-based claims—tortious interference (Count II), conspiracy (Counts IV and V), and a violation of the Arkansas Patient Protection Act (Count VI)—that all arise from the same set of allegations:  that in furtherance of Cigna's alleged conspiracy with Health Choice, Cigna refused to contract with Tri State and terminated in-network providers who referred patients to Tri State.  These claims suffer from a variety of procedural and substantive defects and should be dismissed accordingly.

### A.   The Conspiracy-Based Claims Are Barred By *Res Judicata*.

Plaintiffs' conspiracy allegations are nothing new: they first raised these same allegations to support the Sherman Act claim in their original Complaint.  (*See* Dkt. 1, Compl. ¶¶ 74-80.) Long after the Court dismissed that claim with prejudice (Dkt. 78), and Plaintiffs moved for leave to amend that claim (Dkt. 80), Plaintiffs seek another bite at the apple by trying to dress up the same allegations in new legal theories.  *Res judicata* bars them from doing so.

Under *res judicata*, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action."  *Lane v. Peterson*, 899 F.2d 737, 741 (8th Cir. 1990).  *Res judicata* has four elements: "(1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action."  *Yankton Sioux Tribe v. U.S. Dep't of Health & Human Servs.*, 533 F.3d 634, 639 (8th Cir. 2008).  Each element is met here.  The Sherman Act dismissal with prejudice was a judgment on the merits, satisfying the first prong.[3]  And there can be no dispute

---

[3] *E.g.*, *U.S. v. Maull*, 855 F.2d 514, 517 n.3 (8th Cir. 1988) ("a Rule 12(b)(6) dismissal is a 'judgment on the merits' for res judicata purposes unless the plaintiff is granted leave to amend or the dismissal is reversed on appeal.").

that this Court had jurisdiction to make that ruling, or that both suits involve the same parties (Tri State, Physician-Plaintiffs, Health Choice, and Cigna), satisfying the second and third prongs.

The fourth element of *res judicata* is likewise met because the Sherman Act claim and the newly-asserted conspiracy-based claims all "arise[] out of the same nucleus of operative facts." *See Lane*, 899 F.2d at 742.  With their Sherman Act claim, Plaintiffs alleged that Cigna and Health Choice conspired to "put Tri State out of business" (*see* Compl. ¶¶ 75-77) and that to further this conspiracy, Cigna (1) "refus[ed] to provide Tri State with an in-network contract" (*id*. ¶ 77); (2) "threaten[ed] to terminate other physicians unless they agreed to stop referring patients to Tri State" (*id*. ¶ 7); and (3) "terminat[ed] the Physician Plaintiffs" after they refused to refer Cigna patients to in-network providers only.  (*Id*. ¶¶ 41, 48, 77.)

Plaintiffs' conspiracy-based claims repeat these same allegations in nearly identical language.[4]  Plaintiffs also rely on these same allegations to assert that Cigna tortiously interfered with their relationships and business expectancies with Cigna members and in-network physicians.  (*See* CC ¶¶ 119-29.)  And the Arkansas Patient Protection Act claim (Count VI) rests on allegations that Cigna improperly excluded Plaintiffs—again, an accusation Plaintiffs already raised to support their Sherman Act claim.  (Compl. ¶ 77 (alleging that the conspiracy "resulted in Cigna refusing to provide Tri State with an in-network contract, and with Cigna terminating the Physician Plaintiffs from Health Choice's provider agreement with Cigna").)

That Plaintiffs try to dress up their old allegations in new clothes makes no difference, because "where a plaintiff fashions a new theory of recovery or cites a new body of law that was arguably violated by a defendant's conduct, res judicata will still bar the second claim if it is

---

[4]  For example, Plaintiffs now allege that Cigna and Health Choice "conspired to drive Tri State out of business" in order to "direct more referrals to Methodist" (CC ¶¶ 136-37), and that Cigna sent letters "threaten[ing] to terminate physicians unless they agreed to stop referring patients to Tri State" and "remov[ed] the Physician Plaintiffs from Cigna's approved panel after [they] refused to sign" the in-network referral attestation.  (*Id*. ¶¶ 140-41.)

based on the same nucleus of operative facts as the prior claim." *Lane*, 899 F.2d at 744.[5]   The

conspiracy-based claims arise from the same alleged facts as the dismissed Sherman Act claim,

and Plaintiffs cannot re-raise these claims now.

> **B.   The Conspiracy, Tortious Interference, and Arkansas Patient Protection Act Counts (Counts IV-V, II, and VI) Fail to State a Claim.**
>
> > **1.   The Tortious Interference Claim (Count II) Fails.**

Plaintiffs allege that Cigna tortiously interfered with their contractual relationships and

business expectancies with Cigna's members and with in-network physicians.  (*See* CC ¶ 122.)

This claim fails for two reasons.  ***First***, "[a] party to a contract . . . cannot be held liable for

interfering with the party's own contract."  *See Faulkner v. Ark. Children's Hosp.*, 69 S.W.3d

393, 405 (Ark. 2002); *J.K.P. Foods, Inc. v. McDonald's Corp.*, 420 F. Supp. 2d 966, 969-70

(E.D. Ark. 2006) (dismissing claim that McDonald's tortiously interfered with sale of

McDonald's restaurants because McDonald's was a party to the franchise agreement).  Here,

Plaintiffs allege that Cigna had contractual relationships with Physician-Plaintiffs (CC ¶¶ 17-18),

Cigna's in-network providers (*id.* ¶ 19), and patients covered by Cigna plans (*id.*).  Cigna cannot

be liable for allegedly interfering with those relationships.

Courts have similarly rejected arguments that Cigna cannot be a party to Plaintiffs'

business expectancies, based on near-identical allegations that Plaintiffs offer here.  In *Marion*

*Healthcare LLC v. South Illinois Healthcare*, the plaintiff-provider alleged that the insurer

"improperly caused in-network physicians and plan participants . . . not to use [plaintiff's] out-

of-network surgical center," including by threatening to terminate in-network physicians for

referring to that provider.  *See* 2013 WL 4510168, at *14-15 (S.D. Ill. Aug. 26, 2013).  The court

dismissed the tortious interference claim with prejudice, finding that "[a]ny in-network physician

---

[5] *See also, e.g., Midyett v. Levy*, 2015 WL 4251144, at *2 (W.D. Ark. July 13, 2015) ("[A party] cannot 'dress up' his previously dismissed case and pass it off as something new by citing to new theories of recovery.").

or patient covered by [the insurer] has an existing contractual relationship with [the insurer], and plaintiff, as a service provider, could only be paid for services rendered by or to these individuals through [those] existing contractual agreements." *Id*. at *15.[6]  Cigna, too, has contractual relationships with the relevant in-network physicians and patients, and dismissal is proper.

**Second**, Plaintiffs have not sufficiently alleged any "improper" conduct by Cigna, as Arkansas law requires.  *See Acre v. Spindletop Oil & Gas Co.*, 2009 WL 4016116, at *4 (E.D. Ark. Nov. 18, 2009) (tortious interference "must be improper to be actionable").  Plaintiffs allege that Cigna's "improper" conduct consisted of threatening to terminate (and in some case terminating) in-network providers who referred members to Tri State.  (*See* CC ¶ 124.)  But Plaintiffs admit Cigna took these steps because it considered those referrals a breach of Cigna's provider agreements, which require referring patients to in-network providers.  (*See id.* ¶ 45, 56.) There is nothing "improper" about Cigna holding its providers to the terms of their contracts. *See Roudachevski v. All-Am. Care Ctrs., Inc.*, 2011 WL 1213087, at *7 (E.D. Ark. Mar. 31, 2011) (rejecting physician's argument that a nursing care facility tortiously interfered by improperly terminating his privileges, where the physician "refused to follow [defendants'] legitimate policies and procedures"), *aff'd*, 648 F.3d 701 (8th Cir. 2011).

### 2.    The Arkansas Patient Protection Act Claim (Count VI) Fails.

Plaintiffs ignore the "general rule" that "statutes have no effect except within the state's own territorial limits."  *See Hetman v. Schwade*, 317 S.W.3d 559, 564 (Ark. 2009); *Chalmers v. Toyota Motor Sales, USA, Inc.*, 935 S.W.2d 258, 264 (Ark. 1996) (declining to apply the Arkansas Unfair Practices Act to an alleged dual-pricing scheme in Tennessee).  Plaintiffs allege

---

[6] *See also Ne. Ga. Cancer Care, LLC v. Blue Cross & Blue Shield of Ga., Inc.*, 676 S.E.2d 428, 433 (Ga. Ct. App. 2009) (affirming dismissal of claim that Blue Cross tortiously interfered with plaintiff-provider's relationships with plan participants by excluding plaintiff from Blue Cross's network, because "Blue Cross [was] an integral part of the business relationships alleged in [plaintiff's] tortious interference claim.").

that Cigna Healthcare of Tennessee, Inc. is a "Tennessee corporation with its principal place of business in Tennessee."  (CC ¶ 19.)  The complained-of conduct—*i.e.*, Cigna's alleged exclusion of Tri State, Dr. Hood, and Dr. Crosby from its network, *see id.* ¶ 144—was thus undertaken by a non-Arkansas company outside of Arkansas.  Cigna's decision to exclude these providers is beyond APPA's jurisdictional reach.

Just as fatal, Plaintiffs also plead themselves out of this claim.  The APPA prohibits an insurer from excluding a provider if that provider is "willing to accept the health benefit plan's operating terms and conditions."  *See* Ark. Code Ann. § 23-99-204(a)(3).  But Plaintiffs squarely admit they are ***not*** willing to meet Cigna's terms.  (*See* CC ¶ 146 ("[Physician-Plaintiffs and Tri State] are willing to accept Cigna's operating terms and conditions ***except for*** the terms and conditions which are being wrongfully dictated by Health Choice.") (emphasis added).)  Whether Plaintiffs think that Cigna's terms are good, bad, or wrongfully dictated is irrelevant: the APPA makes no such distinctions, and the only question is whether Plaintiffs are willing to abide by Cigna's terms.  Plaintiffs admit they are not; thus, they have no claim.

### 3.    The Conspiracy Claims (Counts IV and V) Fail.

A claim for conspiracy is not actionable by itself—rather, a plaintiff can only recover for damages resulting from another "independently actionable" wrongdoing that is committed in furtherance of the alleged conspiracy.  *See Basham v. Am. Nat'l Cty. Mut. Ins. Co.*, 2015 WL 1034186, at *7 (W.D. Ark. Mar. 10, 2015); *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004) (civil conspiracy "is not a separate tort and must be based on the underlying tortuous activity").  Plaintiffs' conspiracy claims are predicated on their deficient tortious interference and APPA claims (*see* CC ¶¶ 136-37, 140-41) and fall together with those counts.

Plaintiffs also "fail[] to allege facts showing that [Cigna's] actions, even if true, were illegal, immoral, improper, or oppressive."  *See Acre*, 2009 WL 4016116, at *4.  Arkansas law

requires that an alleged conspiracy either (1) accomplish an unlawful or oppressive purpose, or (2) accomplish some purpose by unlawful, oppressive, or immoral means.  *See Gibson v. Regions Fin. Corp.*, 2008 WL 110917, at *8 (E.D. Ark. Jan. 9, 2008), *aff'd in part*, 557 F.3d 842 (8th Cir. 2009).   But the allegedly "improper" actions taken by Cigna—its termination and threatened termination of providers who referred Cigna members to an out-of-network facility— were in fact justifiable business practices expressly allowed by Cigna's provider participation agreements.  *See Acre*, 2009 WL 4016116, at *4 (dismissing conspiracy claim where party was acting on legal right to cancel lease).

### III.    Tri State's Reimbursement Claims (Counts VII and X-XII) Should Be Dismissed.

In addition to its conspiracy-based claims, Tri State also brings several reimbursement claims—a hodgepodge of ERISA (Count VII), contract (Count X), and equitable counts (Counts XI and XII), the gist of which is that Cigna improperly underpaid for Tri State's services.  All these claims suffer from multiple defects and should be dismissed.

#### A.    Tri State Has Not Properly Plead an Assignment to Bring Any ERISA Claims Nor a Breach of Contract Claim.

ERISA grants standing only to a "participant or beneficiary."  29 U.S.C. § 1132(a)(1)(A). As a healthcare provider, Tri State is neither.[7]   So, Tri State can only maintain ERISA claims derivatively—if it has a valid assignment to do so.  Similarly, to the extent Tri State attempts to pursue breach of contract claims on behalf of its Cigna-insured patients, it can only do so through a valid assignment.  Tri State has not pled such assignments here.

Whether plaintiff has alleged "valid assignments is a legal conclusion that need not be accepted without supporting factual allegations."  *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz. Inc.*, 2014 WL 3349920, at *8 (D. Ariz. July 9, 2014).  This means that Tri State cannot

---

[7]  *See, e.g., Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.3d 1236, 1241 (11th Cir. 2001) ("Healthcare providers . . . generally are not considered 'beneficiaries' or 'participants' under ERISA.").

manufacture ERISA standing just by alleging that it has "standing . . . to bring this action" (CC ¶ 33), nor can Tri State manufacture a valid ERISA assignment just by alleging that it is "the assignee of its patients' benefits." (*Id.* ¶ 150.) *See Midwest Special Surgery, P.C. v. Anthem Ins. Cos.*, 2010 WL 716105, at *2 (E.D. Mo. Feb. 24, 2010) (dismissing where providers alleged "they were assignees under the 'plans,'" but did "not identify the plan, the specific provisions, or otherwise support[ed] these allegations with any facts."); *id.* at *6 (dismissing breach of contract claim given plaintiffs' "equally nebulous" assignment allegations).[8]

Yet Tri State offers only bald conclusions. (*See, e.g.*, CC ¶ 16 ("Tri State is the assignee of its Cigna-insured patients' rights and benefits"); *id.* ¶ 170 (Tri State is "the assignee" of breach of contract claims).) As the above cases hold, asserting that an assignment exists is not enough. Nor are Tri State's conclusory allegations that "Cigna-insured patients sign [assignment] forms[.]" *Id.* ¶ 33; *see Prof'l Ortho. Assocs. v. Excellus Blue Cross Blue Shield*, 2015 WL 4387981, at *6 (D.N.J. July 15, 2015) (finding allegations that the provider had "required all patients to sign" an assignment form insufficient, without "factual allegations that illuminate the extent or boundaries of this purported assignment."). Legal conclusions bereft of facts are not enough to plead an assignment; and without adequately pleading assignments, Tri State cannot maintain either its ERISA or breach of contract claims.

## B.    Tri State's Unjust Enrichment and Promissory Estoppel Claims (Counts XI and XII) Are Preempted to the Extent They Relate to ERISA Plans.

Plaintiffs contend that Cigna is liable for underpaying Tri State's claims under unjust enrichment and promissory estoppel theories, but Tri State does not appear to limit these counts to non-ERISA plans. To the extent Tri State tries to use Counts XI and XII to recover on claims subject to ERISA, those counts are preempted.

---

[8] *HM Compounding Servs., Inc. v. Express Scripts, Inc.*, 2015 WL 4162762, at *11 (E.D. Mo. July 9, 2015) (dismissing for failure to "allege[] sufficient facts regarding an assignment of benefits").

"ERISA supersedes 'any and all State laws insofar as they . . . relate to any employee benefit plan.'" *Parkman v. Prudential Ins. Co. of Am.*, 439 F.3d 767, 771 (8th Cir. 2006) (quoting 29 U.S.C. § 1144(a), ellipsis in original). And there is perhaps no clearer example of ERISA preemption than when a plaintiff argues that the administrator incorrectly processed a benefits claim, or where the "essence of [the] claim rests on the denial of benefits." *See Hull v. Fallon*, 188 F.3d 939, 943 (8th Cir. 1999) (finding claims "relat[ing] to the administration of benefits" to "fall squarely within the scope of section 502(a)" and thus preempted). How plaintiff labels such a claim makes no difference: in light of ERISA's comprehensive scheme, "[t]he Supreme Court has warned courts to be wary" of the "common" attempts by plaintiffs "to disguise what is in reality a claim for benefits under ERISA as a common-law claim under state law." *Olmsted Med. Ctr. v. Carter*, 2015 WL 5039216, at *3 (D. Minn. Aug. 26, 2015). So, when "the essence of the claim" is that defendant "should have paid medical benefits under the ERISA-regulated plan and failed to do so," that claim is preempted—regardless of how it is styled. *See Ibson v. United Healthcare Servs., Inc.*, 776 F.3d 941, 945 (8th Cir. 2014).

This kind of improper repackaging is just what Tri State tries to do. Tri State alleges in its unjust enrichment and promissory estoppel counts that Cigna improperly reduced or denied payment. (CC ¶¶ 178, 188.) These are the same allegations Tri State raises in its ERISA benefits count, where it claims that Cigna improperly "den[ied] or reduc[ed] payments due to Tri State." (*Id.* ¶ 151.) And Tri State's own allegations make clear that resolution of these counts will turn on interpretation of plan documents—same as Tri State's benefits count. (*See id.* ¶ 178 (basing unjust enrichment count on Cigna's purported "misconstruction and/or misapplication of certain language in its plan documents"); *id.* ¶ 188 (basing promissory estoppel count on Cigna's alleged representations that Tri State's services would be covered by the plan, and Cigna's denial of

claims because the plans "did not provide out-of-network benefits.").)  To the extent Counts XI and XII relate to claims subject to ERISA, they are benefit disputes and thus preempted.  *See, e.g.*, *Olmsted*, 2015 WL 5039216, at \*5 (finding promissory estoppel claim preempted where its "essence" was "a challenge to the denial of benefits under an ERISA plan").[9]

### C. Tri State's Reimbursement Claims Suffer from Multiple Other Flaws.

**ERISA vs. non-ERISA claims.**  Tri State's allegations "fail to distinguish between the patients who were participants in an ERISA covered plan and those who were not—a crucial distinction."  *See Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, 2013 WL 5519320, at \*1 (E.D. La. Sept. 30, 2013).  Indeed, Tri State fails to identify any particular claims at all, instead vaguely stating that "Cigna has refused to pay and/or reduced claims for the medical services provided by Tri State to Cigna's insureds."  (CC ¶ 91.)  Tri State thus fails to provide Cigna with fair notice of what benefit claims are actually at issue, under which plans, what the disputed amounts are, and which disputed claims are subject to ERISA. Such lack of specificity fails Rule 8's requirements.  *See Ctr. for Reconstructive Breast Surgery, LLC*, 2013 WL 5519320, at \*1 (requiring provider to file a more definite statement, including identifying each plan at issue, whether it is ERISA-governed, the plan terms allegedly breached, the manner of breach, and disputed charge amounts for each claim); *Kindred Hosp. E., LLC v. Blue Cross & Blue Shield of Fla., Inc.*, 2007 WL 601749, at \*4 (M.D. Fla. Feb. 16, 2007) (*sua sponte* requiring medical provider to replead claims and provide this additional information "[t]o comply with the notice requirements of Rules 8 and 10").

---

[9] *See also Am. Cleaners & Laundry Co. v. Textile Processors*, 482 F. Supp. 2d 1103, 1115 (E.D. Mo. 2007) ("conclud[ing] that the Plaintiff's claim of state common law unjust enrichment is preempted by ERISA and therefore must be dismissed."); *Algren v. Pirelli Armstrong Tire Corp.*, 197 F.3d 915, 916-17 (8th Cir. 1999) ("agree[ing] that plaintiffs' state-law promissory-estoppel claims were preempted").  While Tri State does not appear to bring a breach of contract count for claims subject to ERISA (*see* CC ¶ 170), any such theory would likewise be preempted.  *E.g.*, *Howard v. Coventry Health Care of Iowa, Inc.*, 293 F.3d 442, 446 (8th Cir. 2002).

**Breach of contract and ERISA benefits claims.**  To state a plausible breach of contract claim post-*Twombly*, a plaintiff must "identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached.  Otherwise, the complaint must be dismissed." *Spinelli v. NFL*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015).[10]  Similarly, "[f]or a § 502 claim, the party must identify the specific provisions of the plan itself that were breached."  *Gunderson v. St. Louis Connectcare*, 2009 WL 882240, at *3 (E.D. Mo. Mar. 26, 2009).[11]  Tri State purports to state a breach of contract claim for all benefit claims under some unspecified number of non-ERISA plans (*see* CC ¶¶ 169-76), and a § 502 cause of action for some unspecified number of claims under ERISA (*see id.* ¶¶ 147-53), but these counts suffer from the same flaw:  Tri State fails to identify a single specific agreement—let alone plead an actual contract provision or plan term—that Cigna allegedly breached.  Tri State's vague allegations (made only "[u]pon information and belief") that Cigna was obligated to pay a percentage of the lesser of "the actual billed charge" or "the usual and customary" charge and breached those obligations "by denying or drastically reducing its payments" (*id.* ¶¶ 173-74) are insufficient.

For instance, the non-participating plaintiff provider in *Innova Hospital San Antonio, L.P. v. Blue Cross & Blue Shield of Georgia, Inc.* similarly contended that an insurer breached its obligations by failing to "pay the reimbursement rate 'required by the contracts' or the 'contractually agreed upon amounts," but failed to "allege what rates were required or contractually agreed upon by the parties."  995 F. Supp. 2d 587, 603 (N.D. Tex. 2014).  That provider also brought an ERISA benefits claim and alleged that "Defendants did not reimburse

---

[10] *See also, e.g.*, *Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 971 (N.D. Tex. 2014) ("a plaintiff suing for breach of contract must point to a specific provision in the contract that was breached by the defendant."); *Midwest Special Surgery*, 2010 WL 716105, at *6 (dismissing breach of contract claim brought by non-participating provider, where plaintiff "failed to identify [the relevant] contracts with sufficient specificity under *Twombly*.").

[11] *Midwest Special Surgery*, 2010 WL 716105, at *2 (dismissing for "fail[ing] to properly plead the existence of an ERISA plan or the terms entitling [plaintiffs] to relief.").

the amounts due under the terms of the plans," but failed to "identify the terms of the plans that were allegedly breached."  *Id.* at 601-02.  The court correctly found that these sparse allegations failed to state a claim.  *Id.* at 602-03.  Just so here:  without identifying what plans are at issue and what terms Cigna allegedly breached, Tri State has not pled a breach of contract claim nor an ERISA benefits claim.  *See id.*; *Gunderson*, 2009 WL 882240, at *3 (dismissing § 502 claim where plaintiff failed to "identify the specific provisions of the plan . . . that were breached").

**Unjust enrichment.**  Count XI should be dismissed as duplicative.  To the extent Tri State bases this count on claims subject to ERISA, it is preempted.  (*See* § III.B.)  And to the extent Count XI is based on non-ERISA claims, it fails because Tri State admits that Cigna's plans cover the same subject matter.  *See, e.g.*, *Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 210 S.W.3d 101, 112 (Ark. 2005) (affirming dismissal of unjust enrichment claim because "the concept of unjust enrichment has no application when an express written contract exists."); *Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*, 2015 WL 4394408, at *34 (D. Md. July 15, 2015) (dismissing out-of-network providers' unjust enrichment claim against Cigna because "contracts exist[ed] covering the same subject matter").  Indeed, Tri State's allegations make clear that the unjust enrichment claim is really a breach of contract claim, since Tri State contends that Cigna improperly denied payments "based on its misconstruction and/or misapplication of certain language in its ***plan documents***."  (CC ¶ 178 (emphasis added); *see also id.* ¶ 94 (Cigna's denial of payments is based on Cigna's interpretation of "exclusion[s] in . . . the health benefit plans it administers").)  Accordingly, if Tri State has a valid assignment to pursue breach of contract claims, then Tri State need not rely on an unjust enrichment theory.

**Promissory estoppel.**  Count XII fails for a similar reason:  despite framing this as a quasi-contractual claim, Tri State in truth seeks to recover on a contract—Cigna's plans.  (*See*

15

CC ¶¶ 185, 188 (alleging that Cigna represented that Tri State's services would be "covered by the patient's . . . health benefit plan," and that Cigna denied payments allegedly because the plans "did not provide out-of-network benefits").)   Again, to the extent this count is based on claims subject to ERISA, it is preempted.  (*See* § III.B.)  To the extent it is based on non-ERISA claims, if Tri State has a valid assignment, then it also has a contractual remedy and cannot rely on promissory estoppel.  *See Mickens v. Corr. Med. Servs., Inc.*, 395 F. Supp. 2d 748, 753 (E.D. Ark. 2005) ("promissory estoppel is an alternative theory which is not available when an actual contract exists.").  And since Tri State's dispute comes down to whether Cigna's interpretation of its payment obligations ***under the plans*** is correct (*see* CC ¶¶ 90, 99-95), Tri State also cannot rely on promissory estoppel to vary the terms of those written agreements.

Counts XII fails for another, independent reason: it claims Cigna represented that Tri State's services "would be covered" by the plans (*id.* ¶ 186), but Plaintiffs fail to plead a definite promise—a required element of a promissory estoppel claim.  *See FutureFuel Chem. Co. v. Lonza, Inc.*, 756 F.3d 641, 647 (8th Cir. 2014) (promissory estoppel requires "show[ing] that the defendant made a promise").  In *Regency Hospital of Northwest Arkansas, LLC v. Arkansas Blue Cross Blue Shield*, a plaintiff-hospital similarly alleged it had treated patients in reliance on an insurer's representations "that the individuals were covered under plans" and based on the insurer "provid[ing] the amount of health insurance benefits then available to each patient." 2010 WL 3119371, at *1 (E.D. Ark. Aug. 5, 2010).  Noting that "[t]he Complaint does not identify who said what to whom" and "does not identify the alleged 'promise' sufficiently to enforce it," the court held "as a matter of law that the alleged promise is too vague to be

enforceable." *Id.* at *8.[12]  Tri State's vague allegations fail to support a promissory estoppel claim for the same reason.

## IV.     Tri State's Breach of Fiduciary Duty and Non-Disclosure ERISA Claims (Counts VIII and IX) Should Be Dismissed.

### A.     Tri State Has Not Pled Standing to Bring Counts VIII and Count IX.

Tri State offers nothing but conclusions about its ERISA assignments.  (*See* § III.A.) Even if Tri State's bald assertions were enough to plead assignment of a claim for ***benefits*** (and they are not), that still would not suffice to show assignment of ***non-benefits*** claims. "Assignment agreements are generally interpreted narrowly," *Sanctuary Surgical Ctr., Inc. v. Aetna, Inc.*, 546 F. App'x. 846, 851 (11th Cir. 2013), and ERISA assignments do not all convey the same rights.  *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1292 (9th Cir. 2014) (provider who was "assigned only the right to bring claims for payments of benefits . . . has no right to bring claims for breach of fiduciary duty.").  As a result, courts routinely dismiss claims where the scope of the alleged assignment does not encompass non-benefits claims.  *See, e.g.*, *Mid-Town Surgical Ctr., LLP v. Humana Health Plan of Tex., Inc.*, 16 F. Supp. 3d 767, 775 (S.D. Tex. 2014) (finding an assignment that "reference[d] only payment of 'surgical and/or Medical Benefits' . . . insufficient as a matter of law to assign . . . non-benefits ERISA claims" and dismissing claims).[13]

---

[12] *See also Innova*, 995 F. Supp. 2d at 606-07 (dismissing as "conclusory" a promissory estoppel claim where provider alleged that insurer "represented that they would pay [the provider] for services rendered to the patients, but breached those promises 'by failing to pay and/or underpaying' on [the provider's] claims").

[13] *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 258 (2d Cir. 2015) (noting that "[n]ot all ERISA assignments convey the same rights," and finding that by assigning their benefits right, "patients did not also assign any other claims they may have under ERISA."); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 897 (C.D. Cal. 2012) (concluding that "the scope of the assignments as pleaded is limited to the right to collect benefits directly" and dismissing non-benefits claims.).  These courts' recognition that they "must look to the language of an ERISA assignment itself to determine the scope of the assigned claims," *see In re WellPoint*, 903 F. Supp. 2d at 896-97, is squarely consistent with Arkansas law—which holds that a valid "assignment must adequately describe or identify the thing to be assigned." *Watkins v. Hadamek*, 48 Ark. App. 78, 80-81 (1994).

Tri State's barebones allegations provide the Court with no basis to find that Tri State has standing to bring either Count VIII or IX. Indeed, Tri State's failure to plead the language of its assignments makes it impossible for the Court to determine whether Tri State can pursue ***any*** ERISA claims at all, let alone whether the scope of Tri State's assignments (if any) is broad enough to cover non-benefit ERISA claims. Tri State's non-benefit claims fail as a result.

**B.     Tri State's ERISA Fiduciary Duty Claim (Count VIII) Should Be Dismissed as Duplicative of Its ERISA Benefits Claim (Count VII).**

A plaintiff who has "adequate relief by her right to bring a claim for benefits . . . does not have a cause of action under section 502(a)(3)." *Wald v. Sw. Bell Corp. Customcare Med. Plan*, 83 F.3d 1002, 1006 (8th Cir. 1996). So, when a plaintiff attempts to repackage a benefits claim as a fiduciary duty claim, dismissal is proper. *See Conley v. Pitney Bowes*, 176 F.3d 1044, 1047 (8th Cir. 1999) (affirming dismissal because "[plaintiff] has a claim for benefits . . . and therefore may not seek the same benefits in the form of equitable relief under § 1132(a)(3)(B)."). [14] Here, Tri State alleges that Cigna breached its fiduciary duties "by reducing or denying benefits payable to Tri State." (CC ¶ 157.) Tri State's benefits and fiduciary duty claims are thus one and the same: Tri State seeks the ***same relief*** (payment of benefits it alleges Cigna "wrongfully withheld," *see* CC ¶¶ 152, 162) for the ***same alleged injury*** (Cigna's purportedly improper reductions or denials of payments, *see id.* ¶¶ 151, 157-58). These alleged injuries are redressable—if at all—under § 502(a)(1), and Count VIII should be dismissed. [15]

---

[14] *Jones v. Aetna Life Ins. Co.*, 2015 WL 5486883, at *2 (E.D. Mo. Sept. 16, 2015); *Advanced Surgery Ctr.*, 2015 WL 4394408, at *29-30 (dismissing ASCs' fiduciary claim against Cigna because the alleged injury was redressable under § 502).

[15] The Eighth Circuit's recent holding that a plaintiff can plead a fiduciary breach claim together with a benefits denial claim, *Silva v. Metro Life Ins. Co.*, 762 F.3d 711, 725-26 (8th Cir. 2014), is not to the contrary. There, plaintiff had alleged "two alternative—as opposed to duplicative—theories of liability," because his benefits claim was premised on an existence of a valid insurance policy, while his fiduciary breach claim was based on the possibility that the "policy was never validly approved." *See id.* at 726-28. But where plaintiff pleads essentially the same claim under § 1132(a)(1) and § 1132(a)(3)—as Tri State does here—dismissal is still proper. *See Jones*, 2015 WL 5486883, at *3 (acknowledging *Silva* but still dismissing a § 1132(a)(3) claim as "duplicative").

## C.      Tri State's Non-Disclosure ERISA Claim (Count IX) Should Be Dismissed.

Count IX alleges that Cigna failed to provide "documents that Cigna claims provide the basis for its refusal to reimburse Tri State[.]"  (CC ¶ 166.)  This claim fails for multiple reasons.

*First*, Tri State has not plausibly alleged that it has assignments to bring any ERISA counts—whether they are benefits or non-benefits claims.  (*See* § III.A & n.13.)

*Second*, Tri State fails to allege that Cigna is the Plan Administrator—the only entity that can be held liable for § 1132(c) penalties.  ERISA defines a Plan Administrator.[16]  And ERISA also "'specifically makes the Plan Administrator responsible for providing the Plan documents,' so that an insurer that is not the plan administrator is not subject to [the § 1132(c)] penalty provision."  *Setell v. Metro. Life Ins. Co.*, 633 F. Supp. 2d 695, 712 (N.D. Iowa 2009) (quoting *Ross v. Rail Car Am. Group Disability Income Plan*, 285 F.3d 735, 743-44 (8th Cir. 2002)).  Thus, an insurer who is ***not*** the Plan Administrator cannot be liable under § 1132(c).  *See Ross*, 285 F.3d at 743-44; *Brown v. J.B. Hunt Transport Servs., Inc.*, 586 F.3d 1079, 1088-89 (8th Cir. 2009) ("Prudential may not be held liable for statutory penalties because § 1132(c) only provides a cause of action against plan administrators.").   Given this statutory bar, Tri State must plead facts showing that Cigna is the ERISA Plan Administrator—that is, facts showing that Cigna is "specifically . . . designated" as the Plan Administrator by the plans allegedly at issue, or that Cigna is the "plan sponsor" for those plans.  *See* 29 U.S.C. § 1002(16)(A)(i) & (ii).  Tri State has failed to do so.   Tri State's allegations that Cigna "insure[s] and/or administer[s]" some unspecified plans (CC ¶ 13) or that it acts as a "third party administrator" (*id.* ¶ 19) are not enough, because it is well-settled that insurers like Cigna can (and often do) administer claims without being the Plan Administrator.  *See Ross*, 285 F.3d at 739 (distinguishing between

---

[16] *See* 29 U.S.C. § 1002(16)(A) (administrator is "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor").

employer-"Plan Administrator" and the insurer who served as the "claims administrator").  Tri

State's failure to plead that Cigna is the Plan Administrator makes dismissal proper.  *See K.A. v.*

*St. Barnabas Med. Ctr.*, 2014 WL 5848956, at *2 (D.N.J. Nov. 12, 2014) (dismissing where

plaintiff "has not pled any facts demonstrating that Sun Life is an Administrator under ERISA.").

*Third*, Tri State also fails to plead other required elements.  Section 1132(c)(1) requires

administrators to provide copies of certain specific plan-related documents upon written request,

and the disclosure obligation "extends only to [that] defined set of documents."  *Brown v. Am.*

*Life Holdings, Inc.*, 190 F.3d 856, 861 (8th Cir. 1999) (affirming dismissal of a claim based on

alleged non-disclosure of claims manuals, because § 1024(b)(4) does not require their

disclosure); *see also* 29 U.S.C. § 1024(b)(4) (enumerating plan documents that must be disclosed

upon "written request").  So, to avoid dismissal, Tri State must allege (among other things) that it

had: (1) made a written request for (2) a plan document enumerated in § 1024(b)(4).

Tri State does neither.  First, Tri State alleges that it "requested the documents on which

Cigna relies for its denial of benefits, including the insurance plan documents" (CC ¶ 103), but

does not plead a *written* request—so Count IX should be dismissed for that reason alone.  *See*

*Piscopo v. Public Serv. Elec. & Gas Co.*, 2015 WL 3938925, at *6 (D.N.J. June 25, 2015)

(dismissing for failure to allege a written request, where plaintiff had only "vaguely allege[d]

that he 'requested information on the plan'").  Second, Tri State fails to allege exactly what

documents it had requested from Cigna.  At bare minimum, Count IX should be dismissed to the

extent it is based on Tri State's contentions that Cigna must provide all documents that "provide

the basis for its refusal to reimburse Tri State" (CC ¶ 166), but which are not specifically

enumerated in 29 U.S.C. § 1024(b)(4).  *See Brown*, 586 F.3d at 1089.

### CONCLUSION

For all of the foregoing reasons, Plaintiffs' Counter-Counterclaims should be dismissed.

Dated:  December 4, 2015

Respectfully submitted,

/s/  Chad W. Pekron

| | |
|---|---|
| Joshua B. Simon | John E. Tull III (84150) |
| Warren Haskel | Chad W. Pekron (2008144) |
| Dmitriy G. Tishyevich | R. Ryan Younger (2008209) |
|    (all admitted *pro hac vice*) | QUATTLEBAUM, GROOMS & TULL PLLC |
| KIRKLAND & ELLIS LLP | 111 Center Street, Suite 1900 |
| 601 Lexington Avenue | Little Rock, AR  72201 |
| New York, NY  10022 | Telephone:  (501) 379-1700 |
| Telephone:  (212) 446-4800 | Facsimile:  (501) 379-1701 |
| Facsimile:  (212) 446-4900 | jtull@qgtlaw.com |
| joshua.simon@kirkland.com | cpekron@qgtlaw.com |
| warren.haskel@kirkland.com | ryounger@qgtlaw.com |
| dmitriy.tishyevich@kirkland.com | |

*Counsel for Cigna Healthcare of Tennessee, Inc., Connecticut General Life Insurance Company, and Cigna Health and Life Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December, 2015, I electronically filed a redacted version of the foregoing document with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.  I further certify that on this 4th day of December, 2015, I filed an unredacted version of the foregoing document **under seal** with the Clerk of Court by hand-delivery, and certify that I have served an unredacted copy *via* electronic mail and regular U.S. mail, postage prepaid, upon the following counsel of record:

William Thomas Crowder, Esq.
Corey Darnell McGaha, Esq.
Emerson Poynter LLP
1301 Scott Street
Little Rock, AR 72202

Leigh M. Chiles, Esq.
Matthew S. Mulqueen, Esq.
Baker, Donelson, Bearman,
 Caldwell & Berkowitz
165 Madison Avenue, Suite 2000
Memphis, TN 38103

Douglas F. Halijan, Esq.
Molly Glover, Esq.
Shea B. Oliver, Esq.
Burch, Porter & Johnson, PLLC
130 North Court Avenue, Suite 2910
Little Rock, AR 77201

Scott E. Poynter, Esq.
George Nathan Steel, Esq.
Steel, Wright & Collier, PLLC
400 West Capitol Avenue
Suite 2910
Little Rock, AR 72201

/s/ Chad W. Pekron
Chad W. Pekron