**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

---

TRI STATE ADVANCED SURGERY
CENTER, LLC, GLENN A. CROSBY II, M.D.,
F.A.C.S., and MICHAEL HOOD, M.D.,

       Plaintiffs,

vs.                                                    Civil Action No. 3:14-CV-00143-JM

HEALTH CHOICE, LLC, and
CIGNA HEALTHCARE OF TENNESSEE, INC.,

       Defendants.

---

CONNECTICUT GENERAL LIFE INSURANCE
COMPANY, CIGNA HEALTH AND LIFE
INSURANCE COMPANY, and CIGNA
HEALTHCARE OF TENNESSEE, INC.,

       Counterclaim-Plaintiffs,

vs.

SURGICAL CENTER DEVELOPMENT, INC.
d/b/a SURGCENTER DEVELOPMENT, and
TRI STATE ADVANCED SURGERY CENTER, LLC,

       Counterclaim-Defendants.

---

TRI STATE ADVANCED SURGERY CENTER, LLC,

       Counter-Counterclaim-Plaintiff,

and

GLENN A. CROSBY, II, M.D. and
MICHAEL HOOD, M.D.,

       Third-Party Plaintiffs,

vs.

CIGNA HEALTHCARE OF TENNESSEE, INC.
and HEALTH CHOICE, LLC,

       Counter-Counterclaim and
       Third-Party Defendants.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION OF HEALTH CHOICE, LLC TO STRIKE AND, IN THE ALTERNATIVE, MOTION TO DISMISS THIRD PARTY CLAIMS**

Plaintiffs Tri State Advanced Surgery Center, LLC ("Tri State"), Dr. Glenn A. Crosby and Dr. Michael Hood (the "Physician Plaintiffs") (collectively, "Plaintiffs")[1] respond as follows to Defendant Health Choice, LLC's ("Health Choice") Motion to Strike and, in the Alternative, Motion to Dismiss (ECF No. 112).

## INTRODUCTION

In their Answer, Counterclaims and Third Party Claims filed on October 28, 2015, Plaintiffs have, as to Health Choice, simply reasserted state law claims that the Court previously dismissed *without prejudice*. (ECF No. 101 ¶¶ 106-42.) While Health Choice inexplicably claims in its instant motion that Plaintiffs' state law claims were dismissed with prejudice,[2] that is plainly untrue.  The Court's dismissal of Plaintiffs' state law claims against Health Choice was based only on its decision not to exercise supplemental jurisdiction over them under 28 U.S.C. § 1367, following dismissal of Plaintiffs' federal-question claims under the Sherman Act.  (ECF No. 78 at 11-12.)

Now that the Court has determined that federal question jurisdiction does exist in this case as to *one* of the counterclaims asserted against Tri State and SurgCenter by the Cigna co-defendants,  and  will  exercise  supplemental  jurisdiction  over  Cigna's  state  law  claims

---

[1]     In their Counter-Counterclaims and Third-Party Claims (ECF No. 101), Tri State and Drs. Crosby and Hood referred to themselves collectively as "Counter-Counterclaim Plaintiffs" and "Third-Party Plaintiffs."  For the sake of brevity and ease of reference, Tri State and Drs. Crosby and Hood will refer to themselves as "Plaintiffs" herein.

[2]     Health Choice claims in its Memorandum of Law that "[t]he Court has previously dismissed–with prejudice– nearly identical claims asserted by these same Plaintiffs against Health Choice."  (ECF No. 113 at 2.)  However, *only* the Sherman Act claims were dismissed with prejudice and the Court's Order could not be clearer in this regard.  (ECF No. 78 at 12.)

(ECF No. 92 at 12), Plaintiffs seek to have their reasserted claims heard against all of the original defendants in this case, including their state law claims against Health Choice.  There is nothing procedurally improper about this; there has merely been a realignment of the parties based on the timing of the Court's orders on the parties' respective motions to dismiss.  Health Choice is and remains a proper party to this action, and Plaintiffs' claims against Health Choice are inextricably related to the central issues of this litigation.  Health Choice's motion to strike Plaintiffs' state law claims is wholly without merit and should be denied.

Health Choice's motion to dismiss Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6), which it pleads in the alternative to its motion to strike, is similarly unavailing.  Plaintiffs' claims against Health Choice for tortious interference, deceptive trade practices, and conspiracy are each well-pled, supported factually, and more than sufficient to satisfy the pleading standards set forth under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and numerous decisions of the United States Court of Appeals for the Eighth Circuit.  Health Choice's motion to dismiss Plaintiffs' claims should likewise be denied.

## BACKGROUND

This litigation arises from Health Choice and Cigna's unlawful scheme to drive Tri State out of business. Health Choice is a joint venture between Methodist LeBonheur Healthcare ("Methodist") and MetroCare Physicians ("MetroCare").  (ECF No. 101 ¶ 5.)  Methodist is the dominant hospital system in the Memphis metropolitan area.  (*Id.* ¶ 7.)  In order to eliminate Tri State as a competitor to Methodist, Health Choice and Cigna have engaged in a wrongful conspiracy to boycott Plaintiffs.  (*Id.* ¶ 9.)  Health Choice has coerced patients to terminate their relationships with Plaintiffs and intimidated physicians from referring patients to both Tri State and Physician Plaintiffs.  Health Choice has also demanded Cigna terminate Drs. Crosby and

Hood as in-network providers.   Health Choice's wrongful conduct has damaged Plaintiffs' business.

On June 5, 2014, Plaintiffs filed their Complaint against Health Choice and Cigna Healthcare of Tennessee, Inc. ("Cigna") alleging (1) violations of the Sherman Act by Health Choice and Cigna; (2) tortious interference with contract by Health Choice; (3) tortious interference with business expectancy by Health Choice and Cigna; and (4) deceptive trade practices under the Tennessee Consumer Protection Act ("TCPA") by Health Choice.   (ECF No. 1.)   Both Health Choice and Cigna filed motions to dismiss Plaintiffs' Complaint.   (ECF Nos. 43 & 45)   In addition, Cigna (but not Health Choice) filed counterclaims against Tri State and third-party claims against Surgical Center Development, Inc. ("SurgCenter") ("Cigna's Counterclaims," ECF No.49) under both federal and state law, which Tri State and SurgCenter then moved to dismiss (ECF No. 61).

On April 16, 2015, the Court granted the Motions to Dismiss filed, respectively, by Health Choice and Cigna.   ("April 16th Order," ECF No. 78.)   The Court dismissed Plaintiffs' Sherman Act claims with prejudice and then declined to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims without addressing any of those claims on the merits. (ECF No. 78 at 12.)   A judgment dismissing Health Choice from this action was not entered following the Court's Order.

Following the Court's April 16th Order, Plaintiffs moved to amend their Complaint to address the issues the Court raised regarding the Sherman Act claims. ("Plaintiffs' Motion to Amend," ECF No. 80.)   Plaintiffs' proposed Amended Complaint also re-alleged the state law claims against Health Choice that the Court dismissed without prejudice.   (ECF No. 80-1.) Because Cigna's counterclaims were still pending, Plaintiffs asked in the alternative that the

Court consider the Motion to Amend a motion to reconsider the Court's April 16th Order. (ECF No. 80 at 1 n.1.)  The Court has not yet ruled on Plaintiffs' Motion to Amend.

On September 30, 2015, the Court granted in part and denied in part Tri State and SurgCenter's motion to dismiss Cigna's counterclaims. (ECF No. 92.) While the Court dismissed all of Cigna's claims under the RICO statute and its claim for overpayments under ERISA, the Court chose not to dismiss Cigna's single claim for declaratory relief under ERISA, therefore maintaining federal question jurisdiction over this action through that one count in Cigna's counterclaims. (*Id.* at 12.) The Court also denied Plaintiffs' motion to dismiss Cigna's state law claims against Tri State and SurgCenter, thus electing to exercise supplemental jurisdiction over those claims. (*Id.*)

On October 28, 2015, Plaintiffs answered Cigna's remaining counterclaims and, to comply with requirements of the Federal Rules of Civil Procedure regarding compulsory counterclaims and to ensure that all of their claims related to this matter were before the Court, Plaintiffs repleaded their state law claims against both Health Choice and Cigna.  (ECF No. 101.) As to Health Choice, these state law claims include causes of action for tortious interference, deceptive trade practices under the TCPA, and conspiracy.  (*Id.*)  Health Choice then filed the instant Motion to Strike and, in the alternative, Motion to Dismiss on November 18, 2015.  (ECF No. 112.)

## LAW & ARGUMENT

Health Choice asserts that Plaintiffs' claims against it should be stricken because it is not a proper third-party defendant and/or that Plaintiffs' claims fail as a matter law.  Health Choice's procedural arguments are unpersuasive, and it is clear that Health Choice is attempting to exploit the somewhat unusual procedural posture of this case to avoid an adjudication of Plaintiffs'

5

claims on the merits.   Health Choice's Rule 12(b)(6) arguments are similarly without merit:

Plaintiffs' TCPA claim is timely, and Plaintiffs have more than adequately pled their tortious

interference and conspiracy claims under applicable case law.

## I.      Health Choice Remains a Proper Party to this Action.

Health Choice first argues Plaintiffs' claims should be dismissed because it is not a

proper "third-party defendant"[3] under Federal Rule of Civil Procedure 14.   (ECF No. 113 at 6-9.)

Plaintiffs, however, need not rely on Rule 14 to assert their claims against Health Choice.   Health

Choice was an original party to this action.   Given that the Court has retained jurisdiction over

this case by denying Plaintiffs' motion to dismiss as to a single federal claim asserted by co-

defendant Cigna, Health Choice remains a proper party and Plaintiffs' claims against Health

Choice should be adjudicated with all of the related and interwoven issues presented in this

litigation.   The only cases Health Choice cites in favor of dismissal on these grounds deal

exclusively with third-party actions under Rule 14.   *See Mattes v. ABC Plastics, Inc.*, 323 F.3d

695, 695 (8th Cir. 2003); *United States v. Kuyper*, 2012 WL 668625, at *1 (D.S.D. Feb. 29,

2012); *Weatherford Artificial Lift Sys., Inc. v. Bruce Oakley, Inc.*, 2010 WL 5058660, at *3 (E.D.

Ark. Dec. 3, 2010).   Because Plaintiffs are not relying on Rule 14, these cases are inapposite.

This action began when Plaintiffs sued both Health Choice and Cigna for their joint and

coordinated effort to drive Tri State out of business.   Plaintiffs' claims against Health Choice and

Cigna arise from the same series of transactions and occurrences and present common questions

of fact and law.   *See* Fed. R. Civ. P. 20(a)(2) (setting forth the requirements for permissive

joinder of parties).   Although it filed the above-referenced motion to dismiss under Fed. R. Civ.

P. 12(b)(6), Health Choice *did not* object in that motion that it was somehow an improper party

---

[3]     Whether Health Choice is labeled as a "third-party defendant" or a "defendant" is not important. Courts "must look past the labels the parties attach to their claims to the underlying factual allegations." *Reid v. Doe Run Resources Corp.*, 701 F.3d 840, 848 (8th Cir. 2012).

to Plaintiffs' original Complaint.  Health Choice should not *now* have an objection that it is an improper party simply because of the unusual procedural posture in which the parties find themselves.

Because of the timing of the Court's orders on the parties' motions to dismiss, Tri State and Physician Plaintiffs, the original plaintiffs in this action, now stand as counter-counterclaim plaintiffs.  Plaintiffs needed to raise their compulsory counter-counterclaims against Cigna and their related claims against Health Choice or risk waiver. Courts recognize that declining to accept plaintiffs' reasserted claims in such situations is manifestly unjust.  *See, e.g.*, *Crest Auto Supplies, Inc. v. Ero Mfg. Co.*, 246 F. Supp. 224, 229 (N.D. Ill. 1965) (recognizing the "absurd conclusion that the defendant may sue via counterclaim in federal court . . . while the plaintiff would have to maintain a completely separate suit on the same subject matter in the State Courts" should be avoided).[4]

Plaintiffs' claims against Health Choice clearly arise from the same set of facts as Plaintiffs' claims against Cigna. These claims should therefore be litigated together.  The Federal Rules of Civil Procedure encourage "all reasonably related claims for relief by or against different parties to be tried in a single proceeding" in order "to promote trial convenience and expedite the final determination of disputes thereby preventing multiple lawsuits." *Travelers Ins. Co. v. Intraco, Inc.*, 163 F.R.D. 554, 556 (S.D. Iowa 1995) (discussing Rule 20) (internal quotations omitted).  Moreover, the parties' respective claims "are so related that the parties

---

[4]    In *Crest Auto*, the court noted that were the plaintiff to institute his counter-counterclaims in state court, the defendant could argue that the action was barred by res judicata in that plaintiff was compelled to assert such claims in federal court and failed to do so.  *Id.*  "To escape from this technical bog," the court in *Crest Auto* reinstated the plaintiff's claims as counter-counterclaims *sua sponte*. *Id; see also Great Lakes Rubber Corp. v. Herbert Cooper Co.*, 286 F.2d 631, 634 (3d Cir. 1961) (holding that after dismissal of the original complaint for lack of federal jurisdiction, and retention of a counterclaim because of independent grounds of federal jurisdiction, the essential allegations of the original complaint could be raised as a compulsory counterclaim to the retained claim because there was ancillary jurisdiction over the compulsory counterclaim.); *St. Paul Fire & Marine Ins. Co. v. Casualty Reciprocal Exchange*, 118 F.R.D. 480, 483 (W.D. Ark. 1987) (opining in dicta that "an original plaintiff may reassert its dismissed claim as a compulsory counterclaim to a retained counterclaim").

would ordinarily be expected to resolve them in one judicial proceeding," and judicial economy will be served by hearing the parties' claims in one proceeding. *Id.* at 557. This should include Plaintiffs' claims against Health Choice, which, by virtue of the wrongful acts it coordinated with Cigna, remains an essential party to this dispute.

The Court has ample procedural means to allow Plaintiffs' reasserted claims against Health Choice to proceed. The Court may reconsider its April 16th Order declining to exercise supplemental jurisdiction over Plaintiffs' state law claims given that the Court determined in its September 30th Order to maintain jurisdiction over this action. *See* Fed. R. Civ. P. 60(b). The Court may also allow Plaintiffs' reasserted claims as amendments under Rule 15. And Rule 21 allows the court "at any time, on just terms, [to] add or drop a party." These rules are construed liberally so that claims are decided on their merits—not by procedural gamesmanship. 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1029 (3d ed. 2015) ("The federal rules are designed to discourage battles over mere form and to sweep away needless procedural controversies that either delay a trial on the merits or deny a party his day in court because of technical deficiencies.").

Health Choice cannot argue it will be unduly prejudiced by allowing Plaintiffs' claims to proceed: Health Choice has not been dismissed from this action, its attorneys have remained on the parties' pleadings, discovery is in its early stages, and Health Choice will have every opportunity to defend itself on the merits of Plaintiffs' claims. On the contrary, not allowing Plaintiffs' claims will greatly prejudice Plaintiffs, forcing them to bring a separate state court action against Health Choice and litigate their related claims against Health Choice and Cigna in separate forums. Health Choice was a proper defendant to Plaintiffs' original Complaint, and

nothing has occurred during the course of this litigation to alter Health Choice's status as a proper defendant.  Health Choice's motion to strike should therefore be denied.

## II.    Plaintiffs Have Pled Valid Claims Against Health Choice.

In the alternative to its motion to strike, Health Choice also argues that each of Plaintiffs' claims against it should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  As the Court is aware, in considering a Rule 12(b)(6) motion to dismiss, the Court must treat Plaintiffs' factual allegations as true and draw all reasonable inferences in favor of Plaintiffs. *See, e.g.*, *Whitmore v. Harrington*, 204 F.3d 784, 784 (8th Cir. 2000).  To survive a motion to dismiss at the initial pleading stage, Plaintiffs need only plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted).  Plaintiffs have more than adequately pled each element of each cause of action alleged.

### a.    Plaintiffs' TCPA Claim is Timely.

Health Choice first asserts that Plaintiffs' TCPA claim must be dismissed because, based on the pleadings, the claim is time-barred under the one-year statute of limitation period set forth in the statute.  Health Choice, however, completely ignores the operation of the Arkansas and Tennessee saving statutes.[5]  It is plain, based on the operation of either saving statute, that Plaintiffs' TCPA claim is timely.

Plaintiffs filed their original Complaint alleging a TCPA claim against Health Choice on June 4, 2014.  This claim was timely when filed.  However, the Court dismissed the claim without prejudice on April 16, 2015 when the Court decided not to exercise supplemental

---

[5]   While Health Choice cites two cases in support of its argument that Plaintiffs' TCPA claim is time barred, neither of those cases involved the application of a saving statute.  *See generally Schmank v. Sonic Auto., Inc.*, 2008 WL 2078076 (Tenn. Ct. App. May 16, 2008); *Lambdin v. Aerotek Commercial Staffing*, 2011 WL 3794090 (E.D. Tenn. Aug. 25, 2011).

jurisdiction over Plaintiffs' state law claims.  Both the Arkansas and Tennessee saving statutes allow a plaintiff to re-file a claim previously dismissed without prejudice within one year of the date of dismissal.  Ark. Code Ann. § 16-56-126; Tenn. Code Ann. § 28-1-105.  Plaintiffs re-filed their TCPA claim against Health Choice on October 28, 2015, well within the one-year savings period.  Plaintiffs' reasserted TCPA claim is therefore timely.

Health Choice relies on two allegations in Plaintiffs' original Complaint to argue Plaintiffs' TCPA claim is somehow time-barred.  First, Health Choice points to a November 4, 2013 phone call between Dr. Hood and Cigna referred to in Plaintiffs' Complaint as triggering the running of the statute of limitations.  (ECF No. 113 at 10 (citing ECF No. 101 ¶ 62.) Assuming for the sake of argument this phone call did trigger the statute of limitations, Plaintiffs filed their original Complaint on June 5, 2014, within one year of the date of the call.  Plaintiffs' reasserted TCPA claim, therefore, would not be time-barred under the saving statutes cited above.

Second, Health Choice misquotes and mischaracterizes a single paragraph of Plaintiffs' complaint to argue Plaintiff's TCPA claim is somehow untimely.  Health Choice argues that letters sent by Aetna, a health insurance carrier that is not a party to this action, on January 25, 2013 triggered the statute of limitations.  (*See* ECF No. 113 at 10, n.5. (citing ECF No 1. ¶ 60.) Plaintiffs referred to these letters in paragraph 60 of their Complaint. As previously explained in Plaintiffs' Response Brief to Health Choice's original Motion to Dismiss (*see* ECF No. 60 at 21), Health Choice distorts this allegation in an attempt to argue that it should have been apparent to

Plaintiffs upon receipt of the Aetna letters that Health Choice had engaged in deceptive trade practices.[6]  The actual language of Plaintiffs' Complaint reads:

> These letters were sent, however, before Tri State had ever opened its doors for operation, indicating that Aetna had been directed to send the letters.  This is apparent because internal review would have shown no claims submitted for medical services performed at Tri State.  Upon information and belief, Aetna sent these letters based on an agreement with Health Choice or Methodist.

(ECF No. 1 ¶ 60.)  This allegation does not demonstrate that Plaintiffs knew or should have known from Aetna's January 25, 2013 letter that they had a possible TCPA claim against Health Choice, and provides no basis to dismiss the claim on statute of limitations grounds.

Furthermore, Tennessee applies the discovery rule to the TCPA's statute of limitations. *Montesi v. Nationwide Mut. Ins. Co.*, 970 F. Supp. 2d 784, 789 (W.D. Tenn. 2013).  "[T]he time at which a plaintiff discovers or reasonably should discover a cause of action is typically a question of fact for the trier of fact to decide."  *Id.*  Dismissal is appropriate only when the undisputed evidence can lead to only one conclusion.  *Id.* at 789-90.  This is not such a case. Nothing in paragraph 60 of the Complaint or any other of Plaintiffs' allegations in their Counter-Counterclaims and Third-Party Claims could lead to the undisputed conclusion that the TCPA claim is untimely. *See id.* at 790 (denying motion to dismiss TCPA claim on statute of limitations grounds because the accrual of plaintiffs' claim could not be determined from the face of the complaint).  As such, Health Choice's motion to dismiss Plaintiffs' TCPA claim should be denied.[7]

---

[6]   Plaintiffs omitted this allegation from their Counter-Counterclaims and Third-Party Claims in part because of Health Choice's mischaracterization of the allegation in its earlier Motion to Dismiss, and the fact that it does not bear directly on Plaintiffs' direct claims against Health Choice itself.

[7]   Health Choice's new motion to dismiss incorporates by reference its argument in its prior motion that it could not violate the TCPA because it is a federally authorized PHO managed care network.  (ECF No. 113 at 10 n.6.) Plaintiffs incorporate by reference their response to this argument from their prior response brief.  (See ECF No. 60 at 20-22.) Health Choice's deceptive conduct is not protected by federal law; the fact Health Choice is a PHO managed care network does not shield it from liability for wrongful conduct.

**b.    Plaintiffs Allege Valid Tortious Interference Claims against Health Choice.**

Health Choice tortiously interfered with Plaintiffs' contracts and business expectancies with their patients, their referring physicians, and Cigna. Under Arkansas law, "[t]he elements of tortious interference are (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. [Arkansas] law also requires that the conduct of the defendants be at least 'improper[.]'" *Baptist Health v. Murphy*, 373 S.W.3d 269, 281-82 (Ark. 2010) (internal citations and quotations omitted).

**1.    Health Choice has tortiously interfered with Plaintiffs' relationships with patients and referring physicians.**

Plaintiffs had contracts and valid business expectancies with their patients, as well as with physicians who referred patients for treatment. (ECF No. 101 ¶ 120.)  Health Choice, in concert with Cigna, undertook a series of wrongful actions to discourage patients from treating with Plaintiffs and to prevent other physicians from referring patients to Plaintiffs. (*Id.* ¶¶ 121-127.)  Plaintiffs lost patients, and therefore business, because of Health Choice's tortious conduct. (*Id.* ¶ 128.) Indeed, Health Choice and Cigna designed these actions to drive Tri State out of business and harm Physician Plaintiffs' practices. (*Id.* ¶¶ 122-23.)

Health Choice argues Plaintiffs' claim must fail because Plaintiffs cannot show Health Choice interfered "with their ability to treat patients at Tri-State."  Health Choice cites to the Court's ruling on Plaintiffs' Sherman Act claims in support of this argument, improperly conflating the elements of a Sherman Act claim with those of a tortious interference claim. (ECF. 113 No. 12.)  Health Choice's argument about Plaintiffs' *ability* to treat patients misses

12

the point.   Health Choice took affirmative steps to pressure patients to stop treating with Plaintiffs and to pressure referring physicians to stop referring patients. (ECF No. 101 ¶¶ 52-55, 59-62, 66-67, 123-127.)  Health Choice's conduct, as alleged by Plaintiffs, meets any reasonable definition of tortious interference.

Health Choice next attempts to avoid liability by asserting that, because a party cannot be held liable for interfering with its own contract, *Baptist Health*, 373 S.W.3d at 283, Plaintiffs' claim for tortious interference with contract must be dismissed.   Health Choice asserts that it is somehow a party to every contract, potential contract, or business expectancy Plaintiffs had or could have with their patients or referring physicians. (*See* ECF No. 113 at 11-12.)   Health Choice's argument is not supported by the facts of this case or Arkansas law because it is not, in fact, a party to the contracts and business expectancies Plaintiffs have with their patients or referring physicians.

"[A]n action for tortious interference with a contractual relationship is based upon a defendant's conduct toward a third party."  *Baptist Health*, 373 S.W.3d at 282.  The Arkansas Supreme Court has recognized that patient-physician and referring physician relationships may form the basis for tortious interference claims.  *Id.* at 282 (upholding trial court finding physicians had contractual relationships with their patients, the patient-physician relationship carries a reasonable business expectancy, and physicians' relationship with referring physicians carries a reasonable business expectancy).  In *Baptist Hospital*, the hospital, similar to Health Choice here, argued it was a party to the contracts and business expectancies between the physician-plaintiffs and their patients and referring physicians.  Baptist Hospital averred it could not be liable for tortious interference because it was "not a stranger 'to the interwoven relationship whereby a Plaintiff would treat a patient at a Baptist Facility.'" *Id.* at 283.

13

The Arkansas Supreme Court flatly rejected this argument.  The court pointed out Arkansas has not adopted the "stranger doctrine" under which a party who merely has an "interest" in a contractual relationship cannot be held liable for tortious interference. *Id.* at 283. The court specifically cautioned, "we are concerned that [the stranger doctrine's] adoption could have far-reaching consequences regarding the viability of tortious-interference claims. Defendants in tortious-interference claims are often 'interested' in the contracts in which they are alleged to have interfered.  Application of the doctrine could therefore significantly extend immunity in tortious interference cases." *Id.* at 283 n.3.  The court therefore indicated immunity in tortious interference cases should be *limited* to situations in which the defendant is a direct party to a contract -- which is plainly not the case with Health Choice and the contracts and expectancies Plaintiffs have with their patients and referring physicians.

Plaintiffs have sufficiently pled that Health Choice tortiously interfered with their relationships with their patients and referring physicians.  Plaintiffs had valid contracts and business relationships with their patients and referring physicians, and Health Choice was not a direct party to these relationships.  (ECF No. 101 ¶ 120.)  Health Choice, together with Cigna, undertook an effort to intimidate patients and referring physicians to terminate their relationships with Plaintiffs.  (*Id.* ¶ 121-27.)  The conduct of Health Choice was wrongful and damaged Plaintiffs' business.  (*Id.* ¶ 128.)  Based on these allegations, Health Choice's motion to dismiss Count II of Plaintiffs' Counter-Counterclaims and Third-Party Claims should be denied.

## 2. Health Choice tortiously interfered with Drs. Crosby and Hood's relationship with Cigna.

Drs. Crosby and Hood allege a tortious interference claim against Health Choice for interfering with their business expectancy with Cigna to treat Cigna insured patients in Arkansas. Health Choice refused to allow Cigna to contract directly with Crosby and Hood to treat Cigna

14

patients in Arkansas even though Health Choice's service area does not include Arkansas.  (*Id.* ¶ 113.)  Health Choice acted with malice and ill-intent to stymie competition and ruin Crosby's and Hood's practices.  (*Id.* ¶ 114.)

It is true, as Plaintiffs allege, that Cigna demands that "any physician seeking to join Cigna's network in certain counties in Tennessee and Mississippi must be a member of Health Choice's joint venture partner MetroCare, and must participate with Cigna through Health Choice."  (ECF No. 101 ¶ 8.)

But by its terms, Cigna's requirement that a physician participate in MetroCare applies only to "certain counties in Tennessee and Mississippi."  (ECF No. 101 ¶ 8.)  This is because Health Choice's service area does not include Arkansas.  (*Id.* ¶ 113.)  Crosby and Hood therefore had valid business expectancies to contract with Cigna to treat patients *in Arkansas*.  Yet, when Dr. Hood, a primarily Arkansas practitioner, attempted to contract directly with Cigna, he was told he could only contract with Cigna through Health Choice.  (*Id.*)  Health Choice refused to allow Cigna to contract directly with Crosby and Hood solely to stymie competition and hurt Crosby's and Hood's practices.  (*Id.* ¶ 114.)

Crosby and Hood had valid business expectancies to treat Cigna patients in Arkansas. (*Id.* ¶ 107.) Indeed, there was a statutory expectancy under the Arkansas Patient Protection Act. (*Id.* ¶¶ 143-46.)  Health Choice was aware of these expectancies and sought to thwart its potential competition. (*Id.* ¶¶ 109-11,114.)  Health Choice therefore intentionally prevented Cigna from directly contracting with Crosby and Hood to treat patients in Arkansas, thereby damaging these physicians' practices. (*Id.* ¶¶ 116-17.) Health Choice's conduct was improper, especially considering its service area does not include Arkansas. The practical effect of Health Choice's conduct was to force Arkansas patients to receive treatment at Health Choice's preferred

facilities in Tennessee. These actions by Health Choice constitute tortious interference, and, accordingly, Count I of Plaintiffs' Counter-Counterclaims and Third-Party Claims should not be dismissed.

> **c.      Plaintiffs Have Adequately Pled Conspiracy Claims Against Health Choice.**

Finally, Health Choice asserts Plaintiffs' conspiracy claims must fail because Plaintiffs have failed to allege any underlying wrongful conduct.  (ECF No. 113 at 13.)  As demonstrated above, however, Plaintiffs have alleged valid tortious interference claims against Health Choice. These tortious interference claims provide an adequate basis for Plaintiffs' conspiracy claims. *See, e.g.*, *Southeastern Distrib. Co. v. Miller Brewing Co.*, 237 S.W.3d 63, 75-76 (Ark. 2006) (holding plaintiff's tortious interference claim provided an actionable tort to support civil conspiracy claim).  Accordingly, Health Choice's motion to dismiss Plaintiffs' conspiracy claims should likewise be denied.

<u>**CONCLUSION**</u>

Based on the foregoing, the Court should deny Health Choice's Motion to Strike and, in the Alternative, Motion to Dismiss.

Respectfully submitted,

/s/ Douglas F. Halijan
Douglas F. Halijan  (BPR # 16718)
Molly Glover  (Tenn. Bar No. 16113) (admitted pro hac vice)
Shea B. Oliver (Tenn. Bar No. 29330) (admitted pro hac vice)
Charles S. Higgins (Tenn. Bar No. 30184) (admitted pro hac vice)
130 North Court Avenue
Memphis, TN  38103
Phone: (901) 524-5000
Fax: (901) 524-5024
dhalijan@bpjlaw.com
mglover@bpjlaw.com
soliver@bpjlaw.com
chiggins@bpjlaw.com

Scott Poynter (AR # 90077)
STEEL, WRIGHT, & COLLIER, PLLC
400 W. Capitol Ave., Suite 2910
Little Rock, AR 72201
Phone: (501) 251-1587
scott@poynterlawgroup.com

**ATTORNEYS FOR PLAINTIFFS**


### CERTIFICATE OF SERVICE

I, Douglas F. Halijan, hereby certify that on this 11th day of December, 2015, I filed the foregoing with the Clerk of the Court and that the ECF system will send notification of filing to all counsel of record.

/s/ Douglas F. Halijan