## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

TRI STATE ADVANCED SURGERY
CENTER, LLC, GLENN A. CROSBY II, M.D.,
F.A.C.S., and MICHAEL HOOD, M.D.

PLAINTIFFS AND COUNTER-COUNTERCLAIM-PLAINTIFFS

v.                                                          Case No. 3:14-CV-00143-JM

HEALTH CHOICE, LLC,
and CIGNA HEALTHCARE OF TENNESSEE, INC.

DEFENDANTS AND COUNTER-COUNTERCLAIM DEFENDANTS
-----------------------------------------------------------------------------------------------------------------------
CONNECTICUT GENERAL LIFE INSURANCE
COMPANY, CIGNA HEALTH AND
LIFE INSURANCE COMPANY, and CIGNA
HEALTHCARE OF TENNESSEE, INC.,

COUNTERCLAIM-PLAINTIFFS

v.

SURGICAL CENTER DEVELOPMENT, INC.
D/B/A SURGCENTER DEVELOPMENT, and
TRI STATE ADVANCED SURGERY CENTER, LLC

COUNTERCLAIM-DEFENDANTS

### REPLY IN SUPPORT OF CIGNA'S
### MOTION TO DISMISS COUNTER-COUNTERCLAIMS

KIRKLAND & ELLIS LLP                          QUATTLEBAUM, GROOMS & TULL PLLC
601 Lexington Avenue                          111 Center Street, Suite 1900
New York, NY  10022                           Little Rock, AR  72201
Telephone: (212) 446-4800                     Telephone: (501) 379-1700
Facsimile: (212) 446-4900                     Facsimile: (501) 379-1701
joshua.simon@kirkland.com                     jtull@qgtlaw.com
warren.haskel@kirkland.com                    cpekron@qgtlaw.com
dmitriy.tishyevich@kirkland.com               ryounger@qgtlaw.com

**PRELIMINARY STATEMENT**

Cigna moved to dismiss Plaintiffs' counterclaims-in-reply because they are procedurally improper and legally deficient. Plaintiffs' Opposition does not rebut either ground. Plaintiffs offer no excuse for why they did not file these claims sooner, even though Plaintiffs initiated this action and then moved to amend their complaint months after Cigna had filed counterclaims. Whether viewed as impermissible counterclaims-in-reply to Cigna's compulsory counterclaims or a second motion for leave to amend their dismissed complaint, Plaintiffs' latest set of claims is procedurally improper. For that reason alone, these claims should be dismissed.

The many insufficiencies in the counterclaims-in-reply make clear why Plaintiffs held these claims back. As Cigna's opening brief showed, Plaintiffs' claims are plagued by omission of key elements or outright contradictions in what Plaintiffs have pled. Plaintiffs try to excuse these failings as mere "technicalities" that exceed the standard of Rule 8. But there is nothing technical about requiring Plaintiffs to comply with procedural rules and to allege plausible facts to support each element of their claims. Plaintiffs have done neither.

**ARGUMENT**[1]

**I.    Plaintiffs' Counter-Counterclaims Are Procedurally Improper.**

Plaintiffs do not dispute that Cigna's counterclaims are compulsory. Instead, Plaintiffs cite a few cases from other circuits (including one over a half-century old) to argue that a plaintiff may file counterclaims-in-reply in response to compulsory counterclaims. (*See* Opp. at 4 (citing *Crest Auto Supplies, Inc. v. Ero Mfg. Co.*, 246 F. Supp. 224, 229 (N.D. Ill. 1965).) But as Cigna's brief demonstrated, this is not the view of courts in ***this*** circuit, which allows counterclaims-in-reply only "in response to permissive counterclaims." *See, e.g., Lincoln Sav.*

---

[1] Cigna uses the following abbreviations. "Br." refers to Cigna's Brief in Support of Motion to Dismiss Counter-Counterclaims. "Opp." refers to Plaintiffs' Response in Opposition to Cigna's Motion to Dismiss. Unless otherwise noted, all emphasis has been added, and all citations and quotation marks omitted.

1

*Bank v. Open Solutions, Inc.*, 956 F. Supp. 2d 1032, 1038 (N.D. Iowa 2013); *Feed Mgmt. Sys., Inc. v. Brill*, 518 F. Supp. 2d 1094, 1096 (D. Minn. 2007); *Erickson v. Horing*, 2000 WL 35500986, at *10 (D. Minn. 2000). Plaintiffs also do not explain why the Court should deviate from this sensible rule, which prevents inefficiencies that would result from allowing plaintiffs to hold back counterclaims they could have raised at the outset of litigation but did not.

Recognizing that Eighth Circuit case law goes against them, Plaintiffs now ask the Court to treat their counterclaim-in-reply as a motion to amend under Rule 15. (Opp. at 5-6.) That ship has sailed. Plaintiffs have already filed a motion to amend months ago, in May 2015, and that motion is pending. (Dkt. 80.) Plaintiffs do not explain why they did not seek leave to add these claims back then. Moreover, Plaintiffs' state-law counterclaims-in-reply are essentially a reformulation of their dismissed antitrust claims, which the Court already held are "not likely to be cured by further pleading." (Dkts. 78, 79 at 11-12.) And Plaintiffs do not dispute that their new ERISA claims are based on conduct that goes as far back as June 2014—predating the start of this litigation, and long before they filed their motion to amend in May 2015. The Court should reject Plaintiffs' attempt to push their counterclaims-in-reply through the backdoor.

**II.     The Conspiracy-Based Claims (Counts II, IV-VI) Fail.**

**A.     The Conspiracy-Based Claims Are Barred By *Res Judicata*.**

Of the four elements of res judicata, the only one Plaintiffs challenge is whether their conspiracy-based claims "arise[] out of the same nucleus of operative facts" as the dismissed antitrust claim. (*See* Opp. at 14.) Yet Plaintiffs offer no distinction between allegations that underlie their dismissed antitrust claim and the conspiracy counterclaims-in-reply. (*Compare* Dkt. 1, Compl. ¶¶ 75-77 (antitrust allegations) ("The agreement between Health Choice and Cigna, in addition to the agreements between Health Choice and other insurers, to dry up referrals to Tri State in an attempt to put Tri State out of business") *with* Dkt. 101, CC ¶¶ 136-37

2

(conspiracy allegations) ("Health Choice and Cigna wrongfully conspired to drive Tri State out of business"); *see also* Br. at 6 & n.4 (describing additional similarities).)

Instead, Plaintiffs reshuffle the various legal theories they have assigned to those facts—antitrust, conspiracy, tortious interference—to try and avoid res judicata. But that is just what res judicata forbids: even "where a plaintiff fashions a new theory of recovery or cites a new body of law that was arguably violated by a defendant's conduct, res judicata will still bar the second claim if it is based on the same nucleus of operative facts as the prior claim." *Lane v. Peterson*, 899 F.2d 737, 744 (8th Cir. 1990). So the dispositive issue is not whether the Court dismissed Plaintiffs' antitrust claim because they failed to allege a *per se* violation of the Sherman Act and a proper geographic market. (Opp. at 14.) Rather, what matters is that the conduct Plaintiffs alleged to support that theory—an alleged agreement by Cigna and Health Choice to put Tri State out of business—is the same conduct that Plaintiffs allege gives rise to their state-based conspiracy claims. *See King v. Hoover Group, Inc.*, 958 F.2d 219, 223 (8th Cir. 1992) ("[R]es judicata bars relitigation not only of those matters that were actually litigated, but also those that ***could have*** been litigated in the earlier proceeding."). Plaintiffs' attempt to escape res judicata through new labels is unavailing. *See Lane*, 899 F.2d at 744.

      **B.**      **The Conspiracy-Based Counts Fail to State a Claim.**
           **1.**      **The Tortious Interference Claim (Count II) Fails.**

In its opening brief, Cigna showed that Plaintiffs' tortious interference claim failed because of the well-established rule that "[a] party to a contract . . . cannot be held liable for interfering with the party's own contract." *Baptist Health v. Murphy*, 373 S.W.3d 269, 283 (Ark. 2010) (accepting the "common proposition that a party to a contract and its employees and

3

agents, acting within the scope of their authority, cannot be held liable for interfering with the party's own contract.").[2]

Instead of addressing that deficiency, Plaintiffs assert that "Cigna is not a direct party to the contracts and expectancies that Physician Plaintiffs and Tri State enjoy with their own patients and the other physicians that refer patients to them." (Opp. at 7.) But Plaintiffs are wrong because Cigna *is* a direct party to contracts both with Tri State's Cigna-insured patients (*i.e.*, Cigna's plans), as well as contracts with Cigna in-network doctors who refer patients to Tri State, like Dr. Crosby and Dr. Hood. (*See* Dkt. 124, Br. at 3 (citing to the provider agreements of Dr. Crosby and Dr. Hood appended to the motion as Exs. A-C).) Indeed, Plaintiffs admit this in their pleading. (*Id.* at 7 (citing to CC ¶¶ 17-19).) Thus, unlike the defendant in *Baptist Health*—who merely served as the occasional location for a physician's treatment of a patient and did not have a contract with the plaintiff physicians—Cigna is a direct party to the very contracts and relationships about which Tri State complains.

Because Cigna has a direct contract with its members and in-network physicians, *Marion Healthcare LLC v. South Illinois Healthcare* is squarely on point. 2013 WL 4510168, at *14-15 (S.D. Ill. Aug. 26, 2013). There, the court dismissed a tortious interference claim where plaintiff claimed that an insurer "improperly caused in-network physicians and plan participants, with whom [insurer] had an existing, ongoing, relationship, not to use [plaintiff's] out-of-network surgical center." *Id.* at *15. Relying on neither the "stranger doctrine" nor the "interwoven relationship" doctrine, the court held that because each "network physician or patient covered by

---

[2] As Health Choice argues in its Reply, although Plaintiffs primarily rely on *Baptist Health* (an Arkansas case), a choice-of-law analysis would be needed to determine if Arkansas or Tennessee law governs the tortious interference claims. (Dkt. 134 at 6 & n.5.) Tennessee law appears to be silent on the scope of the "stranger doctrine" outside the context of claims against corporate employees of a corporation accused of interfering with their employer's contract. *See Nelson v. Metric Realty*, 2002 WL 31126649, at *9, 16 (Tenn. Ct. App. Sept. 26, 2002) (affirming decision holding that advisors to company were "not strangers to the contract, and did not act in such a way as to be treated as strangers to the contract"). Regardless, Plaintiffs' claims are meritless under either state's law.

4

[insurer] has an existing contractual relationship with [insurer], and plaintiff, as a service provider, could only be paid for services rendered by or to these individuals through its existing contractual agreements," then "[i]n this scenario, [insurer] cannot be a non-party to the business expectancy relationships alleged by plaintiff." *Id.*; *see also J.K.P. Foods, Inc. v. McDonald's Corp.*, 420 F. Supp. 2d 966, 969-70 (E.D. Ark. 2006) (dismissing claim that McDonald's tortiously interfered with sale of McDonald's restaurants because, while McDonald's was not a party to sale agreement between Franchisee and a third party, McDonald's was a party to the franchise agreement). Thus, the general rule that a party to a contract cannot be liable for tortious interference applies, and the Court should dismiss Plaintiffs' tortious interference claim.

Plaintiffs also fail to address the other independent reason their tortious interference claim fails: they have not sufficiently alleged any "improper" conduct by Cigna. Plaintiffs admit that Cigna terminated their contracts because it considered their referrals to out-of-network Tri State a breach of Cigna's provider agreements, which require referring patients to in-network providers. (*See* CC ¶¶ 45, 56.) And Plaintiffs point to no case law to suggest that when a party to a contract exercises its contractual right to terminate in the face of repetitive breaches by the other party, this somehow amounts to "improper conduct" that can support a tortious interference claim. (*See* Opp. at 8-9.) In fact, as Cigna showed in its brief, the Eighth Circuit cases go the other way. *See Roudachevski v. All-Am. Care Ctrs., Inc.*, 2011 WL 1213087, at *7 (E.D. Ark. Mar. 31, 2011) (rejecting physician's argument that a nursing care facility tortiously interfered by improperly terminating his privileges, where the physician "refused to follow [defendants'] legitimate policies and procedures"), *aff'd*, 648 F.3d 701 (8th Cir. 2011). Ultimately, despite Plaintiffs' conclusory allegations that Cigna's actions were meant "to cripple Plaintiffs' business and eliminate competition for Methodist Healthcare" (Opp. at 9), Plaintiffs cannot overcome

their own allegations that Cigna exercised its right to hold its in-network providers to their contractual obligations in the face of Tri State's fee-forgiving scheme. Since Cigna's conduct was not "improper," the tortious interference claim should be dismissed.[3]

## 2. The Arkansas Patient Protection Act Claim (Count VI) Fails.

Plaintiffs do not contest the "general rule" that "statutes have no effect except within the state's own territorial limits." *Hetman v. Schwade*, 317 S.W.3d 559, 564 (Ark. 2009). Instead, Plaintiffs argue that Cigna's actions ***in Tennessee*** bring this case into APPA's jurisdictional ambit, and contend that *Chalmers v. Toyota Motor Sales USA, Inc.*, 935 S.W.2d 258 (Ark. 1996), is inapposite. Plaintiffs misconstrue *Chalmers*. There, a car dealer in West Memphis, Arkansas claimed that his Tennessee-based car distributor gave more favorable pricing to dealerships across the river in Memphis, Tennessee. The car dealer argued that "the Arkansas-Tennessee distribution boundary" was a "discriminatory practice" that gave the Memphis dealerships "an unfair advantage because of a dual pricing policy between the two regions" in violation of the Arkansas Unfair Practices Act. *Id.* at 260. But despite plaintiff's allegation that his Arkansas car dealership was hurt by a policy originating out of Tennessee, the Arkansas Supreme Court dismissed the claim as an attempt to apply the Arkansas statute outside its territorial limits. *Id.*

The same outcome follows here. Plaintiffs allege that Cigna is a Tennessee company, there are no Methodist facilities in Arkansas, and there are no in-network ambulatory surgery centers in Arkansas near Tristate. (Opp. at 10.) And even if Physician-Plaintiffs were impacted in Arkansas, so too was the Arkansas car dealer in *Chalmers*. The fact remains that the alleged "wrong" occurred in Tennessee: in *Chalmers*, the dual pricing scheme originating at Tennessee car dealerships, and here, Cigna Healthcare of Tennessee's in-network referral policy. Indeed, Plaintiffs plead a Tennessee Deceptive Trade Practices claim against HealthChoice. (*See* CC

---

[3] Notably, despite their three rounds of pleadings, Plaintiffs have never alleged that Cigna breached their contracts.

¶¶ 130-134.)  The absence of such a claim against Cigna does not allow Plaintiffs to extend the reach of an Arkansas statute across its borders.

Plaintiffs also misconstrue their own allegations to try and escape another fatal pleading defect.  APPA protects only those providers who are "willing to accept the health benefit plan's operating terms and conditions."  Ark. Code Ann. § 23-99-204(a)(3).  But Plaintiffs' pleadings demonstrate they are *not* willing to meet Cigna's terms that prohibit out-of-network referrals. (*See* CC ¶ 146 ("[Physician-Plaintiffs and Tri State] are willing to accept Cigna's operating terms and conditions *except for* the terms and conditions which are being wrongfully dictated by Health Choice.").)  Plaintiffs contend that Cigna terminated Plaintiffs-Physicians not because they repeatedly breached the terms of their provider agreements, but because they refused to sign letters assuring Cigna that *that they would not continue to breach the contract*.  (*See* Opp. at 12.)  Plaintiffs' suggestion—that Cigna giving Plaintiffs-Physicians another chance to comply with their contractual obligations somehow brings Cigna's termination of them outside the terms of their contracts—is nonsensical.  And that Plaintiffs refused to assure Cigna they would stop breaching their contracts only emphasizes they were not willing to accept Cigna's terms.

### 3. The Conspiracy Claims (Counts IV and V) Fail.

A claim for conspiracy is not actionable by itself:  a plaintiff can recover for damages resulting only from another "independently actionable" wrongdoing committed in furtherance of the alleged conspiracy.  (*See* Br. at 9.)  Because Plaintiffs' tortious interference and APPA claims fail, their conspiracy claims should be dismissed as well.

Plaintiffs' conspiracy also fails for the separate reason that they can point to no "allege[d] facts showing that [Cigna's] actions, even if true, were illegal, immoral, improper, or oppressive." (*Id*. at 9-10 (citing *Gibson v. Regions Fin. Corp.*, 2008 WL 110917, at *8 (E.D. Ark. Jan. 9, 2008), *aff'd in part*, 557 F.3d 842 (8th Cir. 2009)).)  Plaintiffs' only rebuttal to this

7

deficiency is to impute an ulterior motive for why Cigna enforced its contracts' prohibitions on out-of-network referrals. But Plaintiffs offer no authority that the exercise of contractual rights—whatever the reason—can give rise to a conspiracy claim. In fact, the case law shows otherwise. *See Acre v. Spindletop Oil & Gas Co.*, 2009 WL 4016116, at *4 (E.D. Ark. Nov. 18, 2009) (dismissing conspiracy claim where party was acting on legal right to cancel lease).

## III. Tri State's Reimbursement Claims (Counts VII and X-XII) Should Be Dismissed.

### A. Tri State Has Failed to Plausibly Allege Assignments.

Tri State dedicates two pages of its Opposition to assignments (Opp. at 15-17) but fails to respond to Cigna's basic point: whether an assignment has been pled is "a legal conclusion that need not be accepted without supporting factual allegations." *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz. Inc.*, 2014 WL 3349920, at *8 (D. Ariz. July 9, 2014). It is therefore not enough for Tri State to assert that it has "assignments [that] confer standing on Tri State to bring this action with regard to both ERISA and non-ERISA plans." (CC ¶ 33.)[4] That is a bald legal conclusion that, unaccompanied by the actual substance of those assignments, precludes the Court from determining their validity and scope.

Tri State's efforts to distinguish Cigna's cases are unavailing. Tri State contends that in *HM Compounding Services, Inc. v. Express Scripts, Inc.*, 2015 WL 4162762 (E.D. Mo. July 9, 2015), the plaintiff failed "to allege *any* facts regarding assignment." (Opp. at 16.) But in fact, the plaintiff there alleged that it was "an ERISA 'beneficiary' because it ha[d] the right to directly receive the benefits of its patients" and was "reimbursed . . . directly" for its services by

---

[4] Tri State's attempt to distinguish *DB Healthcare* as involving a non-assignment clause (Opp. at 16) is beside the point. Cigna cited that case for the basic proposition that the sufficiency of an assignment is a legal conclusion (Br. at 10), which has nothing to do with non-assignment clauses. And Tri State's attempt at distinguishing *Prof'l Ortho. Assocs. v. Excellus Blue Cross Blue Shield*, 2015 WL 4387981 (D.N.J. July 15, 2015) makes no sense, since Tri State concedes that one reason that the ERISA claim in *Excellus* failed was because plaintiff's allegations "failed to 'illuminate the extent or boundaries of [the] purported assignment'" (Opp. at 17 n.6)—precisely what Cigna said in its brief. (Br. at 11 (quoting this same language).)

defendant.  *Id.* at *11.  What the plaintiff in *HM Compounding* did ***not*** do was plead the actual language of its purported assignments, warranting its claim's dismissal, *id.*, and Tri State's failure warrants the same result.  The same was true in *Midwest Special Surgery, P.C. v. Anthem Insurance Companies*, 2010 WL 716105 (E.D. Mo. Feb. 24, 2010), where, contrary to Tri State's contention that the providers' assignments were not at issue (Opp. at 16), the court dismissed the providers' ERISA claims because they "contend[ed] that they were assignees" but did not "support these [and other] allegations with any facts."  *Id.* at *2.

Finally, while Tri State argues that requiring it to plead out the assignment language would impose a "higher pleading standard" (Opp. at 16), that simply is not the case.  If Tri State's patients indeed sign forms with assignment clauses (CC ¶ 33), then Tri State could have easily pled out the language of those assignments—but it did not.  And courts regularly require plaintiffs to plead the assignment language before finding that they may pursue their patients' ERISA claims—precisely so that the court can determine whether those assignments are valid and if they actually cover the claims at issue.  *See, e.g.*, *Sanctuary Surgical Ctr., Inc. v. Aetna, Inc.*, 2012 WL 993097, at *2 (S.D. Fla. Mar. 22, 2012) (acknowledging plaintiffs' allegation that their patients "assigned to Plaintiffs benefits," but holding that "without access to the language of the assignments, the Court cannot evaluate their legal effect.").

The precise scope of Tri State's assignment is particularly important here, since Tri State brings not only an ERISA benefits claim but also breach of contract, breach of fiduciary duty, and ERISA non-disclosure claims.  *See Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1292 (9th Cir. 2014) (provider who was "assigned only the right to bring claims for payments of benefits . . . has no right to bring claims for breach of fiduciary duty.").  The Court cannot assess whether Tri State actually has the right to pursue each

9

of these claims based on Tri State's conclusory assertion that it was assigned the "right to appeal benefit denials *and to sue*" (CC ¶ 33). *See Emergency Physicians of St. Clare's v. United Health Care*, 2014 WL 7404563, at *3-4 (D.N.J. Dec. 29, 2014) (where plaintiff alleged it had been "assigned certain rights, including but not limited to the right to submit medical bills," the court declined to "speculate as to the scope of the other 'certain rights' that Plaintiff has alleged."). And though Tri State now asserts that its assignments "include expressly ERISA breach of fiduciary duty claims," as well as the right to "pursue any legal or administrative claims" and "to access any plan documents required to claim benefit claims" (Opp. at 17 n.7), this is unsupported by allegations (*id.*), and the Counter-Counterclaims in fact allege no such thing. (*See* CC ¶ 33.)

### B. Tri State Fails to Provide Cigna with Notice of the Claims and Plans at Issue.

As Cigna pointed out in its brief, Tri State has failed to provide fair notice of what benefit claims are actually in dispute, under which plans, what the disputed amounts are, and which claims are subject to ERISA. (*See* Br. at 13.) Tri State's response is to attack a strawman, claiming that it does not need to "list the numerous patient claims at issue" and that Cigna's cases do not stand for this "remarkable proposition." (Opp. at 17.) For one, Tri State's view of the case law is wrong. *See Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, 2013 WL 5519320, at *1 (E.D. La. Sept. 30, 2013) (ordering plaintiff to replead and list "*each individual claim*" at issue); *Kindred Hosp. E., LLC v. Blue Cross & Blue Shield of Fla., Inc.*, 2007 WL 601749, at *4 (M.D. Fla. Feb. 16, 2007) (likewise ordering plaintiff to "separate by count each individual claim"). Moreover, Tri State ignores what Cigna said (Br. at 13): providers who bring claims against an insurer must plead basic information to satisfy Rule 8—including identifying each "insurance plan" and "whether it is an ERISA-governed plan," the "dates of [patients'] treatment," the "amount of alleged incurred charges," the "amount of charges allegedly remaining outstanding," and "the amount of benefits sought on behalf of that

10

patient." *Ctr. for Reconstructive Breast Surgery*, 2013 WL 5519320, at *1; *Kindred Hosp.*, 2007 WL 601749, at *4 (requiring provider to replead claims and provide this additional information "[t]o comply with the notice requirements of Rules 8 and 10"). Cigna should not be forced to guess at what claims Tri State is trying to litigate and under what theories.

Finally, Tri State also does not explain why it is "impractical" (Opp. at 17) to identify what claims are in dispute. This is especially peculiar since Cigna has provided just such a list in bringing its own counterclaims. (Dkt. 49, Cigna's Counterclaims, Ex. A.) And Tri State's assertions that it is "disingenuous for Cigna . . . to claim it does not have fair notice of what benefit claims are at issue" because Cigna is "pursuing its own ERISA claim against Tri State" (Opp. at 18) miss the point: in bringing *its* counts against Tri State, Cigna met its pleading obligations by listing the claims at issue. (Dkt. 49, Ex. A.) Tri State—the party with the burden here and the only party that knows what individual benefits claims it wants to pursue—has not.

   **C.** **Tri State Has Failed to Plead Breach of Contract and ERISA Benefits Claims (Counts X and VII).**

In its opening brief, Cigna pointed out the uncontroversial principle that to state a breach of contract claim or an ERISA benefits claim, a plaintiff must identify "the specific terms of the contract that a defendant has breached." *Spinelli v. NFL*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015) (breach of contract); *Gunderson v. St. Louis Connectcare*, 2009 WL 882240, at *3 (E.D. Mo. Mar. 26, 2009) ("[f]or a § 502 claim, the party must identify the specific provisions of the plan itself that were breached."); Br. at 14-15. In response, Tri State contends that telling Cigna what plan provisions it supposedly breached is more than Rule 8 requires, but offers no case law in support. In fact, requiring a plaintiff to support its claims with facts is a basic tenet of Rule 8. For instance, Section 502 "provides a cause of action only where a plaintiff alleges ***a violation of***

11

*the **terms** of a benefits plan*." *Eichorn v. AT&T Corp.*, 484 F.3d 644, 652 (3d Cir. 2007).[5] Tri State's vague and general allegations (made only "[u]pon information and belief") about Cigna's obligations under the many plans at issue (*see* CC ¶¶ 173-74) do not provide that notice.

Tri State's efforts to distinguish Cigna's authorities fall flat. For example, Tri State contends that in *Gunderson v. St. Louis Connectcare*, 2009 WL 882240 (E.D. Mo. Mar. 26, 2009), plaintiff's claim was for wrongful discharge under 29 U.S.C. § 1140 and not for breach of a benefit plan under 29 U.S.C. § 1332. (Opp. at 19.) This is wrong: plaintiff in *Gunderson* in fact "purport[ed] to allege a claim under 28 USC § 1132 (§ 502)," but the court concluded that she "[did] not state a claim under § 502." Tri State also has no response to *Gunderson*'s holding that to state a § 502 claim, "the party must identify the specific provisions of the plan . . . that were breached." *Id.* at *3; *accord Midw. Special Surgery, P.C. v. Anthem Ins. Cos.*, 2010 WL 716105, at *2 (E.D. Mo. Feb. 24, 2010) (same). And while Tri State also argues that *Gunderson* "involved a single plaintiff and benefit plan" (Opp. at 19), the relevance of this is unclear, since Rule 8's requirements do not vary with the number of plaintiffs or plans at issue.

### D. Tri State's Unjust Enrichment and Promissory Estoppel Claims (Counts XI and XII) Fail.

Although unclear from its pleading, Tri State now agrees that Counts XI and XII in fact "relate only to non-ERISA plans." (Opp. at 20.) Since the "vast majority" of claims at issue are subject to ERISA (CC ¶ 149), that leaves only a small subset of non-ERISA claims potentially subject to Tri State's unjust enrichment and promissory estoppel theories. But even when limited to non-ERISA claims, Count XI and XII fail still.

---

[5] *Accord, e.g.*, *Innova Hospital San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587 (N.D. Tex. 2014) ("A complaint must contain enough facts about a plan's provisions to make a Section 502(a) claim plausible and give the defendant notice as to which provisions it allegedly breached.").

Tri State argues that a plaintiff "may plead in the alternative" claims for breach of contract along with claims for unjust enrichment and promissory estoppel. (Opp. at 20.) But that is not what Tri State has done (by alleging, for instance, that Cigna's plan agreements are void or inapplicable to these claims). Instead, Tri State bases its quasi-contractual claims on allegations that Cigna wrongfully denied payments by misconstruing "language in [Cigna's] *plan documents*" (CC ¶ 178) and interpreting certain plans as "not provid[ing] out-of-network benefits" (*id.* ¶ 188)—*i.e.,* the *same* allegations that underlie its contract claim.[6] Thus conceding that an express written contract exists, Tri State has no response to black-letter law that, as a result, "the concept of unjust enrichment has no application." *See Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 210 S.W.3d 101, 112 (Ark. 2005); *Mickens v. Corr. Med. Servs., Inc.*, 395 F. Supp. 2d 748, 753 (E.D. Ark. 2005) ("promissory estoppel is an alternative theory which is not available when an actual contract exists."); *Conn. Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*, 2015 WL 4394408, at *34 (D. Md. July 15, 2015) (dismissing out-of-network medical providers' unjust enrichment claim against Cigna where "contracts exist[ed] covering the same subject matter").

In fact, the authority Tri State cites to support its argument makes this same point: "the existence of a valid written contract ordinarily precludes recovery in quasi-contract," and "an express contract cannot be circumvented by unjust enrichment." *Deutsche Bank Nat'l Trust Co. v. Austin*, 385 S.W.3d 381, 387 (Ark. App. 2011); Opp. at 20. Indeed, *Deutsche Bank* **reversed** the trial court's award of unjust enrichment—holding that while such a remedy may be imposed when the "contract does not exist, is void, does not provide an answer, or fully address a subject," "[t]his [was] *not* such a case." *Id.* Just so here: Tri State premises its quasi-contractual

---

[6] *See* CC ¶¶ 175-76 (alleging that Cigna's plans impose certain payment obligations on Cigna, which Cigna allegedly breached by denying or reducing payments for Tri State's claims).

claims on Cigna's obligations under plan agreements, Cigna's interpretation of those agreements, and Cigna's purported breach through "misapplication of certain language in its plan documents." (CC ¶ 178.)  But nowhere does Tri State allege that these plans are void, do not provide an answer, or fully address the disputed issues. *See Humphries v. Metro. Life Ins. Co.*, 2012 WL 3555305, at *4 (E.D. Ark. Aug. 16, 2012) (finding unjust enrichment claim sufficiently pled where plaintiff acknowledged that a contract existed but alleged that it was "void based on lack of capacity").  Thus, Tri State has not pled its quasi-contractual claims in the alternative, and it can pursue these counts—if at all—only as a breach of contract theory.

Finally, Tri State asserts that it has pled a sufficiently definite promise to support promissory estoppel (Opp. at 20-21), but it offers no response to *Regency Hospital of Northwest Arkansas, LLC v. Arkansas Blue Cross Blue Shield*—which held that an insurer's alleged representations that "individuals were covered under the plans" did not plead a definite promise because such allegations do not "identify who said what to whom" and "do[] not identify the alleged 'promise' sufficiently to enforce it."  2010 WL 3119371, at *1, 8 (E.D. Ark. Aug. 5, 2010).  As in *Regency*, Cigna's alleged representations that "[Tri State's] care would be covered by the patient's Cigna-insured or Cigna-administered health benefit plan" (CC ¶ 185) are "too vague to be enforceable."  2010 WL 3119371, at *8.

### IV. Tri State's Fiduciary Duty Claim (Count VIII) Fails as Duplicative of the ERISA Benefits Claim (Count VII).

Tri State concedes that "duplicative recoveries under § 1132(a)(1)(B) and § 1132(a)(3) are not allowed," but it contends that these claims can still be pursued simultaneously if brought as "alternative theories."  (Opp. at 21.)  That may be true when the two theories are indeed alternative—as in *Silva v. Metro Life Insurance Co.*, 762 F.3d 711 (8th Cir. 2014), where the ERISA benefits claim was premised on an existence of a valid insurance police, while the

14

Case 3:14-cv-00143-JM   Document 136   Filed 01/29/16   Page 16 of 19

ERISA fiduciary breach claim was based on the possibility that the policy had never been approved.  *See id.* at 726-28; Br. at 18 n.15.  But that is not what Tri State has offered here.  In both counts, Tri State seeks the *same* relief (payment of benefits it claims Cigna "wrongfully withheld," *see* CC ¶¶ 152, 162) for the *same* alleged injury (Cigna's payment reductions or denials, *id.*¶¶ 151, 157-58).  Presented with this overlap in Cigna's opening brief, Tri State does not even try to explain *how* these claims differ, nor does it argue that they are based on different allegations or seek different relief.  (Opp. at 21-22.)  Tri State likewise has no response to *Jones*, which holds that a duplicative § 1132(a)(3) claim can be dismissed despite *Silva*.  *See Jones v. Aetna Life Ins. Co.*, 2015 WL 5486883, at *3 (E.D. Mo. Sept. 16, 2015) (dismissing a § 1132(a)(3) claim and distinguishing *Silva* as there, plaintiff had "alleged alternative, not duplicative claims for relief."); Br. at 18 n.15 (citing *Jones*).

## V.   Tri State's Non-Disclosure ERISA Claim (Count IX) Fails.

Cigna pointed out multiple dispositive flaws with Tri State's non-disclosure ERISA claim:  (1) Tri State has not plausibly alleged it has assignments to bring this claim; (2) Tri State fails to plead facts showing that Cigna is the ERISA-designated Plan Administrator; (3) the claim is not limited to plan documents enumerated in § 1024(b)(4); and (4) Tri State failed to plead that it had submitted written requests for plan documents to Cigna.  (Br. at 19-20.)

Tri State offers no real response to any of these deficiencies.  (*See* Opp. at 22.)  Tri State does not contend that it has pled the language of its purported assignments, which precludes the Court from evaluating their scope.  Tri State also does not dispute that only ERISA-designated Plan Administrators can be held liable for § 1132(c) penalties, that insurers do not become Plan Administrators just by administering claims, that Tri State has not pled facts showing that Cigna is the Plan Administrator, or that dismissal is proper without such allegations.  (Br. at 19-20.)

15

Finally, Tri State does not contend that the documents it allegedly sought from Cigna are limited to those listed in § 1024(b)(4), such that failure to disclose them could be actionable.  (*Id.* at 20.)

Instead, Tri State baldly asserts that "Cigna is a plan administrator" and that "Tri State made written demand for the plan descriptions."  (Opp. at 22.)  The Opposition cites no supporting allegations (*id.*)—which is not surprising, since none exist in Tri State's pleading. (*See* CC ¶¶ 163-68.)[7]  And Tri State's counsel's assertions in the Opposition are, of course, no substitute for well-pled allegations.  *See, e.g.*, *Fischer v. Minn. Public Schools*, 792 F.3d 985, 990 n.4 (8th Cir. 2015) (it is "axiomatic" that a "complaint may not be amended by the briefs in opposition to a motion to dismiss").  Having failed to plead facts, Tri State resorts to claiming that Cigna is "arguing technicalities."  (Opp. at 22.)  But requiring Tri State to allege plausible facts to support each element of its § 1132(c) claim is not a technicality; it is the bare minimum that Rule 8 requires for Tri State to make its prima facie case, and where many plaintiffs have failed before it.  So for multiple reasons, Count IX should be dismissed.

## **CONCLUSION**

For all of the foregoing reasons, the Counter-Counterclaims should be dismissed.

---

[7] As Cigna already said, Tri State's allegations that Cigna "insure[s] and/or administer[s]" some plans (CC ¶ 13) or that Cigna acts as a "third party administrator" (*id.* ¶ 19) are not enough, because insurers often administer claims without being the Plan Administrator.  *See* Br. at 19-20; *Ross v. Rail Car Am. Group Disability Income Plan*, 285 F.3d 735, 739 (8th Cir. 2002) (distinguishing between employer-"Plan Administrator" and the insurer who served as the "claims administrator"); *Regency Hosp.*, 2010 WL 3119371, at *4 (granting judgment for insurer on plaintiff's § 1332(c) claim despite insurer "conced[ing] that it was the claims administrator.").  Tri State has no response to this, nor does it even contend it could allege facts showing that Cigna is the Plan Administrator for any plans here.

16

Dated:  January 29, 2016                        Respectfully submitted,

                                                      /s/  Chad W. Pekron

| | |
|---|---|
| Joshua B. Simon | John E. Tull III (84150) |
| Warren Haskel | Chad W. Pekron (2008144) |
| Dmitriy G. Tishyevich | R. Ryan Younger (2008209) |
|   (all admitted *pro hac vice*) | QUATTLEBAUM, GROOMS & TULL PLLC |
| KIRKLAND & ELLIS LLP | 111 Center Street, Suite 1900 |
| 601 Lexington Avenue | Little Rock, AR  72201 |
| New York, NY  10022 | Telephone:  (501) 379-1700 |
| Telephone:  (212) 446-4800 | Facsimile:  (501) 379-1701 |
| Facsimile:  (212) 446-4900 | jtull@qgtlaw.com |
| joshua.simon@kirkland.com | cpekron@qgtlaw.com |
| warren.haskel@kirkland.com | ryounger@qgtlaw.com |
| dmitriy.tishyevich@kirkland.com | |

*Counsel for Cigna Healthcare of Tennessee, Inc., Connecticut General Life Insurance Company, and Cigna Health and Life Insurance Company*

**CERTIFICATE OF SERVICE**

   I hereby certify that on this 29th day of January, 2016, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.

               /s/ Chad W. Pekron
               Chad W. Pekron