**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

TRI STATE ADVANCED SURGERY
CENTER, LLC, GLENN A. CROSBY II, M.D.,
F.A.C.S., and MICHAEL HOOD, M.D.

PLAINTIFFS AND COUNTER-COUNTERCLAIM-PLAINTIFFS

v.

Case No. 3:14-CV-00143-JM

HEALTH CHOICE, LLC,
and CIGNA HEALTHCARE OF TENNESSEE, INC.

DEFENDANTS AND COUNTER-COUNTERCLAIM DEFENDANTS
-----------------------------------------------------------------------------------------------------------------------
CONNECTICUT GENERAL LIFE INSURANCE
COMPANY, CIGNA HEALTH AND
LIFE INSURANCE COMPANY, and CIGNA
HEALTHCARE OF TENNESSEE, INC.,

COUNTERCLAIM-PLAINTIFFS

v.

SURGICAL CENTER DEVELOPMENT, INC.
D/B/A SURGCENTER DEVELOPMENT, and
TRI STATE ADVANCED SURGERY CENTER, LLC

COUNTERCLAIM-DEFENDANTS

## <u>OPPOSITION TO PLAINTIFFS' AND COUNTERCLAIM-DEFENDANTS'</u><br><u>MOTION FOR MISCELLANEOUS DISCOVERY RELIEF</u>

KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.simon@kirkland.com
warren.haskel@kirkland.com
dmitriy.tishyevich@kirkland.com

QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, AR  72201
Telephone: (501) 379-1700
Facsimile: (501) 379-1701
jtull@qgtlaw.com
cpekron@qgtlaw.com
ryounger@qgtlaw.com

## PRELIMINARY STATEMENT

Burch, Porter & Johnson PLLC ("BP&J") took over for Whatley Kallas LLP as new counsel for Plaintiffs[1] in October 2015.   By that time, Cigna and Plaintiffs had already exchanged discovery requests and responses and, after extensive negotiations, agreed on search terms that would be used for electronic document review and production.   But soon after their substitution, BP&J made clear that they effectively wanted a "do-over" on much of what Whatley Kallas agreed to and done.   BP&J filed purported counter-counterclaims against Cigna (claims that could and should have been brought months earlier); served 32 additional discovery requests and 21 new interrogatories; sought to add many new search terms to what the parties previously agreed; and asked for and received a multi-month extension on discovery and other deadlines.   In Cigna's view, little if any of this new discovery was necessary, and it delayed the case for no good reason.   But rather than raise discovery disputes before this Court, Cigna's counsel engaged in many meet-and-confers with BP&J, and made every possible effort to resolve these issues informally.

Plaintiffs have not done the same.   Instead, nearly two months after the deadline for discovery requests, Plaintiffs came up with yet another new request:   access to confidential discovery from *Arapahoe Surgery Center LLC, et al. v. CIGNA Healthcare Inc., et al.*, No. 1:13-cv-3422 (D. Colo.) ("*Arapahoe*").   Plaintiffs assert that these materials will help them prepare for depositions based on the premise that "[t]he only relevant distinction between the Colorado case and this one" is that Plaintiffs here are represented by a different law firm (BP&J) than plaintiffs in *Arapahoe* (Whatley Kallas).   (Br. at 2.)

---

[1] "Plaintiffs" refers to Tri State Advanced Surgery Center, LLC, Dr. Glenn A. Crosby II, Dr. Michael Hood, and Surgical Center Development, Inc.   "Cigna" refers to Connecticut General Life Insurance Co., Cigna Health and Life Insurance Company, and Cigna Healthcare of Tennessee, Inc.   "Br." refers to memorandum in support of Plaintiffs' motion.   (Dkt. 139.)

Plaintiffs' premise is incorrect.  While Plaintiffs contend they "can only speculate" why Cigna would not agree to their request (*id*. at 8), Cigna explained to Plaintiffs a month ago that:

> *[Arapahoe]* involves Colorado and Maryland ASCs and their allegations concerning Cigna HealthCare of Colorado, Inc. as well as other Colorado insurers and hospital systems. Much of the discovery from that case has no obvious relevance to this litigation—which is presumably why Plaintiffs' previous counsel, Whatley Kallas LLP, never requested it.  And to the extent *[Arapahoe]* discovery could be relevant here, it would likely be duplicative of discovery Cigna has already produced in this lawsuit.[2]

Indeed, to the extent any overlap exists between these two cases, Whatley Kallas and BP&J each crafted discovery requests and search terms so that the overlapping information was produced here.  Plaintiffs do not argue that Cigna's production is insufficient, nor do they explain why they still need *Arapahoe* discovery or, if they had such need, why they did not request access before the discovery request deadlines that BP&J negotiated when they entered the case.

Just as important, Plaintiffs' request that this Court "requir[e] Cigna to permit [BP&J] to access and review" confidential *Arapahoe* discovery (Br. at 10) ignores the fact that *Arapahoe* discovery includes not only Cigna's own documents, but also confidential information produced by other entities and persons that the *Arapahoe* protective order prohibits Cigna from disclosing. Plaintiffs do not explain procedurally how this Court could grant them access to that information (which in effect would require this Court to re-write the *Arapahoe* protective order), nor why the Court should grant Plaintiffs access to such sensitive but irrelevant information even if it could.

## **ARGUMENT**[3]

### I.    **Plaintiffs' Request is Untimely.**

When counsel from BP&J first contacted Cigna in October 2015 about their substitution, the parties had already agreed to discovery deadlines, served discovery requests, exchanged

---

[2] Ex. 1, Feb. 5, 2016 letter from W. Haskel to M. Glover, at 4.

[3] Unless otherwise noted, all emphasis has been added, and all citations and quotation marks omitted.

responses and objections, negotiated custodians and search terms, and started producing documents. Apparently unsatisfied with the agreements that Plaintiffs' prior counsel struck, BP&J pushed to extend the deadlines so that it could serve supplemental requests. Rather than burden the Court with discovery disputes, Cigna agreed, and the Court ordered, that the parties serve any supplemental discovery requests by December 4, 2015.[4]

Plaintiffs served supplemental requests by the deadline, but did not include the request on which they move to compel here. Instead, they waited until January 29, 2016 to first raise the issue. By that time, the parties had spent significant time negotiating supplemental search terms, leading Cigna to review tens of thousands of additional documents, and Cigna was well within its supplemental document review. Thus, as Cigna explained:

> At this point, the parties are close to concluding the document production phase and entering depositions, and any efficiencies that could have resulted from Plaintiffs' eleventh-hour proposal passed a long time ago. Rather than introduce a slew of documents from another lawsuit, the parties should instead focus on documents that have been produced here. That way, the parties can move forward with discovery without further delay.[5]

Nowhere in Plaintiffs' motion do they explain why they delayed so long to make this request, waiting three months until after they retained BP&J, and nearly two months after serving supplemental discovery requests. Cigna reasonably expected that Plaintiffs would include all supplemental discovery requests by the deadline to which the parties agreed, and Plaintiffs' failure to do so is alone sufficient to deny their motion to compel. *See Meade v. City of Dermott, Ark.*, 2013 WL 5890346, at *2 (E.D. Ark. Nov. 1, 2013) (denying motion to compel that demanded further discovery one month after court-ordered discovery deadline had expired where "[the movant] has had ample time to conduct discovery").

---

[4] Dkt. 106, 107.

[5] Ex. 1 at 4.

**II.     Because this Lawsuit Is Materially Different from the Colorado *Arapahoe* Litigation, Plaintiffs Are Not Entitled to *Arapahoe* Discovery.**

**A.     The Overlap in Factual Issues in *Arapahoe* and this Lawsuit Is Minimal.**

The fundamental premise of Plaintiffs' motion is that this lawsuit involves the same factual evidence as *Arapahoe*, and that "[t]he ***only*** relevant distinction between the Colorado case and this one is that in October 2015, SurgCenter, Tri State, and Drs. Crosby and Hood, chose to retain different lawyers [BP&J] from the law firm that originally represented them in this case [Whatley Kallas]."  (Br. at 2.)

Plaintiffs' starting premise is incorrect, however, because the distinctions between *Arapahoe* and this Arkansas lawsuit run far deeper.  In *Arapahoe*, four Colorado and two Maryland ambulatory surgical centers ("ASCs") brought claims against various Cigna entities, including a Colorado affiliate, and alleged that:  (1) Cigna underpaid certain of the Colorado and Maryland ASCs' claims; and (2) Cigna conspired with several Colorado-based hospitals and insurers to drive the Colorado ASCs out of business, in violation of the Sherman Act.[6]  Cigna also filed counterclaims against SurgCenter and the Colorado and Maryland ASCs in *Arapahoe*, seeking to enjoin their improper billing practices and recover damages.[7]

So while the ***legal*** claims here and in *Arapahoe* are broadly similar—in that plaintiffs in both cases alleged that Cigna improperly underpaid certain of the ASCs' claims and conspired with other companies for anticompetitive purposes—the ***factual evidence*** related to those claims is distinct.  In this lawsuit, Plaintiffs claim that Cigna Healthcare of Tennessee, Inc. conspired with Health Choice, LLC—a joint venture Physicians Hospital Organization between MetroCare Physicians and Methodist Le Bonheur Healthcare, which operate in Tennessee and Mississippi.

---

[6] *See generally* Dkt. 60 (2d Am. Compl.), *Arapahoe*, No. 1:13-cv-3422 (D. Colo.).

[7] *See generally* Dkt. 17 (Cigna's Countercls.), *Arapahoe*, No. 1:13-cv-3422 (D. Colo.).

(*See* Dkt. 1 ¶¶ 15, 17-18.)  Conversely, in *Arapahoe*, Plaintiffs contended that Cigna Healthcare of Colorado, Inc. conspired with two Colorado hospital systems (HCA-HealthONE and Centura), the Colorado association for ASCs, and health insurers operating in Colorado (Aetna, Anthem, United, and Kaiser).[8]  Likewise, Plaintiffs' ERISA claims involve Tennessee- and Arkansas-based providers, whereas *Arapahoe* involves providers located in Colorado and Maryland.[9]

The timeline in these two cases also could not be more different.  In *Arapahoe*, Cigna concluded its document collection in June 2014.  But Cigna did not even begin to investigate Tri State for fee forgiving until months after Plaintiffs filed this lawsuit on June 6, 2014 (Dkt. 1), and years after Cigna had concluded its investigations of the ASCs involved in *Arapahoe*.  Thus, Cigna's production in *Arapahoe* should include nothing specific to Tri State on the central dispute in this case.

Not surprisingly, given the Colorado- and Maryland-specific nature of the claims in *Arapahoe*, as well as the different timeline at issue in the two cases, there is very little overlap between the documents and witnesses in *Arapahoe* and this lawsuit.  For instance, most of *Arapahoe* plaintiffs' trial witnesses are expected to testify about the Colorado and Maryland ASCs, the alleged Colorado conspiracy, and Cigna's alleged actions in furtherance of that conspiracy in Colorado.[10]  Indeed, of the twenty-one "will call" and twenty-five "may call" trial witnesses the *Arapahoe* plaintiffs have disclosed,[11] there are only ***three*** Cigna employees who may also have discoverable information about issues relevant to this litigation—Michael

---

[8] *See* Dkt. 153 (Final Pretrial Order) at 7, *Arapahoe*, No. 1:13-cv-3422 (D. Colo.).

[9] *See id.* at 5-6.

[10] *See* Dkt. 153, *Arapahoe*, No. 1:13-cv-3422 (D. Colo.) at 26-30.

[11] *Id.* at 26-33.

Battistoni, Mary Cisar, and Tom Hixson.   Cigna has already disclosed each of these three employees as document custodians here, and produced their documents to Plaintiffs.

Next, while there is some potential overlap between the SurgCenter witnesses and documents here and in *Arapahoe*, BP&J represents SurgCenter in this lawsuit.[12]   Thus, as they admit, they have access to documents that SurgCenter produced in *Arapahoe*.   And to the extent any of those documents are relevant to this lawsuit, BP&J should already have produced them.[13]

Finally, Plaintiffs' request for *Arapahoe* discovery—which includes information related to ASCs in Colorado and Maryland—is inconsistent with Plaintiffs' discovery responses in this case.   In producing documents to Cigna, Plaintiffs improperly redacted large portions of certain SurgCenter documents involving other ASCs.   In a meet-and-confer, Plaintiffs explained that they redacted those documents even though they are not privileged, because Plaintiffs do not believe that non-Tri State ASCs were relevant to this lawsuit.   Cigna previously explained to Plaintiffs why these non-privilege redactions are improper under the Federal Rules of Civil Procedure and under the Protective Order entered in this case, but Plaintiffs have so far refused to provide unredacted copies of those documents to Cigna.   It is unclear how Plaintiffs can insist that they should have access to confidential *Arapahoe* discovery (much of which is unrelated to any issues here), yet simultaneously take the position that they can redact indisputably relevant documents because those documents refer to other non-Tri State ASCs.

---

[12] *See, e.g.*, Dkt. 97 at 1 (seeking *pro hac vice* admission of Ms. Molly Glover of BP&J as "additional counsel for . . . Surgical Center Development, Inc. d/b/a SurgCenter Development.").

[13] At a minimum, if the Court were inclined to grant Plaintiffs' request, the Court should also allow Cigna to use discovery that SurgCenter produced in *Arapahoe* for purposes of this lawsuit.

**B.** **Plaintiffs' Own Cases Demonstrate that They Are Not Entitled to *Arapahoe* Discovery.**

The authorities Plaintiffs cite confirm that Plaintiffs are not entitled to *Arapahoe* discovery. Read together, these cases stand for the proposition that a party may access to discovery across different cases when "the evidentiary facts . . . [are] identical, or nearly so," *Ward v. Ford Motor Co.*, 93 F.R.D. 579, 580 (D. Colo. 1982)—such that the litigant in the second action would be entitled to that discovery in any event—and that "the protected discovery is sufficiently relevant to the collateral litigation that a substantial amount of duplicative discovery will be avoided." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1131, 1132 (9th Cir. 2003).[14] But that is not the case here. Plaintiffs have not even explained why the Colorado- and Maryland-specific *Arapahoe* discovery has any bearing on the issues here, let alone affirmatively demonstrate—as they must—"the relevance of the [*Arapahoe*] discovery . . . and its general discoverability" in this Arkansas lawsuit. *See id.* Moreover, Plaintiffs' request also would not avoid "a substantial amount of duplicative discovery" (*id.*) for at least two reasons: (1) because almost no discovery from *Arapahoe* relates to the issues here, those documents would not be discoverable in this lawsuit in any event; and (2) Plaintiffs' December 4, 2015 deadline to serve new discovery requests on Cigna (Dkt. 107 at 2) has long since passed; thus, Plaintiffs are not entitled to *any* additional document discovery from Cigna, and there is no further document discovery to avoid.

---

[14] *See also Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1296, 1300 (7th Cir. 1980) (noting that a "collateral litigant has no right to obtain discovery materials [from another action] that are . . . immune from eventual involuntary discovery in the collateral litigation," but allowing access to discovery because the "two complaints [were] founded on *virtually identical* allegations of nationwide conspiracy" and because "much, if not most of the . . . discovery" from one case would "be eventually discoverable in the [second case]"); *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 77 (S.D.N.Y. 2010) (where plaintiffs' counsel "represent[ed] plaintiffs in several other employment actions against Gristede's," allowing them to use personnel files in other actions against Gristede's, "but *only* to the extent that the files would also be discoverable in such other litigations.").

**C.      Plaintiffs' Remaining Arguments Are Without Merit.**

Plaintiffs argue that Cigna's position here is inconsistent with its positions in other "Cigna/SurgCenter actions," pointing to lawsuits pending in Colorado, Indiana, and Maryland. (Br. at 6.)   But there is nothing inconsistent about Cigna's positions.   Cigna has already explained why there is minimal (at best) overlap between this action and *Arapahoe*.   (*See* Ex. 1 at 4.)   As to Indiana, Cigna has not agreed to any protective order in that action, and did not agree to share discovery across multiple lawsuits there.

And while Cigna agreed to allow parties access to the discovery that Cigna produced in *Arapahoe* in a SurgCenter-related lawsuit pending in Maryland (Br. at 7), the Maryland litigation is very different from this Arkansas case for at least two reasons.   First, the Maryland litigation involves multiple Maryland ASCs, and two of the six ASCs in *Arapahoe* are also Maryland entities.   Tri State is not, so Plaintiffs' contention that "[t]he same 'overlap of issues' exists" here (Br. at 7) is incorrect.   Second, the protective order in Maryland that allowed parties to access *Arapahoe* discovery was entered on November 19, 2015[15]—just four months after the district court judge had ruled on SurgCenter and ASCs' motion to dismiss Cigna's claims and Cigna's motion to dismiss the ASCs' counterclaims,[16] and before any document production took place. Given the timing of that protective order, together with the overlap of Maryland-specific discovery between *Arapahoe* and the Maryland Action, Cigna in fact was able to avoid some duplication of discovery.   Here, though, Cigna had already substantially completed its document production by the time Plaintiffs first asked for *Arapahoe* discovery; so as Cigna previously

---

[15] *See* Dkt. 125, *Conn. Gen. Life Ins. Co., et al. v. Advanced Surgery of Bethesda LLC, et al.*, No. 8:14-cv-2376 (D. Md.) ("Maryland Action").

[16] Maryland Action, Dkt. 64.

explained to Plaintiffs, "any efficiencies that could have resulted from Plaintiffs' eleventh-hour passed a long time ago." (Ex. 1 at 4.)

Finally, Plaintiffs' contention that "Cigna cannot plausibly argue prejudice or undue burden" because Plaintiffs' request purportedly will not "require [Cigna's] counsel to devote time or resources or money to this issue" (Br. at 8) again ignores what Cigna already told Plaintiffs before they filed this motion. Cigna's chief goal is to see this action through to the end on its current (already-delayed) schedule—without further delays. Far from expediting anything, adding a slew of irrelevant *Arapahoe* documents to this litigation on the eve of depositions will very likely cause delays, or will at a minimum invite unnecessary document-by-document disputes as to whether a particular *Arapahoe* document is relevant and can or should be used in depositions, summary judgment, and trial. That is what Cigna is trying to avoid. As Cigna already told Plaintiffs, "the parties should instead focus on documents that have been produced here," so that "the parties can move forward with discovery without further delay." (Ex. 1 at 4.)

III.    **Plaintiffs Ask this Court to Re-Write the *Arapahoe* Protective Order, Which Protects Multiple Other Persons and Entities Who Are Not Parties to this Lawsuit.**

Even if Plaintiffs could establish a basis for seeking confidential materials from *Arapahoe*—and they cannot—Plaintiffs do not explain how this Court could even grant them the relief they seek, which is to "requir[e] Cigna to permit [BP&J] to access and review" ***all*** "materials produced in and associated with the Colorado Action that are designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL." (Br. at 10.) That discovery contains confidential information from multiple other parties and third parties besides Cigna, which is protected from disclosure by the protective order issued by the *Arapahoe* court.

The protective order in *Arapahoe* is clear that "[a]ll documents and materials produced in the [*Arapahoe*] Action shall be used solely for the purposes of preparing for and conducting pre-

trial, trial, and post-trial proceedings *in this Action*, and not for any other purpose, and such documents *shall not* be disclosed to any person or entity except as provided in this Protective Order."[17]   Similarly, under that protective order, "[d]ocuments containing Confidential Information *shall not* be disclosed without the consent of the producing Party or further Order of the [*Arapahoe*] Court," except in circumstances not applicable here.[18]   Thus, the plain terms of the protective order entered by the *Arapahoe* court prohibit Cigna from allowing BP&J access to confidential information produced by other parties in that litigation.   And even if this Court were inclined to order Cigna to allow Plaintiffs access to *Cigna's* confidential *Arapahoe* discovery, Plaintiffs offer no explanation of how the Court could direct Cigna to require *other Arapahoe* parties and third parties to allow BP&J access to those entities' confidential information.

These issues are neither speculative nor hypothetical.   As detailed above, the *Arapahoe* litigation involves primarily Colorado- and Maryland-specific parties and issues.   As part of the *Arapahoe* lawsuit, Cigna received access to confidential information produced by a number of Colorado entities (including, for instance, several Colorado insurers and hospital systems), as well as HIPAA-protected personal health information from patients who had received treatment from Colorado and Maryland ASCs.   None of those persons and entities have anything to do with this lawsuit, and they have a reasonable expectation that the *Arapahoe* protective order would keep their confidential information just that—confidential.   Again, beyond asserting vaguely that Rule 37 "gives the Court broad power to fashion appropriate relief" (Br. at 5), Plaintiffs offer no case law that would support this Court re-writing a protective order issued by another court, involving parties not present here.

---

[17] Ex. B to Br., *Arapahoe* Dkt. 55, at 4 ¶ 7.

[18] *Id.* at 4 ¶ 8.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs' motion should be denied.

Dated:  March 14, 2016                                      Respectfully submitted,

                                                                        /s/  Chad W. Pekron
Joshua B. Simon                                           John E. Tull III (84150)
Warren Haskel                                              Chad W. Pekron (2008144)
Dmitriy G. Tishyevich                                   R. Ryan Younger (2008209)
   (all admitted *pro hac vice*)                       QUATTLEBAUM, GROOMS & TULL PLLC
KIRKLAND & ELLIS LLP                               111 Center Street, Suite 1900
601 Lexington Avenue                                  Little Rock, AR  72201
New York, NY  10022                                  Telephone:  (501) 379-1700
Telephone:  (212) 446-4800                        Facsimile:  (501) 379-1701
Facsimile:  (212) 446-4900                         jtull@qgtlaw.com
joshua.simon@kirkland.com                        cpekron@qgtlaw.com
warren.haskel@kirkland.com                       ryounger@qgtlaw.com
dmitriy.tishyevich@kirkland.com

*Counsel for Cigna Healthcare of Tennessee, Inc., Connecticut General Life Insurance Company,*
*and Cigna Health and Life Insurance Company*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of March, 2016, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.

/s/ Chad W. Pekron
Chad W. Pekron