```
 1                IN THE UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF ARKANSAS
 2                         JONESBORO DIVISION

 3  TRISTATE ADVANCED SURGERY CENTER, LLC,
    GLENN A. CROSBY II, M.D., F.A.C.S., and MICHAEL HOOD, M.D.,
 4                         Plaintiffs,

 5     v.                              No. 3:14CV00143 JM

 6                                     March 29, 2016
                                       Little Rock, Arkansas
 7                                     10:29 a.m.
    HEALTH CHOICE, LLC, and
 8  CIGNA HEALTHCARE OF TENNESSEE, INC.,
                           Defendants.
 9  ------------
    CONNECTICUT GENERAL LIFE INSURANCE COMPANY,
10  CIGNA HEALTH AND LIFE INSURANCE COMPANY, and
    CIGNA HEALTHCARE OF TENNESSEE, INC.,
11                         Counterclaim-Plaintiffs,

12  v.

13  SURGICAL CENTER DEVELOPMENT, INC. d/b/a SURGCENTER
    DEVELOPMENT, and TRISTATE ADVANCED SURGERY CENTER, LLC,
14                         Counterclaim-Defendants.

15  ------------
    TRISTATE ADVANCED SURGERY CENTER, LLC,
16                         Counter-Counterclaim-Plaintiff,
    and
17
    GLENN A. CROSBY, II, M.D., and MICHAEL HOOD, M.D.,
18                         Third-Party Plaintiffs,

19  v.

20  CIGNA HEALTHCARE OF TENNESSEE, INC., CIGNA HEALTH AND LIFE
    INSURANCE COMPANY, and CONNECTICUT GENERAL LIFE INSURANCE
21  COMPANY,
                           Counter-Counterclaim-Defendants,
22  and

23  HEALTH CHOICE, LLC,
                           Third-Party Defendants.
24
                       TRANSCRIPT OF MOTION HEARING,
25            BEFORE THE HONORABLE JAMES M. MOODY, JR.
                      UNITED STATES DISTRICT JUDGE
```

Karen Baker, RMR, CRR, CCR
United States Court Reporter

```
 1   APPEARANCES:

 2   On Behalf of the Plaintiffs:
         DOUGLAS F. HALIJAN, Attorney at Law
 3       MOLLY GLOVER, Attorney at Law
            Burch, Porter & Johnson, PLLC
 4          130 North Court Avenue
            Memphis, Tennessee  38103

 5
         SCOTT E. POYNTER, Attorney at Law
 6          Poynter Law Group
            400 West Capitol Avenue, Suite 2910
 7          Little Rock, Arkansas  72201

 8

 9   On Behalf of the Defendants:
         WARREN HASKEL, Attorney at Law
10          Kirkland & Ellis, LLP
            601 Lexington Avenue
11          New York, New York  10022

12       JOHN E. TULL, III, Attorney at Law
            Quattlebaum, Grooms & Tull, PLLC
13          111 Center Street, Suite 1900
            Little Rock, Arkansas  72201

14

15       LEIGH M. CHILES, Attorney at Law
            Baker, Donelson, Bearman, Caldwell & Berkowitz
16          165 Madison Avenue, Suite 2000
            Memphis, Tennessee  38103

17

18

19       Proceedings reported by machine stenography and displayed
     in realtime; transcript prepared utilizing computer-aided
20   transcription.

21

22

23

24

25
```

Karen Baker, RMR, CRR, CCR
United States Court Reporter

```
1                    P R O C E E D I N G S
2         (Proceedings commencing in open court at 10:29 AM.)
3              THE COURT:  We are on the record in 3:14CV143,
4    Tristate Advanced Surgery versus Health Choice and Cigna, et
5    al. at this point.  Some are still here and some are not.  Here
6    to discuss the motion for I guess it's entitled miscellaneous
7    discovery relief, but it has to do with what I'll generically
8    call the Colorado discovery.  Is that a fair --
9              MR. HALIJAN:  Yes, Your Honor.
10             THE COURT:  -- summation of the material that we're
11   talking about?  I have read the motions, briefs, replies, and
12   responses to this particular issue as well as some other stuff
13   we're working on, some pending things to put it in context.
14   Who is going to talk to me about the motion on behalf of the
15   plaintiffs I guess in this?
16             MR. HALIJAN:  That would be me, Your Honor.  Doug
17   Halijan from Burch, Porter & Johnson in Memphis.  With me is my
18   partner, Molly Glover.
19             THE COURT:  Hello.
20             MS. GLOVER:  Hello.
21             THE COURT:  You've got the floor.
22             MR. HALIJAN:  Thank you, Your Honor.  I understand
23   certainly that the Court has read the written materials, but
24   I'm going to hit a few high important parts before drilling
25   down a little bit deeper into some of the particular issues
```

1  that seem to be most contentious about this issue, why are we

2  here.

3        Your Honor, I respectfully submit that the relief we're

4  seeking is very limited.  This is as the Court knows one of

5  several cases pending around the country between Cigna parties

6  on one side and SurgCenter and SurgCenter affiliated surgery

7  centers like Tristate on the other.  Tristate is the only

8  ambulatory surgical center in Crittenden County, one of the

9  very few such facilities in the eastern part of the state.

10 Claims and counterclaims in these cases are similar.  The

11 plaintiffs in this case allege that the defendants have

12 conspired to drive business away from Tristate, that they're

13 tortuously interfering with patient and business relationships,

14 and that they're violating various provisions of ERISA.  Cigna,

15 on the other hand, alleges that my clients SurgCenter and

16 Tristate have engaged in what they call a fraudulent billing

17 scheme or fraudulent practices that are intended to evade

18 restrictions that the Cigna entities place on out of network

19 providers and patients covered by Cigna insurance plans and

20 that this scheme is common to SurgCenter and SurgCenter

21 affiliated surgery centers around the country.

22       And one of these cases, the Colorado case, discovery,

23 fact discovery, has concluded.  So in that case, nothing

24 unusual about this, in that Colorado case, the parties, Cigna

25 on the one hand, the SurgCenter parties on the other,

1  designated numerous depositions, deposition exhibits, discovery

2  documents, and ESI and some pleadings as either confidential or

3  highly confidential under the protective order in place there.

4  That protective order, as most do, as the one in this case

5  does, prohibits disclosure of documents designated confidential

6  or highly confidential to any attorney who is not, quote,

7  counsel of record in that particular case.

8      Importantly, and a point we made in our briefs, but I

9  think is important to emphasize here, SurgCenter's counsel in

10 both the Colorado and the Maryland cases already have access to

11 all of this, it's no mystery to them as to what it contains.

12 Moreover, documents, deposition testimony, deposition exhibits

13 designated confidential can be shown to the client itself.  So

14 my client has access to all of this.  The defendants' lawyers,

15 the Cigna lawyers, Mr. Haskel who will speak in a moment, he

16 has access to all of this by virtue of the fact that his firm

17 represents the Cigna entities in all of these cases.  But

18 because of the way they're designated, the one group of lawyers

19 pretty much anywhere that has any relation to this dispute,

20 whether here in this Arkansas court or around the country, the

21 one group of lawyers that can't look at it are Tristate and

22 SurgCenter's counsel here.  That's me and Ms. Glover.

23 Everybody else can see it.

24     So if the Cigna parties have their way, its own trial

25 counsel in this case will have had access to all of this

1   discovery, these depositions, these deposition exhibits,

2   anything that was labeled confidential or highly confidential,

3   while SurgCenter's trial counsel in the Arkansas case does not.

4   We tried to work this out.  We've certainly agreed orally, we

5   have agreed as we have represented to the Court in our briefs

6   that we will sign the protective order, the acknowledgment

7   form, again, a very customary way of handling materials like

8   this.  We will sign the Colorado acknowledgment form under that

9   protective order.  But Cigna has refused to allow us access.

10  So that is what we are here today for.  That's what's brought

11  us here.

12      We are seeking a very limited order that would compel

13  Cigna to allow or consent to SurgCenter's Arkansas trial

14  counsel, that is SurgCenter's Colorado trial counsel rather, to

15  share with Arkansas trial counsel copies of these documents,

16  deposition testimony, deposition exhibits, etc.  This can be

17  done in one of two ways.  It can be done by an order of this

18  court, we respectfully submit under Rule 37, the rule we moved

19  under, or it can be done by modifying the protective order that

20  is already in place here as the Maryland district court did in

21  Maryland without touching the Colorado protective order.  And

22  I'll describe that in a little bit more detail in a moment.

23      So why do we want this, why is this important?

24  Principally it's because my clients ought to have the same

25  benefit and its lawyers ought to have the same benefit of

1   seeing the information, the record, the discovery record, the

2   testimony taken in this other case and coordinating its claims

3   and its defenses to the same degree that the Cigna parties do.

4   Right now, only the Cigna lawyers have the benefit of having

5   reviewed this record, this discovery record that's now

6   essentially complete in Colorado while we do not as we prepare

7   for depositions here.

8          THE COURT:  Let me interrupt you real quick, because

9   I understand what you're asking for in a general sense, but

10  what are you asking for and what do you hope to do with it?

11  Because right now, as I understand it, you want all the

12  discovery in the Colorado case, not any particular depositions

13  of witnesses that have been designated in I call it my case,

14  the Arkansas case or whatever.  And then if you have all this,

15  what do you hope to do with it?  Because it's difficult for me

16  to understand in the abstract and maybe difficult for you to

17  comment on because you haven't seen it, but how is any of this

18  relevant unless it pertains to something that your previous

19  counsel in this case designated as having something to do with

20  the price of tea in China in this case?  And I can understand

21  if there were three witnesses or six.  I think there were three

22  mentioned in the pleadings that said these are the people who

23  testified out in Colorado who were likely to testify in

24  Arkansas, but beyond that, why would depositions of people who

25  aren't even going to be testifying in this case be relevant?

1    MR. HALIJAN:  Let me answer that in a couple of

2  ways, Your Honor.  And Your Honor touched on the first part of

3  the answer.  I haven't been allowed to review it.  I can't --

4  and that's the reason that we framed the request so narrowly.

5  Right now, the request is simply that we be allowed to have the

6  same access to this record that Cigna's counsel does and that

7  SurgCenter's counsel does in these other cases, and indeed

8  still would had SurgCenter and Tristate not made the decision

9  to change representation so that more local lawyers are lead

10  trial counsel in these various cases.

11    So, Your Honor, I can't represent to the Court what I

12  would do with something that I haven't even been allowed to

13  see.  We have not sought an order that would permit us to use

14  anything and everything that might come out of this discovery

15  record in Colorado.  All we're asking for is just the right to

16  read it.  All we want is the right to read it right now.  So in

17  speaking a little bit more broadly to the Court's question, we

18  think it's just a matter of fairness is the simplest way to say

19  it.  We ought to be allowed to see how the depositions,

20  deposition testimony was developed as to all of the witnesses

21  in that case.  We're willing to abide by the protective order

22  and indeed but for the change of counsel, counsel in Arkansas

23  would have it, would be allowed, would have been allowed to see

24  it.  It's already in their possession.

25    So we're not -- we don't have any kind of particular

1    motive as to what we're going to do when we read one deposition

2    versus another.  And Your Honor is correct, there are at least

3    three overlapping witnesses, although again, we submit we ought

4    to have the right to access all of them, but I can't answer

5    what we'll do with it if I'm not even allowed to look at it.

6                THE COURT:  Okay.

7                MR. HALIJAN:  So last thing I'll say on that

8    subject, the present situation just places counsel on a vastly

9    different footing, again, given that this situation we're in

10   results only from the fact that our clients changed lawyers

11   from the law firm that represents SurgCenter and the SurgCenter

12   affiliated centers out in Colorado.  We don't think the

13   discovery rules -- and we've cited a number of cases which I'm

14   sure the Court has looked at, we don't think the discovery

15   rules countenance that kind of unfair, and we respectfully

16   submit, illogical outcome again where we can't even see any of

17   this stuff.

18        Switching gears a bit, there's no prejudice here.  Cigna

19   hasn't offered in its opposition any plausible argument as to

20   why it is even remotely prejudiced or subjected to any kind of

21   burden whatsoever by our request that we simply be allowed to

22   have access to the same record involving some of the identical

23   parties that Cigna's trial counsel in Arkansas does.  I think

24   it's a fair question not addressed in the opposition as, you

25   know, what is it in this record that they don't want us to see.

1    And so why are we here today fighting over something that,

2    again, is already in the possession of SurgCenter's counsel,

3    just not SurgCenter's counsel in this case.  The briefing

4    really to the contrary demonstrates a complete lack of

5    prejudice.

6         We're not asking that Cigna do anything.  They won't have

7    to lift a finger, they won't have to copy a single piece of

8    paper, they won't have to duplicate a single electronic file.

9    All that will have to be done is us be given permission to

10   access all of these records which SurgCenter's counsel and

11   indeed my client itself in many instances already has.  These

12   cases are similar, again, with some of the same parties and

13   some of the same allegations.  An argument that Cigna does make

14   in its opposition is that while the, quote, legal claims in

15   Colorado and Arkansas are broadly similar, they are so, quote,

16   factually different I think is what the brief says that my

17   client's Arkansas trial counsel ought to be deprived of the

18   opportunity to even read and judge that for themselves.

19        That's not a tenable position again for the reasons we

20   covered in our brief.  The counterclaims in particular that

21   Cigna is pursuing against my clients are virtually identical to

22   those it is pursuing against SurgCenter and the SurgCenter

23   affiliated centers out in Colorado.  These counterclaims all

24   relate to Cigna's disagreement with the billing policies and

25   practices employed at the particular SurgCenter surgery centers

1    at issue.  And the whole premise of Cigna's counterclaims

2    against us is that these billing policies and practices were

3    developed and part of a common SurgCenter business model and

4    that, again, quoting, all aspects of the pricing schemes used

5    by each SurgCenter ASC were designed and implemented at its

6    direction.  Cigna has acknowledged in prior pleadings before

7    this court the similarity and relatedness of the cases when it

8    was in its interest to do so.

9         Cigna told this court that the Colorado judge's decisions

10   involved, quote, similar claims brought by Cigna against fee

11   forgiving ambulatory surgical centers with which SurgCenter is

12   affiliated.  We cited to the testimony taken about six weeks

13   ago in another case, a deposition that was not marked

14   confidential, let me assure the Court, in another case by a man

15   named Thomas Hixson, a Cigna corporate representative who was

16   on the will call list in Colorado and who was listed as a

17   person with knowledge in our case here in Arkansas.

18             THE COURT:  He's one of the three I guess that were

19   mentioned, a Michael Battistoni, B-a-t-t-i-s-t-o-n-i, and Mary

20   Cisar, C-i-s-a-r, and Tom Hixson.  You said you've deposed

21   Hixson?

22             MR. HALIJAN:  We have not deposed Hixson in this

23   case yet.  He was deposed in another dispute between these same

24   parties, and it's another case.  It's a case styled Monocacy

25   Surgery Center, LLC versus Cigna Health and Life Insurance.

1    That's pending in Colorado.  But we've seen that deposition

2    because it's not marked, hasn't been designated confidential by

3    any party.  He testified, could not have been clearer that

4    Cigna's special investigations unit conducted an investigation

5    of all the SurgCenter affiliated centers or the ones they

6    believed to be affiliated with SurgCenter, that it was

7    designated as a, quote, special project and that all claims

8    from SurgCenter affiliated surgery centers were processed

9    pursuant to the same protocols.  So while there are clearly

10   different surgery centers involved, the one I represent is in

11   Marion, these others are in Colorado, Maryland or wherever they

12   may be, Cigna by its own admission by the testimony of its own

13   corporate rep is saying that they were treated the same.

14        Now, the jury here, the jury in Colorado will have to

15   make their own decisions about whether the plaintiffs are right

16   or the defendants are right and prove the respective claims or

17   counterclaims, but honestly, I cannot see for the life of me

18   how Cigna can argue that the cases are so different that I

19   ought not to be even allowed to look at the discovery record

20   adduced in Colorado when their counsel has it.  Again,

21   returning to the fairness argument.  Unless the Cigna lawyers,

22   unless Mr. Haskel has a remarkable ability to compartmentalize

23   information in his head, he knows what record was adduced in

24   Colorado and how it came to be, what questions were asked, how

25   they were asked, what questions weren't asked, what exhibits

1 were offered, what exhibits were not offered.  We're just

2 asking for the same opportunity here.

3      Finally, let me speak a second to this.  There was some

4 suggestion in Cigna's opposition that we're asking this court

5 to rewrite another court's order.  That is absolutely not what

6 we're doing and that is absolutely not what would be required

7 to grant us the relief we seek.  Protective orders in place in

8 these other cases and particularly in the Maryland case between

9 some of these same parties already provide for more than I'm

10 asking for here this morning, and that agreement didn't require

11 any modification of the Colorado order at all.

12      THE COURT:  Wasn't the Maryland order agreed to?

13 Didn't the parties or the lawyers in the Maryland court agree

14 to the modification of the protective order out of Colorado?

15      MR. HALIJAN:  Yeah, absolutely, they agreed to --

16 the point I'm trying to make is the suggestion that we're

17 somehow asking the Court to rewrite another court's order kind

18 of misses the point of what we're arguing about here.  Yeah,

19 Cigna won't agree here when it agreed in Maryland.  We don't

20 think that that makes any sense and we don't think it's fair

21 for Cigna to say, well, when we agreed to it, we'll let the

22 counsel on the other side see it, use it, whatever.  Again,

23 that agreement related to use, not just access.  I'm only

24 asking about access.  But they did it and so not only does the

25 case, the order in Maryland permit access, it permits use both

1    ways.  It didn't require any modification of the order and,

2    again, we believe the Court can do that here.

3       It's a very simple one-paragraph modification of the

4    protective order that is already in place.  There's also a

5    suggestion in the opposition that there could be third party

6    rights or third party discovery involved here.  Again, the

7    parties in Maryland agreed, stipulated to the sharing of this

8    information, the use of it running both ways in Maryland

9    without speaking to any third party rights, so we're concerned

10   that that's just kind of an attempt to change the subject more

11   than any real concern since we're willing to sign on to the

12   protective order.

13       THE COURT:  Was the agreement to use the discovery

14   in Maryland the entire Colorado record or just portions of it?

15       MR. HALIJAN:  The way the order reads, the way the

16   agreement and order reads, it's both ways, it's Colorado

17   discovery record can be used in Maryland, Maryland discovery

18   record can be used.  There's no attempt on the record in either

19   the discovery agreement or the Maryland protective order that

20   carves out you can see this, but you can't see this, you can

21   use this, but you can't use that.  So, again, if the Maryland

22   court could permit such access, albeit with the agreement of

23   the parties there, we think the Court can do that here, can

24   order that here without revising the Colorado protective order.

25   And, again, I think the Court is clear on this, but let me be

1     absolutely clear.

2          We're willing to sign on to the confidentiality order, to

3     the protective order.  Counsel out there has it, our client has

4     some of it to the extent it's marked confidential as opposed to

5     highly confidential.  We're willing to be signatories or to

6     sign the acknowledgment form under that protective order so

7     that we will be charged under threat of contempt of court if we

8     misuse or disclose any of that record beyond what is permitted

9     by that order itself.  So we respectfully submit that to ensure

10    that the parties in the case proceed with depositions, because

11    that's kind of the fork in the road we're at right now, and on

12    to trial on equal footing, the Court should allow us access to

13    this record even over Cigna's objections.  And I'll close there

14    unless the Court has additional questions for me now.

15              THE COURT:  It's likely I will later, but not right

16    now.

17              MR. HALIJAN:  Thank you.

18              MR. HASKEL:  Your Honor, Warren Haskel, Kirkland &

19    Ellis.  With me here today is John Tull of Quattlebaum, Grooms

20    and Tull.  If I may proceed.

21              THE COURT:  You may.

22              MR. HASKEL:  Thank you, Your Honor.  We just heard

23    from plaintiffs and one of the things that came out clearer

24    from what I was hearing from them is they think that this

25    question is innocuous, it's a simple limited request, and I

1    want to highlight two things for Your Honor that show it's

2    really not.  This request would impose undue burden and

3    prejudice to Cigna with minimal, if any, benefit to the

4    plaintiffs.  And second, this request is not limited.  It's

5    procedurally improper and that's not just because it's untimely

6    and we raised that in our briefs, but also because of how it

7    would affect Cigna's obligations under a protective order

8    entered by another court with regard to third party documents.

9    So I'll highlight those two issues.

10          So turning to the burden and prejudice.  I just want to

11   step back and talk about how this came to be.  Cigna has made

12   every effort in this suit to avoid unnecessary discovery

13   disputes before this court.  When the plaintiffs retained new

14   counsel in October of 2015, Cigna was well under way with its

15   production.  There's something in plaintiffs' reply that

16   suggests that we hadn't produced a single document.  We had

17   produced almost 10,000 pages of documents before they made an

18   appearance in this case, and we were getting ready to produce

19   more when we heard from plaintiffs' new counsel that they

20   wanted to basically reopen discovery.  We worked with

21   plaintiffs to come to compromise to avoid motion practice, we

22   agreed to an extension that we didn't think was necessary, we

23   agreed to supplemental discovery requests, a lot of

24   supplemental discovery requests, we agreed to supplemental

25   search terms.

1    So we had already, with their old counsel, come up with a

2    set of search terms, they said, well, we want more, we agreed

3    to that and that led to us having to review tens of thousands

4    of additional documents.  So it's against this backdrop that

5    Cigna wouldn't agree to plaintiffs' discovery requests here.

6    And let me be clear, the issue here isn't Cigna's desire to

7    withhold relevant documents from plaintiffs that may have been

8    produced in Colorado.  To the extent that they're relevant

9    documents, there are discovery requests that would have covered

10   it here.  What plaintiffs argue, they say Cigna won't be

11   burdened because Cigna won't have to re-review any materials

12   even if they aren't relevant.  That's not true.  Plaintiffs'

13   request is going to greatly expand the volume of materials and

14   even if they're irrelevant, that the parties will be

15   responsible for in this case even though this case is vastly

16   smaller than the Colorado action.

17       Let me give you some just numbers of what the Colorado

18   case involved.  In Colorado, Cigna alone produced 190,000 pages

19   of documents.  We defended, there are ten Cigna witnesses that

20   were deposed leading to nearly 1500 pages of testimony.  That's

21   just Cigna.  There were third parties, there were SurgCenter,

22   there were six ASCs, four from Colorado, two from Maryland, I

23   believe they produced in the hundreds of thousands of

24   documents.  Now, the Colorado action involved six, as I said,

25   six ASCs, two hospital systems, numerous other insurers.  Here

1    we're dealing with Cigna, one ASC, two of their physician

2    investors, and SurgCenter.

3        If plaintiffs are given access to the Colorado discovery

4    in this case, both sides are going to have to consider it when

5    preparing witnesses, responding to motions for summary

6    judgment, preparing for trial, it's just going to greatly

7    expand the paper and amount volume of material discovery that

8    everyone's going to have to consider before doing anything in

9    this case.  It's a significant amount of work for a case

10   involving one ASC.  And ASC, I'm sorry, it's ambulatory

11   surgical center.

12       Now, there's another area of prejudice and it involves

13   the documents that are relevant in this case and they're very

14   sensitive to Cigna.  They involve rate negotiations with the

15   Colorado and Maryland ASCs, not just directly with those ASCs

16   but also the internal deliberations of Cigna.  It involves

17   internal market analysis of the mountain west region,

18   mid-Atlantic region.  It involves, and this is extremely a

19   sensitive area, patient data for Cigna members, and not just

20   Cigna members but other insurers.  Plaintiffs simply have no

21   need for that.  Now, we're not --

22            THE COURT:  Let me slow you down because I'm reading

23   back to make sure I understood what you said.  You said there

24   are documents that are relevant in this case that are sensitive

25   to Maryland, I mean sensitive to Cigna, and then you talked

1    about the Maryland and Colorado rate situation.

2              MR. HASKEL:  I misspoke.  I meant there are

3    documents in the Colorado action that are sensitive and

4    specific to Colorado that are sensitive to Cigna.

5              THE COURT:  I understood that part.  But you said

6    that they were relevant to this case.

7              MR. HASKEL:  What I was saying is to the extent that

8    there are relevant documents, we've produced them in this case,

9    but there are a subset of documents that are irrelevant in this

10   case, but are also very sensitive to Cigna.  So let's compare

11   that again to the burden to what -- compare the burden to what

12   plaintiffs will get from this.  Now, plaintiffs already have

13   access to all the materials or, could, that SurgCenter produced

14   in that action just like I don't have to be -- Cigna could give

15   me access to any production that they have, they're their

16   documents.  So if SurgCenter wants to give them their own

17   documents, they can.

18        And as Your Honor in questioning noted, I haven't heard

19   anything that plaintiffs say that they need from the Colorado

20   action that they haven't asked for or gotten here, and we've

21   said if there are issues with our production, let us know.  We

22   haven't heard any.  Plaintiffs had two opportunities to request

23   relevant documents or two different deadlines to request

24   relevant documents from Cigna.  They posit, plaintiffs, that

25   they would have to look at all of the productions in that case

1    to understand what's maybe relevant, what's not.  That's not

2    typically how discovery works.  If you think something's

3    relevant, you ask for it in discovery requests.  There's

4    nothing preventing them from speaking to Whatley Kallas and

5    saying what's relevant in these lawsuits, they just can't go

6    into confidential or highly confidential, the substance of

7    those documents.

8         But they could certainly ask for anything relevant and if

9    it's relevant, we're going to produce it and we agreed to

10   produce it.  We agreed to open up our search terms so they

11   would get those documents.  So to suggest that there's

12   something here that they might need in the other case but not

13   here is just maybe they missed something in discovery requests.

14   We haven't heard it yet though.  They haven't raised a single

15   category of documents that they think was produced in Colorado

16   that they don't have here.  And that's what makes this motion

17   so off base.

18        In the cases that plaintiffs rely on in their motions,

19   the parties ask for discovery in another litigation to avoid

20   duplicative discovery.  They did it before they engaged in

21   discovery in the related case.  Here, plaintiffs made their

22   requests for discovery, for this access to Colorado discovery

23   well after discovery was under way here, well after they were

24   retained, new counsel was retained.  After we had seven meet

25   and confers before plaintiffs' new counsel brought it up and we

1    had already agreed to search terms, already started doing

2    supplemental review, already agreed to supplemental discovery

3    requests that we may not have had to do if they would have just

4    raised that issue sooner.

5            THE COURT:  Mr. Haskel, were the Maryland lawyers

6    the same lawyers that they had in Colorado, that SurgCenter had

7    in Colorado?

8            MR. HASKEL:  The lawyers in the Maryland action are

9    not the same lawyers as the ones they have in Colorado.

10           THE COURT:  And in this particular case, the

11   Colorado lawyers were the same in Arkansas and so it wasn't

12   until they got off the case that it became an access issue.  It

13   may have been a use issue, but what need was there to negotiate

14   this kind of agreement between Colorado, all of Colorado

15   counsel that now have moved to Arkansas?

16           MR. HASKEL:  That's the importance of the timeline

17   here.  New counsel was retained in October of 2015.  So I agree

18   with you, at that point, there was no reason necessarily if all

19   that was the purpose of this is just institutional knowledge at

20   that point, there was no need to request it.  But they didn't

21   make this request until the end of January after we had

22   extensive negotiations about search terms, and broadening

23   discovery that if they had asked right at the outset, we could

24   have had a conversation, well, does it make sense, does a

25   portion of that discovery make sense, maybe give you deposition

1  transcripts and the motion for summary judgment.  There were

2  ways that we could have actually made this to avoid duplicative

3  discovery, which is all the cases that they cite, that's the

4  purpose of giving them access.  This won't avoid duplicative

5  discovery.

6       And if that was truly their concern, like I said, they

7  should have raised it.  They knew this was an issue when they

8  came on, but yet they waited three months about to raise the

9  issue.  So that's why this is not -- it's obviously they were

10  not on, and there may not have been a reason, although the

11  protective orders are what they are, we can't use those

12  materials, so if that's ultimately the goal, then that was

13  always going to be an issue.  Our solution was this is a

14  smaller case, the issues may be similar, but we'll talk about

15  the investigation was different here.  The plaintiffs have

16  suggested that this was a part of a SurgCenter-wide

17  investigation.

18       Well, in the Colorado case, we collected all of our

19  documents by June 2014 when plaintiffs filed suit here.  We

20  didn't even know that Tristate was a SurgCenter affiliated --

21  Cigna didn't know it was a SurgCenter affiliated center until

22  after they filed that suit.  The suit made Cigna realize that

23  this was a SurgCenter affiliated suit.  So there's not going to

24  be the nationwide investigation -- all those documents that

25  they're positing may be relevant, it's not going to be in the

1    Colorado litigation, and because June 2014 was the cutoff.  But

2    also because this was a unique situation where Cigna didn't

3    realize that it was a SurgCenter -- and look, if there was an

4    investigation that involved Tristate and other ASCs, we would

5    have produced that document.  We agreed to produce general

6    policy documents of Cigna's, what it calls its fee forgiving

7    policy and its protocol and to the extent those related to an

8    investigation of Tristate, we've agreed to produce it.

9        I want to briefly go over the procedural defects and

10    unless Your Honor has questions, I'll skip over the timeliness,

11    but I do want to talk about why this is procedurally improper

12    with regard to the Colorado action and how it relates to the

13    protective order in the Maryland action because I think there's

14    some confusion in the record or at least here today.  So in the

15    Colorado action, as I said before, there were actually two

16    actions.  The ASCs there, the Colorado ASCs had sued two

17    hospital systems and a number of insurers, but not Cigna, and

18    then a year later they sued Cigna.

19        And so the parties, because it was one alleged

20    conspiracy, we agreed that in our case, we would enter a

21    protective order where we would get access to any documents

22    produced by parties in that case, so including all of the

23    Colorado hospital systems and the insurers there.  But we

24    agreed to it on the condition that we wouldn't disclose it to

25    parties outside of that case, outside of our case.  We never

1  agreed to produce -- Cigna never agreed to produce third party

2  documents in the Maryland action.  We agreed to produce -- and

3  I could point Your Honor to Exhibit B of plaintiffs' reply, and

4  if you don't have a copy, I have one with me.

5          THE COURT:  I've got the reply, I'm trying to find

6  out if I've got the exhibits to the reply.  While I have seen

7  the exhibits to the reply, I don't have them up here.  Why

8  don't you just show me.

9          MR. HASKEL:  Sure.  Paragraph 1 of the stipulation

10  in Maryland which allowed for use of Colorado materials, states

11  the Colorado parties agree that each Maryland party, those are

12  parties to the Maryland action, shall have the right to use all

13  materials produced by the Colorado parties.  Colorado parties

14  are defined as Cigna and the six ambulatory surgical centers in

15  Colorado, not the two hospital systems, the number of other

16  insurers in the other case.  We never agreed to that.  We

17  couldn't agree to that because there's a protective order in

18  that case that says we can't produce those documents.

19  Obviously we could produce our own documents, so we agreed to

20  do it because our thought was at the beginning outset of

21  discovery, there are two Maryland ASCs in the Colorado action.

22      In the Maryland action it made sense to do it, it would

23  avoid duplicative discovery.  But we never agreed to produce

24  the documents of third parties, which is what plaintiffs are

25  asking for us to do here.  It just didn't happen.  And the

1  protective order in that case makes that clear.  And it's

2  paragraph 1 of the agreement which is Exhibit B to Cigna's

3  opposition lays out that the parties to that related action in

4  Colorado, what we call the HCA parties, which are the other two

5  hospital systems and the other insurers allowed use in the

6  Colorado action only and noted any disclosure beyond that was

7  prohibited and that a breach would cause harm and damage.  It's

8  written into the agreement that way.  So that is a procedural

9  issue that we cannot, absent a modification of that order, give

10  them the access that they're asking for.  And it's what

11  distinguishes the cases that they cite from the one here.

12      In those cases, the plaintiffs or the parties seeking

13  discovery went to the Court that actually had the protective

14  order.  That's not what plaintiffs have done here.  They've

15  come to Your Honor who hasn't entered in that protective order.

16  And there are other procedural mechanisms that they could have

17  done if they truly wanted access as opposed to just opening up

18  this discovery record here.  They could have made an appearance

19  in the Colorado action and tried to get documents as counsel

20  for SurgCenter in Colorado.  They could have moved that court

21  to modify the order.

22      Or even here, they could have started off by saying, okay

23  look, I hear their concern with deposition transcripts and

24  motion for judgment pleadings, they could have asked us to

25  provide just that limited subset of documents instead of the

1    190,000 pages of documents that we produced and the documents

2    of all the third parties.  All of those would have been a lot

3    more palatable rather than what we think is an attempt to end

4    run around the Colorado court's protective order.  So unless

5    Your Honor has any questions, I have nothing further.

6              THE COURT:  I don't.  I always give you, well, not

7    you, but the movant the last word, and that happens to be what

8    you are this time.  You won't always get the last word, but you

9    will on this motion.

10             MR. HALIJAN:  Thank you.  That is true in court and

11   true in life, too, I guess.  Let me address just a few things

12   that Mr. Haskel said.  First of all, as we said in the brief,

13   we think this argument that Cigna is making about how

14   discovery, how we've come to be here and agreements or

15   disagreements as to the scope of discovery agreed to by prior

16   counsel, again, I respectfully submit that's an attempt to

17   change the subject.  That doesn't have anything to do with

18   whether we should have the right or not have the right to see

19   these materials.  We vigorously disagree with the

20   characterization of what has happened since our firm took over

21   as lead trial counsel, but I respectfully submit that's nothing

22   more than diversionary anyway.

23        Second of all, this is not a discovery request in any

24   kind of traditional sense.  These materials are all in the

25   possession of SurgCenter counsel in other cases already.  We

1   didn't need to propound, and it never occurred to me, I will

2   confess to the Court, it never occurred to me that we needed to

3   propound a request for production to Cigna until Cigna took the

4   position that we couldn't even have access, we couldn't even

5   read any of this, even though it was already in the possession

6   of former counsel for SurgCenter in this case.  Cigna suggests

7   that there's this sort of parade of horribles that might result

8   from us being allowed simply to read this record to the extent

9   we want to.

10          Not to be flippant about it, Your Honor, but how

11  Ms. Glover and I spend our weekends between now and trial ought

12  not to be Cigna's concern, we just want to have access to a

13  record on the same footing that they do.  We're not even asking

14  for the right to use any of it and, again, how could I say what

15  we want to use when we've been prohibited at least thus far

16  from seeing any of it.  The notion that there are sensitive

17  Cigna documents that are in this discovery record in Colorado,

18  again, I'm not sure how that gets to the result that Cigna

19  wants since, again, those sensitive documents are already in

20  the possession of SurgCenter counsel, just not SurgCenter's

21  counsel in Arkansas.

22          Indeed some of them are already in the possession --

23  unless they've been marked highly confidential, they're already

24  in possession of my client.  It's just my client can't allow me

25  to see any of this.  And beyond that, I'm not sure why it is

1   that Cigna ought to be allowed to say what I need to look at in

2   order to prepare my case for trial, why it is their decision as

3   to what I ought to be allowed to look at when there is this

4   record in a very similar case already out there in Colorado.

5   Again, it's equal footing.  They haven't agreed to give us

6   access to anything, even the testimony of Cigna's own

7   witnesses, even deposition testimony of Cigna's own witnesses

8   or the exhibits thereto.

9          THE COURT:  Mr. Halijan, isn't it your client that

10  agreed to this protective order in the beginning in Colorado

11  that -- it wasn't up to Cigna, it was up to SurgCenter and

12  Cigna to decide how to limit this thing.  They asked for this,

13  SurgCenter did, in the Colorado litigation.  I'm assuming that

14  there was an agreed protective order that likely was presented

15  to the judge and the judge signed it, he didn't cram down this

16  protective order without the request of the parties.  And I'm

17  assuming just based on the way things worked that that's the

18  way it happened, but it was SurgCenter that agreed to the

19  protective order in Colorado in the first place, was it not?

20         MR. HALIJAN:  Yeah, absolutely, Your Honor.  And the

21  Court is correct, that this was an agreed upon protective

22  order.

23         THE COURT:  Then they agreed to get away from it a

24  little bit in Maryland, both sides agreed at that point that

25  they would alter their agreement to how all this information

1    between the two of them had been exchanged to be used in

2    Maryland, correct?

3            MR. HALIJAN:  That's likewise correct, but I think

4    what wasn't foreseen, and Your Honor, all of us that are

5    litigators know this, circumstances of cases sometimes change

6    during the course of the case.  I have certainly never in 23

7    years, however long I've been doing this, I've never had a case

8    like this where we've had an instance where there is this

9    discovery record in a similar case out there where counsel for

10   the client, my client can see it, but where I can't simply by

11   virtue of the client making a decision to change lawyers in the

12   middle of the case.  Yes, is this an unforeseen consequence of

13   that decision?  It absolutely is.

14        But, again, I've read Mr. Haskel's brief, I've heard what

15   he's just said.  I don't see how there is any legitimate

16   argument that Cigna is prejudiced certainly by my seeing

17   Cigna's own document production, the testimony of its own

18   witnesses and the deposition exhibits to the testimony of its

19   own witnesses.  I still haven't heard how there is any real

20   prejudice associated by this in that the cat is already out of

21   the bag, it's just a different group of SurgCenter lawyers have

22   access to all of this.

23        Finally, yes, Your Honor, we could have approached this

24   in a different way by filing motions to appear pro hac vice in

25   Colorado and come under that protective order, and if there's

1   any fault, that fault is mine in our not doing that because we

2   considered it, but we made the decision because of where the

3   Colorado case was, nearing the end of factual discovery that

4   that's not the right -- I just didn't feel like it was the

5   right way to do it.  It seemed too cute to simply make an

6   appearance out there and thus come under that protective order

7   in order to get access to documents that I believed fundamental

8   fairness requires me to have access to anyway, so if there's

9   any fault there, it's not SurgCenter's fault, it's not

10  Tristate's fault, it's my decision.

11       THE COURT:  Maybe I misunderstood Mr. Haskel's

12  comments.  I don't think he was suggesting you do that.  I

13  think he was suggesting that you go to the Colorado judge and

14  ask for relief similar to what you're asking from me.  Maybe I

15  got it wrong, but I didn't -- I didn't hear him to suggest you

16  try to pull that off.

17       MR. HALIJAN:  Perhaps I got it wrong.

18       THE COURT:  Maybe he did, I don't know.  But it was

19  not the way I processed it.  It may have been the way he said

20  it.

21       MR. HALIJAN:  Either way.  I may have misunderstood.

22  Either way, making an appearance in Colorado, one question

23  occurs to me is whether Mr. Haskel would have made some

24  argument that I didn't have standing out in Colorado because I

25  wasn't counsel of record.  Either way, Your Honor, that seemed

1  like kind of a too cute by half way to get at this.  We thought

2  the most appropriate vehicle was to ask Cigna and then after

3  they said no to everything, we had no choice but to approach

4  the Court.  Again, we think there are two avenues through which

5  this can be addressed.  One is a simple order of this court

6  under Rule 37, or the protective order could be amended.

7  Unless the Court has any further questions of me, I will close.

8          THE COURT:  I do not at this time.  Thank you.

9          MR. HALIJAN:  Thank you, Your Honor.

10          THE COURT:  I'm going to deny Tristate and

11  SurgCenter's request.  I'll get an order out.  It's not going

12  to be particularly lengthy, but I will explain what I'm

13  thinking in that order.  I also am aware that I've got some

14  motions to dismiss pending that I need to rule on that based on

15  the alignment of the parties are difficult to say.  I can just

16  say that it's document numbers 112 and 123 rather than say the

17  counter-counterclaim of the third-party plaintiff, defendant,

18  etc.  I think everybody understands what I'm struggling with on

19  how to align the parties beyond just plaintiff and defendant at

20  this time.  I think both of y'all were traveling from Memphis

21  and New York and accommodating if we made the request not to

22  have it in Jonesboro.  Either way, it was more convenient for

23  me to be here than it was there.  Is there anything else we

24  need to do before we go off the record?

25          MR. HALIJAN:  No, Your Honor.

1            MR. HASKEL:  No, Your Honor.

2            THE COURT:  All right.  Court's in recess.

3       (Proceedings adjourned at 11:20 AM.)

4                    C E R T I F I C A T E

5       I, Karen Baker, Official Court Reporter, do hereby certify

6  that the foregoing is a true and correct transcript of

7  proceedings in the above-entitled case.

8

9

10

11 /s/ Karen Baker, RMR, CRR, CCR
   ------------------------------              Date: April 5, 2016
12 United States Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25